**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| OPEN TECHNOLOGY FUND, 1015 7th Street NW, 3rd Floor, Washington, DC 20001, <br><br> Plaintiff, <br><br> v. <br><br> KARI LAKE, in her official capacity as Senior Advisor to the Acting CEO with Authorities Delegated by the Acting CEO, of the U.S. AGENCY FOR GLOBAL MEDIA, 330 Independence Avenue, SW, Washington, DC 20237, <br><br> VICTOR MORALES, in his official capacity as the Acting Chief Executive Officer and Director of the U.S. AGENCY FOR GLOBAL MEDIA, 330 Independence Avenue, SW, Washington, DC 20237, <br><br> U.S. AGENCY FOR GLOBAL MEDIA, 330 Independence Avenue, SW, Washington, DC 20237, <br><br> OFFICE OF MANAGEMENT AND BUDGET, 725 17th Street, NW, Washington, DC 20503, <br><br> Defendants. | Civil Action No. 1:25-cv-840 <br><br> **COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** <br><br> **EMERGENCY TEMPORARY RESTRAINING ORDER SOUGHT** |

**INTRODUCTION**

1.      Congress clearly and unambiguously appropriated funds for the Open Technology Fund, a private, non-profit organization, to advance internet freedom. The Open Technology Fund's congressionally mandated mission is to support the research, development, implementation, and maintenance of technologies that counter censorship and combat repressive surveillance to enable all citizens to exercise their fundamental human rights online.

2.      The federal agency at the heart of this case is the United States Agency for Global Media ("USAGM"), an independent federal agency overseeing public service media networks that provide unbiased news coverage around the world. USAGM oversees two federal networks, Voice of America and the Office of Cuba Broadcasting. USAGM also provides congressionally mandated funding to several private non-profit entities: Radio Free Europe/Radio Liberty, Radio Free Asia, the Middle East Broadcasting Networks, and the Open Technology Fund.

3.      Recently, a federal court reminded the Executive Branch that "[f]ederal agencies and departments can spend, award, or suspend money based only on the power Congress has given them" and that the "Executive's discretion to impose its own policy preference on appropriated funds can be exercised only if it is authorized by the congressionally approved appropriations statutes[.]" *New York v. Trump*, ___ F. Supp. 3d ___, No. 25-cv-39, 2025 WL 715621, at *1 (D.R.I. Mar. 6, 2025). Nonetheless, less than two weeks later, Defendant Kari Lake, a Senior Advisor to the Acting CEO of USAGM purported to terminate the Open Technology Fund's federal grant with Federal Award Identification Number ("FAIN") OT01-25-GO-00001 "and any other agreements with USAGM" and has withheld funds congressionally appropriated for the Open Technology Fund. This attempt to cut off the Open Technology Fund's access to congressionally appropriated funds violated statutes and the U.S. Constitution.

4.      Since 1942, entities receiving grants from USAGM and its predecessors "have exported the cardinal American values of free speech, freedom of the press, and open debate to the dark corners of the world where independent, objective coverage of current events is otherwise unavailable." *Turner v. U.S. Agency for Glob. Media*, 502 F. Supp. 3d 333, 341-42 (D.D.C. 2020). "The United States' commitment to this cultural export has contributed to the downfall of oppressive regimes around the world, from Nazi Germany to the Soviet Union." *Id.* at 342. The

Open Technology Fund, an independent non-profit organization, contributes to the USAGM mission by countering repressive censorship and surveillance.

5.    Congress directs USAGM "to make annual grants for the purpose of promoting, consistent with United States law, unrestricted access to uncensored sources of information via the internet to enable journalists . . . to create and disseminate, and for their audiences to receive, news and information." 22 U.S.C. § 6208a(a)(1). That statute identifies the Open Technology Fund by name as a grantee. *Id.* § 6208a(a)(2).

6.    In the Fiscal Year 2024 Further Consolidated Appropriations Act, Congress directed that of the funds appropriated to USAGM, "not less than $43,500,000 shall be for Internet freedom programs[.]" Pub. L. No. 118-47, 138 Stat 460, 735 (2024). In three continuing resolutions, Congress authorized continued funding for fiscal year 2025 at the levels set for fiscal year 2024 (with certain exceptions not relevant here). Continuing Appropriations Act, 2025, Pub. L. No. 118-83, 138 Stat. 1524, 1525 (2024); American Relief Act, 2025, Pub. L. No. 118-158, 138 Stat. 1722, 1723 (2024); Full-Year Continuing Appropriations and Extensions Act, 2025, H.R. 1968, 119th Cong. § 1101(a) (2025).

7.    The Open Technology Fund's appropriation is explicitly set forth in the appropriations bills and is not subject to any Executive discretion. The table below, printed in the Congressional Record, is expressly incorporated into Public Law 118-47. *See* Pub. L. No. 118-47, Sec. 7019. ("Allocation Tables.--Subject to subsection (b), funds appropriated by this Act under titles III through V shall be made available in the amounts specifically designated in the respective tables included in the explanatory statement described in section 4.").

*Section 7050. Global Internet Freedom (modified)*

The agreement includes not less than $94,000,000 for programs to promote Internet freedom globally consistent with section 9707 of the National Defense Authorization Act of 2022 (Public Law 117–263). Funds for such activities are allocated according to the following table and subject to section 7019 of the Act:

### GLOBAL INTERNET FREEDOM
(Budget authority in thousands of dollars)

| Account/Program | Budget Authority |
|---|---|
| Economic Support Fund | 27,000 |
| *Near East Regional Democracy* | *16,750* |
| Democracy Fund (Department of State) | 14,000 |
| Democracy Fund (USAID) | 3,500 |
| Assistance for Europe, Eurasia and Central Asia | 6,000 |
| International Broadcasting Operations, Open Technology Fund | 43,500 |

170 Cong. Rec. H2097 (daily ed. Mar. 22, 2024); *see also id.* at H2089.

8.      On February 26, 2025, the Open Technology Fund submitted its drawdown request to USAGM for operating funds in the amount of $655,508 to cover the period of March 1, 2025 to March 31, 2025, consistent with the grant agreements, USAGM procedure for grantee drawdown requests, the Open Technology Fund's financial plan previously approved by USAGM, and the congressional appropriations to the Open Technology Fund. Drawdown requests are typically honored within seven days. The Open Technology Fund has still not received the requested funds for March 2025.

9.      The last of the three continuing resolutions was signed into law by the President on March 15, 2025.  That same day, Defendant Lake delivered a letter to Open Technology Fund purporting to terminate all grant funding from USAGM to the Open Technology Fund. (the "Grant

Complaint – 4

*Open Technology Fund v. Kari Lake et al.*, No. 1:25-cv-840

Termination"). The Grant Termination stated that the grant was being terminated because "[t]he award no longer effectuates agency priorities," but ignored multiple congressional mandates for USAGM to fund the Open Technology Fund.

10.    The Grant Termination appears to have been an attempt by USAGM to carry out a March 14, 2025, Executive Order issued by the President. "Continuing the Reduction of the Federal Bureaucracy," https://www.whitehouse.gov/presidential-actions/2025/03/continuing-the-reduction-of-the-federal-bureaucracy/ (the "*Continuing EO*"). The *Continuing EO* directed USAGM to reduce their components and functions to the extent consistent with applicable law and to eliminate "all non-statutorily required activities and functions." Disbursement of funds appropriated by Congress to the Open Technology Fund is, however, *a statutory function of USAGM.*

11.    The Open Technology Fund brings this suit to protect its ability to carry out its congressionally mandated mission.

## PARTIES

12.    Plaintiff Open Technology Fund is a private, independent, not-for-profit 501(c)(3) organization incorporated in the District of Columbia. The Open Technology Fund's mission is to advance global internet freedom. The Open Technology Fund supports the research development, implementation, and maintenance of tools and technologies focused on counteracting repressive censorship and surveillance, enabling citizens worldwide to reliably access news and information, and to exercise their fundamental human rights online. The Open Technology Fund is headquartered in Washington, D.C.

13.    Defendant U.S. Agency for Global Media is a federal agency that makes and administers grants supporting the United States' international broadcasting efforts worldwide.

14.     Defendant Victor Morales is the Acting CEO of USAGM. He is sued in his official capacity. The CEO of USAGM supervises all agency activities including making grants. *See generally* 22 U.S.C. § 6204(a).

15.     Defendant Kari Lake is Senior Advisor to the Acting CEO of the USAGM. In the Grant Termination, Defendant Lake represented that she is acting pursuant to "Authorities Delegated by Acting CEO." She is sued in her official capacity.

16.     Defendant the Office of Management and Budget ("OMB") is an administrative agency within the Office of the President of the United States. Defendant OMB approves the disbursement of funding to USAGM to be disbursed to the Open Technology Fund.

## JURISDICTION AND VENUE

17.     The Court has jurisdiction over this action under: (a) 28 U.S.C. § 1346(a)(2) because agencies of the United States government are named defendants; (b) 28 U.S.C. § 1331 because this action arises under the laws and Constitution of the United States; and (c) 28 U.S.C. § 1361 because this action seeks to compel officers of the United States to perform their non-discretionary duties.

18.     Venue is proper in this district because the Open Technology Fund resides in this judicial district, a defendant in the action resides in this judicial district, and a substantial part of the events or omissions giving rise to the claims occurred in this judicial district. 28 U.S.C. § 1391(e).

## FACTS

### The Open Technology Fund

19.     In the William M. (Mac) Thornberry National Defense Authorization Act for Fiscal Year 2021 ("FY2021 NDAA"), Congress stated that the Open Technology Fund's mission is to "advance freedom of the press and unrestricted access to the internet in repressive environments

oversees, and shall . . . research, develop, implement and maintain . . . technologies that circumvent techniques used by authoritarian governments, nonstate actors, and others to block or censor access to the internet . . . and secure communications tools and other forms of privacy and security technology" to maintain the technological advantage of the United States over authoritarian governments. Pub. L. No. 116-283, § 1299P, 134 Stat. 3388, 4017 (codified at 22 U.S.C. § 6208a). The FY2021 NDAA provides for the Open Technology Fund's funding mechanism, setting out that Congress would appropriate money to USAGM, which then shall grant it to Open Technology Fund. *Id.* at 4016-17 (codified at 22 U.S.C. § 6208a(a) & (b)).

20. The Open Technology Fund fulfills its congressional mandate in part by funding pioneering open source internet freedom technologies that counter authoritarian information controls and enhance digital security and privacy so that all people can safely access the internet free from censorship. Today, over two billion people around the world use Open Technology Fund-supported technology, and more than two-thirds of all mobile phone users have Open Technology Fund-incubated technology on their devices.

21. As contemplated by Congress, USAGM oversees the Open Technology Fund's financial and programmatic activities. The Open Technology Fund's authorizing statute requires that USAGM provide the Open Technology Fund with its congressionally appropriated funds and provide assistance so that the Open Technology Fund can fulfill its statutorily mandated duties. The authorizing statute includes a clear directive that USAGM "shall" make annual grants available to the Open Technology Fund.

22. USAGM's oversight of the Open Technology Fund is provided by statute. USAGM is led by a CEO under the oversight of an advisory board of directors, known as the International Broadcasting Advisory Board ("Advisory Board"). 22 U.S.C. §§ 6203, 6205. Congress has

provided that the Open Technology Fund may only be debarred or suspended by a three-fourths majority vote of the Advisory Board. *Id.* § 6205(f). USAGM's CEO does not have the authority to debar or suspend a USAGM grantee without the Advisory Board. All members of the Advisory Board were dismissed in January 2025.

23.    In fiscal year 2024 and in multiple continuing resolutions to cover fiscal year 2025, Congress allocated to the Open Technology Fund an appropriation of $43.5 million for each fiscal year.

24.    These appropriations cover approximately 98% of the Open Technology Fund's operating and programmatic budget. The Open Technology Fund cannot fulfill its mandate or operate in any meaningful way without access to these funds.

25.    On February 26, 2025, the Open Technology Fund submitted its drawdown request to USAGM for operating funds to cover the period of March 1, 2025 to March 31, 2025, consistent with the USAGM Grant Agreement, USAGM procedure for grantee drawdown requests, Open Technology Fund's financial plan previously approved by USAGM, the congressionally approved USAGM Program Plan, the congressionally approved Internet Freedom Spend Plan, and the congressional appropriations to the Open Technology Fund for fiscal year 2024. In 2025 thus far, the period between a request for funding and the subsequent disbursement had been at most seven days.

26.    On March 5, 2025, USAGM informed the Open Technology Fund that the March 2025 drawdown request had been submitted to USAGM leadership and funds were forthcoming. When the Open Technology Fund followed up with USAGM on March 12, 2025 regarding the payment, USAGM then indicated that they would release the funds by the end of the month. Open Technology Fund never received the March 2025 funds from USAGM.

27.     On February 28, 2025, the Open Technology Fund received from USAGM an OMB-initiated Budget Data Request ("BDR") 25-08. The BDR classified the Open Technology Fund as a foreign assistance program for the purpose of the exercise, even though the Open Technology Fund does not receive foreign assistance funding and its work is not classified as such. The BDR also included instructions for USAGM's leadership to make a recommendation about the future of the Open Technology Fund's grant. The Open Technology Fund complied with this request on March 7, 2025 by submitting the requested data to USAGM, along with an affirmation that USAGM should continue to deliver the congressionally appropriated grant funds.

28.     Open Technology Fund also receives a portion of its funding from the State Department through an interagency agreement with USAGM. Per the interagency agreement, the State Department provides funds to USAGM, and USAGM then provides those funds to the Open Technology Fund via an amendment to its grant agreement to support its "Surge and Sustain" program. This program provides secure and uncensored access to the global internet to over 45 million users who otherwise could not safely access the internet. On January 28, 2025, the State Department notified the Open Technology Fund that it was reviewing all foreign assistance grants, including the interagency agreement, and directed the Open Technology Fund to immediately pause all work performed under the agreement. The Open Technology Fund complied with this directive. On March 11, 2025, the State Department notified the Open Technology Fund that it should resume services under the agreement and simultaneously directed USAGM to "disburse funding and approve for funding all outstanding obligations under the agreement."

29.     The Open Technology Fund currently has 32 full-time employees. It oversees 149 programmatic contracts essential to carrying out its congressionally mandated mission and 23 operational contracts and leases for enterprise services, supplies, and office space. All of these

contracts are funded in whole or in part with federal dollars that Congress has directed that the Open Technology Fund spend.

### The Executive Order

30.     On the evening of March 14, 2025, the *Continuing EO* directed seven agencies, including USAGM, to "reduce the performance of their statutory functions and associated personnel to the minimum presence and function required by law[.]" *Id.* § 2(a).

31.     The *Continuing EO* directed the OMB that it should review any grant requests from USAGM and "to the extent consistent with applicable law . . . reject funding requests for such government entities to the extent they are inconsistent with this order." *Id.* § 2(c).

32.     The *Continuing EO* required that the order "shall be implemented consistent with applicable law." *Id.* § 3(b).

### USAGM's Purported Termination of Congressionally Appropriated Funds

33.     The Grant Termination purported to terminate the 2025 Grant Agreement "and any other grants with USAGM" effective March 14, 2025.

34.     The only reason offered for the termination was the assertion that "[t]he award no longer effectuates agency priorities." *Id.*

35.     At no time prior to receiving the Grant Termination did the Open Technology Fund receive any communication or questions from Kari Lake or Victor Morales.

36.     Although the Grant Termination asserts an administrative appeal right exists, upon information and belief, USAGM does not maintain "written procedures for processing objections, hearings, and appeals" as required by federal regulations. *See* 2 C.F.R. § 200.342. Moreover, any such administrative appeal would be futile. There are no disputed issues as to the Open Technology Fund's performance or compliance with the grants, only the bare assertion about changing priorities.

**The Open Technology Fund Faces Substantial, Imminent, and Irreparable Harm Due to the Unlawful Withholding of Congressionally Appropriated Funds.**

37.     The Open Technology Fund faces imminent closure if the termination of the congressionally mandated USAGM grant agreement is upheld. This means that many of its 32 employees will lose both their jobs and benefits on very short notice, save the very few operational staff required to close the business of the organization. The Open Technology Fund will lose skilled employees with institutional knowledge of the organization and its programs.

38.     If the Grant Termination is upheld, the Open Technology Fund will also need to terminate the 23 operational contracts and leases that the organization needs to conduct its operations. While USAGM is shielded from liability for third-party claims for monetary damages, the Open Technology Fund is not afforded such protection. As such, breaching these contracts by defaulting on the financial obligations within them, and/or without the contractually required notice, would expose the Open Technology Fund to claims for monetary damages and/or injunctive relief through no fault of its own.

39.     If the Grant Termination is upheld, the Open Technology Fund will need to immediately terminate all contracts with virtual private networks ("VPN") providers. Open Technology Fund-supported VPNs currently provide secure and uncensored access to the global internet over 45 million people. Without access to these tools, users will be immediately exposed to online censorship and surveillance, putting their communication, work, and safety at significant risk, and leaving them vulnerable to reprisal.

40.     If the Grant Termination is upheld, the Open Technology Fund will not be able to effectuate its congressionally authorized mission. Today VPNs are an essential prerequisite for tens of millions of people around the world to be able to access the uncensored internet safely. If the Open Technology Fund can no longer support critical programs such as VPN access, or even

if the Open Technology Fund is viewed as an unreliable partner because of funding risk, it will be impaired in meeting Congress's mandate to provide open and uncensored access.

41.    If Grant Termination is allowed to stand, the Open Technology Fund will need to immediately terminate the 149 programmatic contracts that it currently has in place to carry out its congressionally mandated mission. Many, if not most, of the employees of these 149 contract partners will likely be terminated imminently if the Open Technology Fund cannot continue to distribute funds under existing contractual agreements. Many of these project partners are highly skilled developers and security experts who will no longer be able to focus on the challenges presented by censorship and information controls, as their work relies exclusively or critically on the Open Technology Fund's funding. The Open Technology Fund's network of professionals dedicated to internet freedom will be difficult, if not impossible, to rebuild if the Open Technology Fund ceases to exist and/or cannot fund its contracts.

42.    The Open Technology Fund is the largest funder in the internet freedom technology space by orders of magnitude, specializing in technical solutions to digital censorship and surveillance. If the termination of the USAGM grant is allowed to stand, the Open Technology Fund will need to immediately terminate programmatic contracts totaling over $71 million. As a result, the vast majority of internet freedom technology projects anywhere in the world will cease and the internet freedom technology field as whole will be largely decimated. As quantifiable examples, the Open Technology Fund is the largest funder of VPNs worldwide.

43.    The Open Technology Fund funds rapid response projects to respond to acute digital emergencies. If the Grant Termination is allowed to stand, the Open Technology Fund will need to immediately terminate all active emergency response contracts and will not be able to

deploy new resources to respond to digital crises, resulting in proliferation of cyber-spying and cyber-espionage.

44.    The Open Technology Fund funds the development and ongoing maintenance of some of the world's most vital secure communications solutions. These solutions enable secure communications between individuals and are utilized by millions around the globe. The Open Technology Fund supports many widely used privacy-enhancing communications platforms, and supports the Messaging Layer Security Protocol, an important new development in secure messaging. If the termination of the USAGM grant is upheld, not only will millions of people be deprived of secure communications platforms, existing data in communications platforms may be vulnerable to decryption and exploitation. Further, the ability to preserve the security of communications against advances surveillance technology will be swiftly eroded.

45.    If the Grant Termination is upheld, there are a number of Open Technology Fund programs critical to fulfilling its congressional mandate that will likely be shut down. Many of these programs are relied upon by at-risk individuals and will be difficult to re-establish. Those programs include:

(a)    Supporting use of anti-censorship tools (VPNs). The Open Technology Fund supports the user carrying costs of secure anti-censorship tools—VPNs, as discussed previously—for over 45 million users. Without access to Open Technology Fund VPNs, millions of users will immediately be left without protections of communications and at direct risk of surveillance and reprisal.

(b)    Internet Freedom Fund. The Open Technology Fund's primary funding mechanism for new applications and technologies is its Internet Freedom Fund. This fund is designed to be nimble and operate at the speed of private sector technology development

to quickly respond to novel forms of digital authoritarianism. The suspension of new projects will result in substantially hampered internet freedom outcomes, and will leave a gap for the development of new information controls to go unchecked and unchallenged. Through this fund, the Open Technology Fund has supported the development of open source technologies that are now used by two billion people globally.

(c)     Rapid Response Fund. Since inception, the Open Technology Fund's Rapid Response Fund has supported over 400 interventions in response to urgent, state-sponsored digital attacks. The Open Technology Fund's inability to offer this support will mean that independent media and civil society actors will be at serious risk without any recourse against targeted digital attacks.

(d)     Fellowship Programs. The Open Technology Fund supports an annual cohort of Information Control Fellows who conduct cutting edge technical research on censorship and surveillance (85 total to date). Many of these Fellows are graduate students or early career professionals who will lose critical stipends if the Open Technology Fund program has to shut down. A number of these Fellows work on extremely sensitive topics; if that work stops abruptly, the Open Technology Fund will be unable to ensure these Fellows' safety.

(e)     Internet shutdown resistant technologies. The Open Technology Fund funds internet shutdown resistant technologies to provide users in shutdown-prone areas with critical access to communications and the internet. Without these technologies, users' communications in a number of countries will likely be disrupted or rendered insecure against authoritarian surveillance.

(f)    Censorship monitoring. The Open Technology Fund supports multiple censorship monitoring platforms. These platforms provide vital information to the United States Government about the nature and scale of censorship in other countries. They also give circumvention technology developers insights into what forms of censorship are being deployed in which regions so that they can more effectively counter it. Without these platforms online, users are more vulnerable and anti-censorship developers lose an important resource.

(g)    Privacy-preserving communications. The Open Technology Fund funds the development and ongoing maintenance of some of the most vital, secure communications solutions. These are utilized widely by millions around the world. The Open Technology Fund-supported Signal protocol underlies many of the most popular secure communications technologies in the world, including WhatsApp. The Open Technology Fund's current support for the Messaging Layer Security Protocol is poised to usher in the next era of secure messaging.

(h)    Threat intelligence. The Open Technology Fund supports a network of regional helpdesks and complementary technologies to effectuate a threat intelligence sharing network. This network helps to identify novel digital threats or novel uses of known threats, quickly notifies relevant actors to create and propagate threat mitigation measures, and shares that information back with under threat publics. The Open Technology Fund's initiative is an important complement to corporate and government efforts, as novel attacks are commonly first deployed against journalists or civil society members. Termination of the Open Technology Fund's grant would imperil that network and the technologies it relies on. This would leave journalists and civil society in authoritarian contexts more

vulnerable to potentially devastating digital attack. It would also deprive the United States Government and private sector of important early warnings and critical mitigations to novel digital attacks, increasing vulnerability to cyber threats.

(i)     Open source sustainability. Through a number of its established funds, the Open Technology Fund supports critical open source libraries, protocols, and tools that underlay many technologies vital to evading digital censorship and surveillance. Without Open Technology Fund support, the security and efficacy of the hundreds of tools that rely on Open Technology Fund open source components will be eroded, creating critical security vulnerabilities for the tools that are built upon them.

(j)     Security audits. The Open Technology Fund has funded over 200 security audits and issued more than 2,500 security patches to open source internet freedom tools. All Open Technology Fund supported technologies are required to undergo security auditing to ensure these tools are as safe as possible for users in repressive information environments. Without continued support, such tools may put users at risk.

46.     Without reliable funding, not only is the Open Technology Fund at serious risk of imminent, irreparable injury, but so are millions of individuals worldwide who rely on the Open Technology Fund's resources to access and disseminate reliable information.

**CLAIMS FOR RELIEF**

**<u>COUNT ONE</u>**

**Administrative Procedure Act – 5 U.S.C. §§ 706(1), 706(2)(A)-(D)**

47.     All preceding and subsequent paragraphs are incorporated herein by reference.

48.     Under the Administrative Procedure Act ("APA"), a reviewing court "shall" "compel agency action unlawfully withheld or unreasonably delayed[.]" 5 U.S.C. § 706(1).

49.     The APA also provides that a court "shall" "hold unlawful and set aside agency action" found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law[,]" "contrary to constitutional right, power, privilege, or immunity[,]" "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right" or "without observance of procedure required by law[.]" *Id.* § 706(2)(A)–(D).

50.     USAGM has a non-discretionary duty to make appropriated funds available to the Open Technology Fund. 22 U.S.C. § 6208a(a)(2). Congress has appropriated funds specifically for the Open Technology Fund. 22 U.S.C. § 6208a(a); 138 Stat at 735; 138 Stat. at 1525; 138 Stat. at 1723; H.R. 1968, 119th Cong. § 1101(a).

51.     USAGM has not complied with its non-discretionary duty to make appropriated funds available to the Open Technology Fund by improperly withholding the $655,508 requested by the Open Technology Fund on February 26, 2025 under the 2024 Grant Agreement.

52.     USAGM has acted in a manner that is arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law. USAGM has a non-discretionary duty to disburse congressionally appropriated grant funds to the Open Technology Fund.

53.     USAGM has acted contrary to the Constitution. Congress was explicit in appropriating $43,500,000 for the Open Technology Fund. The U.S. Constitution vests Congress, and only Congress, with the power of the purse. The Executive Branch lacks authority to refuse to follow clear and express spending instructions given in duly passed legislation.

54.     USAGM has acted in excess of statutory jurisdiction, authority, or limitations, or short of statutory right. USAGM lacks statutory authority to impound or withhold the funding explicitly provided for the Open Technology Fund by Congress due to a change in "agency priorities."

55.     USAGM has acted without observance of procedure required by law. Congress granted the Advisory Board authority to suspend or debar the Open Technology Fund only upon a three-fourths vote in favor of such action. USAGM has not followed the exclusive congressionally mandated procedure for the suspension of the Open Technology Fund's appropriation.

56.     The Grant Termination is a final agency action that marks the consummation of USAGM's decision making process.

57.     Accordingly, the Open Technology Fund requests that this Court compel Defendants to (1) declare unlawful and set aside USAGM's termination of the 2023, 2024 and 2025 Grant Agreements,[1] (2) disburse the $655,508 in funding requested by the Open Technology Fund on February 26, 2025, and (3) order Defendants to obligate, approve, and disburse congressionally appropriated funds in accordance with the law.

## COUNT TWO

**Violations of the United States Constitution, including the
Presentment Clause (U.S. Const. art. I, § 7, cl. 2),
Appropriations Clause (U.S. Const. art. I, § 9, cl. 7),
Spending Clause (U.S. Const. art. I, § 8, cl. 1),
Take Care Clause (U.S. Const. art. II, § 3), and
Separation of Powers (U.S. Const. art. I, § 7, cl. 2, § 8, cl. 1, § 9, cl. 7, and art. II, § 3)**

58.     All preceding and subsequent paragraphs are incorporated herein by reference.

59.     This Court has inherent equitable power to enjoin unconstitutional executive conduct. *See Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477, 491 n.2 (2010).

---

[1] Funds available under the fiscal year 2023 and 2024 grants remain available to the Open Technology Fund during fiscal year 2025 because they are "no year" funds. Each Open Technology Fund grant agreement with USAGM contains a provision stating: "No-Year International Broadcasting Operations Funds: USAGM acknowledges that unlike other USAGM grantees, the funds provided to [the Open Technology Fund] are generally "no-year" funds.  (Specifically, they are from a specific sub-account of International Broadcasting Operations Funds which do not have an express statutory limit on the period of availability.)"

60. The Presentment Clause provides, in relevant part, "Every Bill which shall have passed the House of Representatives and the Senate, shall, before it become a Law, be presented to the President of the United States; If he approve he shall sign it, but if not he shall return it[.]" U.S. Const. art. I, § 7, cl. 2. Under the Presentment Clause, the President lacks authority to modify or amend duly enacted legislation (including appropriations)—the President may only "approve all the parts of a Bill, or reject it in toto." *Clinton v. City of New York*, 524 U.S. 417, 439-40 (1998) (citation omitted).

61. The Appropriations Clause of the Constitution provides, "No Money shall be drawn from the Treasury, but in Consequence of Appropriations made by Law[.]" U.S. Const. art. I, § 9, cl. 7. The Clause protects Congress's "exclusive power over the federal purse." *U.S. Dep't of Navy v. Fed. Lab. Rels. Auth.*, 665 F.3d 1339, 1346 (D.C. Cir. 2012) (quoting *Rochester Pure Waters Dist. v. EPA*, 960 F.2d 180, 185 (D.C. Cir. 1992)). The Executive Branch has no authority to circumvent Congress's appropriations power. *In re Aiken County*, 725 F.3d 255, 260-61 (D.C. Cir. 2013).

62. The Spending Clause of the Constitution provides, "The Congress shall have Power To lay and collect Taxes, Duties, Imposts and Excises, to pay the Debts and provide for the common Defence and general Welfare of the United States; but all Duties, Imposts and Excises shall be uniform throughout the United States." U.S. Const. art. I, § 8, cl. 1. The Spending Clause vests this spending power exclusively with the legislative branch. *Id.*

63. Under the Constitution, the executive power vested in the President and, by extension, all subordinate officers to whom he may delegate executive functions, includes the duty to "take Care that the Laws be faithfully executed[.]" U.S. Const. art. II, § 3. 77. The Take Care Clause commands the executive branch to faithfully execute the laws of the United States. *Id.*

64.     Numerous Constitutional provisions establish a Separation of Powers that place the legislative authority solely in the control of Congress and prohibit the Executive from encroaching upon legislative powers. *See* U.S. Const. art. I, § 7, cl. 2., § 8, cl. 1, § 9, cl. 7, and art. II, § 3.

65.     Defendants' unlawful impoundment of the Open Technology Fund's congressionally appropriated funds constitutes an unconstitutional modification and de facto partial veto of duly enacted appropriations legislation in violation of the Presentment Clause.

66.     Defendants' unlawful impoundment also circumvents Congress's power of the purse in violation of the Appropriations and Spendings Clauses and in violations of the Separation of Powers.

67.     Defendants' unlawful impoundment ignores specific congressional appropriations to the Open Technology Fund in violation of the Executive's constitutional obligation to "take Care that the Laws be faithfully executed[.]"

## COUNT THREE

### Mandamus Act; All Writs Act – 28 U.S.C. §§ 1361 and 1651

68.     All preceding and subsequent paragraphs are incorporated herein by reference.

69.     The Mandamus Act vests this Court with original jurisdiction over "any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361.

70.     The All Writs Act, 28 U.S.C. § 1651, authorizes this Court to issue all writs "necessary or appropriate" in aid of its jurisdiction.

71.     USAGM has a non-discretionary duty to make annual grants available to the Open Technology Fund from congressionally appropriated funds. 22 U.S.C. § 6208a(a).

72.     It is necessary and appropriate for this Court to issue a writ of mandamus pursuant to 28 U.S.C. §§ 1361 and 1651 and under this Court's equitable authority to compel Defendants to act.

## COUNT FOUR

### *Ultra Vires*

73.     All preceding and subsequent paragraphs are incorporated herein by reference.

74.     An agency acts *ultra vires* when it "plainly acts in excess of its delegated powers." *Fresno Cmty. Hosp. & Med. Ctr. v. Cochran*, 987 F.3d 158, 162 (D.C. Cir. 2021) (citations omitted).

75.     Judicial "[r]eview for *ultra vires* acts rests on the longstanding principle that if an agency action is unauthorized by the statute under which [the agency] assumes to act, the agency has violate[d] the law and the courts generally have jurisdiction to grant relief." *Nat'l Ass'n of Postal Supervisors v. U.S. Postal Serv.*, 26 F.4th 960, 970 (D.C. Cir. 2022) (internal quotations and citation omitted).

76.     This Court has inherent equitable power to enjoin *ultra vires* conduct by Defendants. *See Fed. Express Corp. v. U.S. Dep't of Com.*, 39 F.4th 756, 743 (D.C. Cir. 2022). No statute, constitutional provision, or other source of law authorizes Defendants to impound the Open Technology Fund's congressionally appropriated funds. To the contrary, the International Broadcasting Act and the relevant appropriations laws require that Defendants make available annual grants to the Open Technology Fund from congressionally appropriated funds. 22 U.S.C. § 6208a(a); 138 Stat at 735; 138 Stat. at 1525; 138 Stat. at 1723; H.R. 1968, 119th Cong. § 1101(a).

77.     Defendants' unlawful impoundment of the Open Technology Fund's congressionally appropriated funds is *ultra vires*.

## RELIEF REQUESTED

WHEREFORE, the Open Technology Fund respectfully requests that the Court:

A.      Issue a temporary restraining order and preliminary injunction to preserve the ability of the Open Technology Fund to operate while this litigation is pending;

B.      Declare that the termination of Grant FAIN OT01-25-GO-00001, Grant FAIN OT01-24-GO-00001, and Grant FAIN OT01-23-GO-0001 is unlawful and null and void;

C.      Order Defendants to cease their unlawful refusal to honor the Open Technology Fund's February 26, 2025 drawdown request to USAGM for operating funds in the amount of $655,508;

D.      Issue a permanent injunction barring Defendants from impounding the Open Technology Fund's congressionally appropriated funds and requiring Defendants to honor subsequent drawdown requests submitted by the Open Technology Fund made consistent with the USAGM Grant Agreements, USAGM procedure for grantee drawdown requests, the Open Technology Fund's financial plan previously approved by USAGM, and the congressional appropriations to the Open Technology Fund;

E.      Declare that Defendants are required by law to take all necessary steps to ensure that USAGM complies with the appropriations and grant agreements with Open Technology Fund through providing all congressionally appropriated funds;

F.      Award the Open Technology Fund's reasonable attorneys' fees and costs; and

G.      Grant such other relief as the Court deems necessary, just, and proper.

Dated this 20th day of March, 2025.

VAN NESS FELDMAN, LLP

/s/ *Patrick O. Daugherty*
Patrick O. Daugherty, D.C. Bar No. 981008
Anne Lynch, D.C. Bar No. 976226
Michael Farber, D.C. Bar No. 449215
      (*Admission Pending*)
2000 Pennsylvania Avenue, NW
Suite 6000
Washington, DC 20006
Tel.: 202-298-1800
Email: pod@vnf.com; alynch@vnf.com;
mfarber@vnf.com


Sophia E. Amberson, WA Bar No. 52528
      (*Pro Hac Vice Forthcoming*)
Liberty Quihuis, WA Bar No. 57779
      (*Pro Hac Vice Forthcoming*)
1191 Second Avenue
Suite 1800
Seattle, WA 98101
Tel.: 206-623-9372
Email:  samberson@vnf.com; lquihuis@vnf.com


*Attorneys for Plaintiff*