IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| OPEN TECHNOLOGY FUND,<br><br>      Plaintiff,<br><br>  v.<br><br>KARI LAKE et al.,<br><br>      Defendants. | Civil Action No. 1:25-cv-840-RCL<br><br>**PLAINTIFF'S REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER** |

  Defendants repeatedly question why the Court should provide emergency relief to the Open Technology Fund ("OTF"). The answer is simple: **Because Congress said so.**

  Why should the Court set aside the termination notice? Because while Congress said that Defendants can terminate the OTF grants for using grant funds for activities not consistent with its congressionally mandated mission, 22 U.S.C. § 6208a(d)(2), Defendants have not alleged such conduct and lack authority to terminate statutorily mandated programs in their entirety and impound the congressionally mandated funding for OTF's programs due solely to a change in "agency priorities."

  Why should the Court order Defendants to disburse $655,508 to OTF? Because Congress said that grants to OTF "shall be available" to carry out the "policy of the United States to promote internet freedom through programs . . . that preserve and expand the internet as an open, global space for freedom of expression and association." *Id.* §§ 6208a(a)(1), 6217(a). This amount is necessary for OTF to meet its payroll obligations on April 1, 2025 and other operating expenses and thereby continue achieving the policy goals set by Congress.

  OTF needs two forms of relief to survive beyond April 1, 2025:

Pl.'s Reply in Supp. of Mot. for Temp. Restraining Order - 1
*Open Technology Fund v. Kari Lake et al.*, No. 1:25-cv-840-RCL

*First*, OTF needs the Court to suspend the Defendants' unlawful grant terminations. Without this relief, OTF must wind down its congressionally appropriated activities in support of its congressionally mandated mission. For example, OTF provides Virtual Private Network ("VPN") services to over 45 million citizens in repressive regimes around the world that allow them to access the uncensored internet without fear of reprisal from the oppressive regimes that surveil their online activity. These contracts expire at midnight on March 31, 2025. Without relief, OTF will be unable to extend these contracts, over 45 million citizen-users living under authoritarian rule will be left in the dark, and OTF will be unable to further its obligation to implement and maintain "technologies that circumvent techniques used by authoritarian governments . . . to censor access to the internet[.]" *Id.* § 6208a(b)(1)(A). OTF cannot simply continue business as usual for the next 120 days before winding down its operations.[1] Without prompt relief, the irreparable harm to OTF's congressionally mandated mission will occur imminently.

*Second*, OTF needs the Court to order Defendants to honor their obligation to disburse congressionally mandated funding to OTF in the amount of $655,508 so that OTF can make payroll on April 1, 2025 and pay other essential operating expenses. This amount is identical to the amount projected in the Financial Plan (Revised) previously approved by Defendants on December 13, 2024. 2d Cunningham Decl., ¶ 4 & Ex. C.

With these two forms of relief, OTF can continue to meet its statutory obligations until a hearing and decision on OTF's forthcoming motion for preliminary injunction can take place.

---

[1] Order at 4, *RFE/RL, Inc. v. Lake*, No. 1:25-cv-799-RCL (D.D.C. Mar. 25, 2025), ECF 14 ("RFE/RL TRO Order") ("The liquidation process, according to the termination notice and the pertinent regulations, must begin right away.") (citing 2 C.F.R. § 200.472(a)(2)).

Pl.'s Reply in Supp. of Mot. for Temp. Restraining Order - 2
*Open Technology Fund v. Kari Lake et al.*, No. 1:25-cv-840-RCL

**ARGUMENT**

Defendants' brief in this matter largely repeats the arguments advanced in the related case. *Compare* ECF 7 *and* Defs.' Opp'n to Pl.'s Mot. for a Temporary Restraining Order, *RFE/RL, Inc. v. Lake*, No. 1:25-cv-799 (D.D.C. Mar. 21, 2025), ECF 9. Those arguments were ably rebutted by RFE/RL, Inc. ("RFE/RL"). Pl.'s Reply in Supp. of Its Mot. for a Temporary Restraining Order, *RFE/RL, Inc. v. Lake*, No. 1:25-cv-799 (D.D.C. Mar. 23, 2025), ECF 11. To avoid repetition, OTF adopts and incorporates those arguments as if set forth fully herein.

OTF is also aware that this Court has already concluded that RFE/RL is likely to succeed on the merits of its nearly identical Administrative Procedure Act claim. RFE/RL TRO Order at 5-6. The legal issues at stake in these two related proceedings are nearly identical. This reply, therefore, is limited to addressing the irreparable harms faced by OTF which are similar to, but not perfectly identical to, those faced by RFE/RL.

**I.      OTF Is Likely to Suffer Irreparable Harm Without Immediate Relief.**

OTF previously provided a detailed explanation of the irreparable and imminent harm it faces without relief from the termination notice. Mem. in Supp. of Pl.'s Mot. for Temporary Restraining Order at 35-39, ECF 4-1. OTF wishes to briefly emphasize and expand upon two such harms in response to arguments made by Defendants.

First, one of the key programs operated by OTF is providing VPN access to citizens living under authoritarian governments. OTF's Multilateral Surge and Sustain Fund provides secure and uncensored access to the internet to over 45 million people in such conditions. 1st Cunningham Decl., ¶ 18, ECF 4-2. This program is consistent with OTF's functions, as established by Congress. *See* 22 U.S.C. § 6208a(b)(1)(A) ("[T]he Open Technology Fund shall seek to advance freedom of the press and unrestricted access to the internet in repressive environments overseas, and shall research, develop, implement, and maintain technologies that

circumvent techniques used by authoritarian governments, nonstate actors, and others to block or censor access to the internet, including circumvention tools that bypass internet blocking, filtering, and other censorship techniques used to limit or block legitimate access to content and information[.]"). It is also consistent with federal policy enshrined in statutes. *See id.* § 6217(a) ("It is the policy of the United States to promote internet freedom through programs . . . that preserve and expand the internet as an open, global space for freedom of expression and association, which shall be prioritized for countries whose governments restrict freedom of expression on the internet."). Although a portion of this program was briefly the subject of a review by the State Department, the State Department has already determined that this ongoing work is vital to the country's national interests and should proceed. 1st Cunningham Decl., ¶ 12. OTF provides these services to users free of charge in an efficient and cost-effective manner, at an average cost of about $0.07 per user per month to the taxpayer.[2] Commercially available VPN services can cost 50-200 times more and are very unlikely to be available, safe, or reliable in the regions where OTF's services are needed most.

Without relief from the unlawful termination notice, this vital program will cease to exist on April 1, 2025. The existing contracts expire at midnight on March 31, 2025. Although OTF has congressionally appropriated funds on hand[3] and available to renew these contracts, it cannot do so if it is subject to the termination notice. This Court recognized in the RFE/RL proceeding that if the termination notice is in effect, liquidation must begin right away. RFE/RL TRO Order at 4.

---

[2] *See* U.S. Agency for Global Media, "OTF increases funding for circumvention tools to support 46 million monthly users" (Apr. 18, 2024), https://www.usagm.gov/2024/04/18/otf-increases-funding-for-circumvention-tools-to-support-46-million-monthly-users/.

[3] Grant agreement restrictions prevent OTF from using funds previously disbursed for the purpose of VPN services from being used to cover other urgent needs, like payroll.

Pl.'s Reply in Supp. of Mot. for Temp. Restraining Order - 4
*Open Technology Fund v. Kari Lake et al.*, No. 1:25-cv-840-RCL

Second, OTF's request for $655,508 to be disbursed is the precise amount set forth in OTF's U.S. Agency for Global Media-approved Financial Plan. Ex. C. As set forth in the financial plan, $542,733 of this amount is necessary to pay personnel costs while the remainder goes to essential monthly operating expenses. These expenses are the bare minimum needed to allow OTF to continue implementing its congressionally mandated mission. Without this funding, many of OTF's 32 employees will lose their jobs and benefits with very little notice. 1st Cunningham Decl., ¶ 15. OTF itself also faces imminent closure. *Id.* This Court has recognized that harm that "threatens the very existence of the movant's business" is irreparable. RFE/RL TRO Order at 7 (quoting *Climate United Fund v. Citibank, N.A.*, No. 25-cv-698-TSC, 2025 WL 842360, at *10 (D.D.C. Mar. 18, 2025) (quoting *Wis. Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985))).

## II.     The Balance of the Equities and Public Interest Favor Granting the TRO.

The balance of the equities and the public interest factors "merge when the Government is the opposing party." *Am. Ass'n of Pol. Consultants v. U.S. Small Bus. Admin.*, 613 F. Supp. 3d 360, 365 (D.D.C. 2020) (quoting *Nken v. Holder*, 556 U.S. 418, 435 (2009)). "[T]here is a substantial public interest 'in having governmental agencies abide by the federal laws that govern their existence and operations.'" *League of Women Voters of the U.S. v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016) (citation omitted).

The public interest in protecting and preserving OTF's mission is no less important than that determined by this Court with regard to RFE/RL. When RFE/RL began broadcasting in 1950, radio was the dominant form of global communication. Seventy-five years later, the internet dominates. Congress recognized this fact when it called for OTF to receive grants "for the purpose of promoting . . . unrestricted access to uncensored sources of information via the internet to enable journalists, including journalists employed by . . . Radio Free Europe/Radio

Pl.'s Reply in Supp. of Mot. for Temp. Restraining Order - 5
*Open Technology Fund v. Kari Lake et al.*, No. 1:25-cv-840-RCL

Liberty, . . . to create and disseminate . . . news and information[.]" 22 U.S.C. § 6208a(a)(1). OTF's operations further the express policy of the United States to "promote internet freedom through programs . . . that preserve and expand the internet as an open, global space for freedom of expression and association" especially in countries whose governments restrict access to the truth.

## CONCLUSION

OTF respectfully requests that its Motion for Temporary Restraining Order be Granted, and that in particular, (1) the grant termination be suspended pending the Preliminary Injunction hearing so that OTF can continue its congressionally mandated activities; and (2) that Defendants be ordered to honor the February 26, 2025 disbursement request in the amount of $655,508 so that OTF can meet its payroll obligations on April 1, 2025.

Dated this 26th day of March 2025.

Respectfully submitted,

VAN NESS FELDMAN, LLP

/s/ *Patrick O. Daugherty*
Patrick O. Daugherty, D.C. Bar No. 981008
Michael Farber, D.C. Bar No. 449215
    (*Admission Pending*)
2000 Pennsylvania Avenue, NW
Suite 6000
Washington, DC 20006
Tel.: 202-298-1800
Email: pod@vnf.com; mfarber@vnf.com

>  Sophia E. Amberson, WA Bar No. 52528
>          (*Pro Hac Vice Pending*)
>  Liberty Quihuis, WA Bar No. 57779
>          (*Pro Hac Vice Pending*)
>  1191 Second Avenue
>  Suite 1800
>  Seattle, WA 98101
>  Tel.: 206-623-9372
>  Email:  samberson@vnf.com; lquihuis@vnf.com
>
>  *Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

      I hereby certify that on this 26th day of March 2025, a true and correct copy of the foregoing was filed using the Court's CM/ECF filing system, which shall send notice to all counsel of record.

                              /s/ *Patrick O. Daugherty*
                              Patrick O. Daugherty