## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| OPEN TECHNOLOGY FUND,<br><br>                        Plaintiff,<br><br>  v.<br><br>KARI LAKE et al.,<br><br>                       Defendants. | Civil Action No. 1:25-cv-840-RCL<br><br>**MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION** |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ iv

INTRODUCTION ............................................................................................................... 1

BACKGROUND ................................................................................................................. 2

    A.    OTF Operates Pursuant to a Congressional Mandate to Advance Internet
          Freedom and Security. ....................................................................................... 3

    B.    OTF Is Funded by Nondiscretionary Congressional Appropriations. ................... 6

    C.    The OTF Grant Agreements ................................................................................. 7

    D.    USAGM's Termination of OTF's Grant .............................................................. 8

    E.    USAGM's Grantees Are Forced to Seek Judicial Relief. ...................................... 9

    F.    USAGM Continues to Withhold Funds in Contravention of Its Statutory
          Mandates. ......................................................................................................... 10

JURISDICTION ............................................................................................................... 12

    A.    This Court Has Jurisdiction. ............................................................................... 12

    B.    The Supreme Court's Decision in *Department of Education v. California*
          Does Not Change This Court's Jurisdiction. ....................................................... 15

LEGAL STANDARD ....................................................................................................... 16

ARGUMENT ................................................................................................................... 17

I.    OTF Is Likely to Succeed on the Merits of Its Claims. ...................................... 17

    A.    The Withholding of OTF's Grant Funds Violates the APA. ............................... 17

          1.    USAGM Is Statutorily Required to Distribute OTF's Grant Funds
               and Its Refusal to Do So Is Agency Action Unlawfully Withheld. .......... 17

          2.    USAGM's Withholding Decision and Ongoing Refusal to Disburse
               OTF's Grant Funds Is Subject to Judicial Review. .................................. 20

          3.    The Withholding Decision and Ongoing Refusal to Disburse OTF's
               Grant Funds Are Not in Accordance with Law. ....................................... 21

          4.    USAGM's Withholding Decision Is Arbitrary and Capricious. ............... 23

    B.    OTF Is Also Likely to Succeed under Alternative Forms of Relief. ................... 24

1. The Withholding Decision Is Ultra Vires. .................................................. 25

2. OTF Is Likely to Succeed on Its Request for Mandamus Relief. ............ 27

C. The Withholding Decision and Failure to Disburse OTF's Grant Funds Violates the U.S. Constitution. ............................................................ 27

II. OTF Will Suffer Irreparable Harm If a Preliminary Injunction Is Not Granted.............. 29

A. OTF Cannot Continue Normal Operations Without Access to Appropriated Funds.................................................................................. 29

B. A Freeze in Funding Puts OTF Programs and Partners at Risk........................... 31

C. Without Access to Appropriated Funds, OTF Will Suffer Irreparable Harm to Its Reputation as a Trusted Partner in the Global Effort to Fight Digital Authoritarianism. ........................................................... 32

D. Damages Are Unavailable and Would Not Cure the Harms Caused by the Withholding Decision. ......................................................... 33

III. The Balance of Equities and the Public Interest Support Issuing a Preliminary Injunction. ........................................................................... 34

IV. The Court Should Waive Any Bond Requirement. ......................................... 35

CONCLUSION................................................................................................ 36

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abdullah v. Obama,*
    753 F.3d 193 (D.C. Cir. 2014) ............................................................................16

*AIDS Vaccine Advoc. Coal. v. U.S. Dep't of State,*
    ___ F. Supp. 3d ___, No. 25-cv-400, 2025 WL 485324 (D.D.C. Feb. 13,
    2025) ..............................................................................................................23, 30

*AIDS Vaccine Advoc. Coal. v. U.S. Dep't of State,*
    ___ F. Supp. 3d ___, No. 25-cv-400, 2025 WL 752378 (D.D.C. Mar. 10,
    2025) ....................................................................................................................28

*Ark Initiative v. Tidwell,*
    816 F.3d 119 (D.C. Cir. 2016) ............................................................................23

*Armour & Co. v. Freeman,*
    304 F.2d 404 (D.C. Cir. 1962) ............................................................................33

*Armstrong v. Exceptional Child Ctr., Inc.,*
    575 U.S. 320 (2015) ............................................................................................27

*Atlas Air, Inc. v. Int'l Bhd. of Teamsters,*
    280 F. Supp. 3d 59 (D.D.C. 2017) ......................................................................33

*Bailey v. Fed. Bureau of Prisons,*
    No. 24-cv-1219, 2024 WL 3219207 (D.D.C. June 28, 2024) ..............................35

*Bennett v. Spear,*
    520 U.S. 154 (1997) ............................................................................................21

*Bowen v. Massachusetts,*
    487 U.S. 879 (1988) ............................................................................................14

*Brendsel v. Off. of Fed. Hous. Enter. Oversight,*
    339 F. Supp. 2d 52 (D.D.C. 2004) ......................................................................33

*Bridgeport Hosp. v. Becerra,*
    108 F.4th 882 (D.C. Cir. 2024) .....................................................................18, 26

*Burlington Truck Lines, Inc. v. United States,*
    371 U.S. 156 (1962) ............................................................................................23

*California v. U.S. Dep't of Educ.,*
    132 F.4th 92 (1st Cir. 2025) ................................................................................15

*City & Cnty. of San Francisco v. Trump*,
   897 F.3d 1225 (9th Cir. 2018) .................................................................................28

*Climate United Fund v. Citibank, N.A.*,
   ___ F. Supp. 3d ___, No. 25-cv-698, 2025 WL 842360 (D.D.C. Mar. 18,
   2025) ......................................................................................................................35

*Clinton v. City of New York*,
   524 U.S. 417 (1998).................................................................................................28

*Commc'ns & Control, Inc. v. Fed. Commc'ns Comm'n*,
   374 F.3d 1329 (D.C. Cir. 2004) .........................................................................22, 24

*Consumer Fin. Prot. Bureau v. Cmty. Fin. Servs. Ass'n of Am.*,
   601 U.S. 416 (2024).................................................................................................19

*Costa v. Bazron*,
   456 F. Supp. 3d 126 (D.D.C. 2020) ........................................................................16

*Cresote Council v. Johnson*,
   555 F. Supp. 2d 36 (D.D.C. 2008).........................................................................35

*Crowley Gov't Srvs., Inc. v. Gen. Srvs. Admin.*,
   38 F.4th 1099 (D.C. Cir. 2022)...............................................................................13

*Dep't of Educ. v. California*,
   145 S. Ct. 966 (2025) (per curiam).........................................................................15

*Dep't of State v. AIDS Vaccine Advoc. Coal.*,
   145 S. Ct. 753 (2025)..............................................................................................16

*Dole v. Williams Enters., Inc.*,
   876 F.2d 186 (D.C. Cir. 1989)..................................................................................2

*Encino Motorcars, LLC v. Navarro*,
   579 U.S. 211 (2016)................................................................................................24

*Env't Def. Fund, Inc. v. Hardin*,
   428 F.2d 1093 (D.C. Cir. 1970) ................................................................................2

*Fed. Express Corp. v. U.S. Dep't of Com.*,
   39 F.4th 756 (D.C. Cir. 2022).................................................................................25

*Feinerman v. Bernardi*,
   558 F. Supp. 2d 36 (D.D.C. 2008).........................................................................33

*Forest Guardians v. Babbitt*,
   174 F.3d 1178 (10th Cir. 1999) ..............................................................................18

*Friedman v. Fed. Aviation Admin.*,
    841 F.3d 537 (D.C. Cir. 2016) .......................................................................... 20

*Karem v. Trump*,
    960 F.3d 656 (D.C. Cir. 2020) .......................................................................... 16

*Katz v. Cisneros*,
    16 F.3d 1204 (Fed. Cir. 1994) ........................................................................... 14

*League of Women Voters of the U.S. v. Newby*,
    838 F.3d 1 (D.C. Cir. 2016) ................................................................. 29, 31, 35

*Md. Dep't of Hum. Res. v. Dep't of Health & Hum. Srvs.*,
    763 F.2d 1441 (D.C. Cir. 1985) ......................................................................... 13

*Megapulse, Inc. v. Lewis*,
    672 F.2d 959 (D.C. Cir. 1982) ........................................................................... 13

*Nat'l Ass'n of Postal Supervisors v. U.S. Postal Serv.*,
    26 F.4th 960 (D.C. Cir. 2022) ........................................................................... 25

*Nat'l Council of Nonprofits v. OMB*,
    ___ F. Supp. 3d ___, No. 25-cv-239, 2025 WL 368852 (D.D.C. Feb. 3, 2025) ................... 30

*Nat'l Ctr. for Mfg. Scis. v. United States*,
    114 F.3d 196 (Fed. Cir. 1997) ........................................................................... 14

*Nat'l Mining Ass'n v. Jackson*,
    768 F. Supp. 2d 34 (D.D.C. 2011) ..................................................................... 33

*Northern Mariana Islands v. United States*,
    686 F. Supp. 2d 7 (D.D.C. 2009) .................................................................. 29, 35

*Norton v. S. Utah Wilderness All.*,
    542 U.S. 55 (2004) ................................................................................... 17, 20

*Oceana, Inc. v. Locke*,
    670 F.3d 1238 (D.C. Cir. 2011) ......................................................................... 21

*Open Cmty. All. v. Carson*,
    286 F. Supp. 3d 148 (D.D.C. 2017) ................................................................... 33

*PFLAG, Inc. v. Trump*,
    No. CV 25-337, 2025 WL 510050 (D. Md. Feb. 14, 2025) ................................... 28

*Potomac Elec. Power Co. v. Interstate Com. Comm'n*,
    702 F.2d 1026 ........................................................................................... 27

*R.I.L-R v. Johnson*,
    80 F. Supp. 3d 164 (D.D.C. 2015) ....................................................................................35

*Ramirez v. U.S. Immigr. & Customs Enf't*,
    471 F. Supp. 3d 88 (D.D.C. 2020) .....................................................................................17

*Reliable Automatic Sprinkler Co., Inc. v. Consumer Prod. Safety Comm'n*,
    324 F.3d 726 (D.C. Cir. 2003) ..........................................................................................21

*Richardson v. Trump*,
    496 F. Supp. 3d 165 (D.D.C. 2020) ..................................................................................34

*Sackett v. EPA*,
    566 U.S. 120 (2012) ..........................................................................................................21

*Simms v. District of Columbia*,
    872 F. Supp. 2d 90 (D.D.C. 2012) .....................................................................................35

*Tex. Children's Hosp. v. Burwell*,
    76 F. Supp. 3d 224 (D.D.C. 2014) .....................................................................................33

*TikTok Inc. v. Trump*,
    507 F. Supp. 3d 92 (D.D.C. 2020) .....................................................................................35

*Train v. City of New York*,
    420 U.S. 35 (1975) ............................................................................................................19

*Transohio Sav. Bank v. Dir., Off. of Thrift Supervision*,
    967 F.2d 598 (D.C. Cir. 1992), *abrogated in part on other grounds by Perry
    Cap. LLC v. Mnuchin*, 864 F.3d 591 (D.C. Cir. 2017) ............................................13

*Turner v. USAGM*,
    502 F. Supp. 3d 333 (D.D.C. 2020) ..................................................................................34

*U.S. Conference of Catholic Bishops v. U.S. Dep't of State*,
    ___ F. Supp. 3d ___, 2025 WL 763738 (D.D.C. Mar. 11, 2025), *appeal
    docketed* (D.C. Cir. No. 25-5066) .............................................................................15, 16

*U.S. Dep't of the Navy v. Fed. Lab. Rels. Auth.*,
    665 F.3d 1339 (D.C. Cir. 2012) ........................................................................................27

*United States v. Monsanto*,
    491 U.S. 600 (1989) ..........................................................................................................18

*United States v. New York*,
    708 F.2d 92 (2d Cir. 1983) ................................................................................................33

*Vietnam Veterans of Am. v. Shinseki,*
    599 F.3d 654 (D.C. Cir. 2010) ........................................................................27

*Widakuswara v. Lake,*
    ___ F. Supp. 3d ___, No. 25-cv-1015-RCL, 2025 WL 1166400 (D.D.C. Apr.
    22, 2025) ......................................................................................... *passim*

*Winter v. Nat. Res. Def. Council, Inc.,*
    555 U.S. 7 (2008) ..........................................................................................16

*Wis. Gas Co. v. Fed. Energy Regul. Comm'n,*
    758 F.2d 669 (D.C. Cir. 1985) ........................................................................30

*Xiaomi Corp. v. Dep't of Def.,*
    No. 21-cv-280, 2021 WL 950144 (D.D.C. Mar. 12, 2021) ...................................33

*Youngstown Sheet & Tube Co. v. Sawyer,*
    343 U.S. 579 (1952) ......................................................................................29

**Statutes**

2 U.S.C. § 682 et seq ............................................................................................21

2 U.S.C. § 683 .....................................................................................................22

2 U.S.C. § 683(b) .................................................................................................22

5 U.S.C. § 704 .....................................................................................................12

5 U.S.C. § 706(1) ........................................................................................17, 20, 27

5 U.S.C. § 706(2) ...........................................................................................17, 20

5 U.S.C. § 706(2)(A) .............................................................................................23

22 U.S.C. § 6203 ..................................................................................................19

22 U.S.C. § 6204 ..................................................................................................19

22 U.S.C. § 6204(a) ..............................................................................................25

22 U.S.C. § 6204(a)(6) ..........................................................................................15

22 U.S.C. § 6205 ...............................................................................................7, 19

22 U.S.C. § 6205(f)(1) .....................................................................................20, 26

22 U.S.C. § 6205(f)(3) ...........................................................................................20

22 U.S.C. § 6207(f) ................................................................................................. 15

22 U.S.C. § 6208 ...................................................................................................... 15

22 U.S.C. § 6208a ................................................................................................. 3, 18

22 U.S.C. § 6208a(a)(1) .............................................................................. 3, 18, 19, 26

22 U.S.C. § 6208a(a)(2) ............................................................................................ 18

22 U.S.C. § 6208a(b) .............................................................................................. 3, 4

22 U.S.C. § 6208a(e) .................................................................................................. 7

22 U.S.C. § 6208a(e)(2) ............................................................................................ 18

22 U.S.C. § 6208a(f) ................................................................................................. 18

22 U.S.C. § 6306(d) .................................................................................................... 4

28 U.S.C. § 1331 ...................................................................................................... 12

28 U.S.C. § 1491(a)(1) .............................................................................................. 12

31 U.S.C. § 1301(a) .................................................................................................. 22

American Relief Act, 2025, Pub. L. No. 118-158, 138 Stat. 1722 (2024) ..................... 7

Anti-Deficiency Act, Pub. L. No. 97-258, 96 Stat. 929 (1982) ................................... 21

Congressional Budget and Impoundment Control Act of 1974, Pub. L. No. 93-
    344, 88 Stat. 297 (1974) ...................................................................................... 21

Continuing Appropriations Act, 2025, Pub. L. No. 118-83, 138 Stat. 1524 (2024) ....... 6

Full Year Continuing Appropriations and Extensions Act, 2025, Pub. L. No. 119-
    4, 139 Stat. 9 (2025) ............................................................................................. 7

Further Consolidated Appropriations Act of 2024, Pub. L. No. 118-47, 138 Stat.
    460 (2024) ..................................................................................... 6, 18, 19, 26

National Defense Authorization Act for Fiscal Year 2024, Pub. L. No. 118-31,
    137 Stat. 136 (2023) .............................................................................................. 4

William M. (Mac) Thornberry National Defense Authorization Act for Fiscal
    Year 2021, Pub. L. No. 116-283, 134 Stat. 3388 (2020) ......................................... 3

**Regulations**

2 C.F.R. § 200.308(e)(2) ................................................................................................8

2 C.F.R. § 200.414(f) ....................................................................................................6

170 Cong. Rec. H2097 (daily ed. Mar. 22, 2024) ...............................................6, 18

**Other Authorities**

Executive Order 14238, 90 Fed. Reg. 13,043 (Mar. 20, 2025) ....................................8, 9

U.S. Const. art. I, § 8, cl. 1 ..........................................................................................28

U.S. Const. art. II, § 3 ..................................................................................................28

# INTRODUCTION

Here we go again. Open Technology Fund ("OTF") filed this case on March 20, 2025, after the U.S. Agency for Global Media ("USAGM") terminated OTF's grant agreements on March 15, 2025, despite appropriations enacted that same day that expressly directed funding to OTF. After OTF filed for a temporary restraining order, USAGM withdrew the unlawful grant termination and disbursed OTF's March 2025 operating funds. OTF then withdrew its motion for temporary restraining order. Now—despite its prior representations to OTF and the Court that the grant agreements were "back in effect"—USAGM is acting as though it never withdrew the grant termination. USAGM has not disbursed OTF's April operating funds of $780,508 that USAGM should have disbursed on or about April 1, 2025 pursuant to congressional appropriation and OTF's financial plan that USAGM itself approved. USAGM has ignored repeated requests to disburse these funds to OTF while refusing to explain its refusal. USAGM has also cancelled all future occurrences of OTF's long-standing weekly meeting with USAGM's budget office.

While OTF has limited authority to reprogram grant funds already on hand to cover its essential operating costs, USAGM's arbitrary and capricious failure to disburse OTF's operating funds comes at a high price. Each month that OTF is forced to use reprogrammed funds to survive, it must use funds initially allocated to provide open and uncensored internet access for approximately 7,000,000 people, primarily located in Russia, Iran, and Myanmar. OTF now moves for a preliminary injunction to obtain the funding that Congress appropriated, and which is past-due under OTF's grant and financial plan—both of which were approved and signed by USAGM.

USAGM's actions constitute a *de facto* termination of OTF's Grant Agreement FAIN OT01-24-GO-0001 (covering the period October 1, 2023 through September 30, 2026) (the "FY2024 Grant Agreement"). "[W]hen administrative inaction has precisely the same impact on the rights of the parties as denial of relief, an agency cannot preclude judicial review by casting its

decision in the form of inaction rather than in the form of an order denying relief." *Env't Def. Fund, Inc. v. Hardin*, 428 F.2d 1093, 1099 (D.C. Cir. 1970) (citations omitted).[1] Accordingly, USAGM's decision to withhold funds from OTF (the "Withholding Decision") is reviewable agency action or inaction under the Administrative Procedure Act ("APA").

OTF is likely to succeed on the merits of its statutory and constitutional claims. USAGM's actions violate well-established constitutional provisions that grant Congress the authority to make laws and determine how funds are appropriated in furtherance of those laws. This Court has recognized that, for USAGM, "disbursing congressional appropriations are statutorily required." *Widakuswara v. Lake*, ___ F. Supp. 3d ___, No. 25-cv-1015-RCL, 2025 WL 1166400, at *13 (D.D.C. Apr. 22, 2025). OTF and others face substantial irreparable harm from USAGM's Withholding Decision. OTF's technology is critical to protecting billions of people around the globe from persecution, repression, and censorship. The balance of the equities and public interest also tip sharply in OTF's favor. USAGM's Withholding Decision is a *de facto* termination of OTF, and if not addressed, will take away OTF's lifeline, ending congressionally mandated support for citizens around the world seeking secure access to the internet in areas where such access would otherwise be difficult, if not impossible.

## BACKGROUND

Incorporated in 2019, OTF's mission is to promote "global internet freedom by countering internet censorship and repressive surveillance and protect[ing] the internet as a platform for the free exchange of ideas, promotion of human rights and democracy, and advancement of a free press[.]" William M. (Mac) Thornberry National Defense Authorization Act for Fiscal Year 2021

---

[1] *Dole v. Williams Enters., Inc*., 876 F.2d 186, 189 n.2 (D.C. Cir. 1989) ("For purposes of this case, we wholeheartedly embrace the now-infamous 'duck test,' dressed up in appropriate judicial garb: 'WHEREAS it looks like a duck, and WHEREAS it walks like a duck, and WHEREAS it quacks like a duck, WE THEREFORE HOLD that it is a duck.'").

("FY2021 NDAA"), Pub. L. No. 116-283, § 1299P, 134 Stat. 3388, 4016 (2020) (codified at 22 U.S.C. § 6208a(b)). In furtherance of this mission, Congress has directed USAGM to "make annual grants for the purpose of promoting . . . unrestricted access to uncensored sources of information via the internet" thereby enabling journalists to "create and disseminate" news and information. 22 U.S.C. § 6208a(a)(1). Since OTF's inception, Congress has appropriated money that it directs to be distributed to OTF by USAGM via grant agreements.

OTF has three active grant agreements—for fiscal year ("FY") 2023,[2] FY2024, and FY2025. On March 15, 2025 USAGM terminated the grants. USAGM rescinded the termination of the Grant Agreement FAIN OT01-25-GO-00001 (the "FY2025 Grant Agreement"), later confirming that the recission letter covered "'any other grants' with USAGM including [OTF's] FY 2023 and FY 2024 grants." *See* ECF 15 at 3. USAGM also asserted "the grants are 'back in effect[.]'" *Id.* On the basis of those representations, OTF withdrew its Motion for a Temporary Restraining Order. *See* ECF 19. Now, despite the terminations being rescinded and USAGM's confirmation that the FY2024 grant remains "in effect," USAGM continues to refuse to disburse the OTF's appropriated funds, including the FY2024 funds owed to OTF under the USAGM-approved FY2024 Financial Plan.

A.    **OTF Operates Pursuant to a Congressional Mandate to Advance Internet Freedom and Security.**

OTF is a nonprofit corporation organized under the laws of the District of Columbia that supports internet freedom technologies. *See* ECF 4-2, Declaration of Laura Cunningham in support of Motion for Temporary Restraining Order ("First Cunningham Decl."), ¶ 1. Congress set OTF's mission vis-a-vis the FY2021 NDAA. 134 Stat. at 4016-4025 (codified at 22 U.S.C. § 6208a); *see*

---

[2] The FY2023 grant agreement has only approximately $50,000 in remaining funds available and is not discussed further in this motion.

*also* First Cunningham Decl., ¶ 1. Congress mandated that OTF research, develop, implement, and maintain technologies that support open access to information and secure communication, advance internet freedom, help maintain the technological advantage of the United States over authoritarian governments, and develop, acquire, and distribute freedom technologies and techniques. 22 U.S.C § 6208a(b).

In the National Defense Authorization Act for Fiscal Year 2024 ("FY2024 NDAA"), Congress established a Digital Connectivity and Cybersecurity Partnership, Pub. L. No. 118-31, § 6306, 137 Stat. 136, 989 (2023), and directed that, in developing and conceptualizing the implementation of the plan, "the Secretary [of State] shall consult with . . . the Open Technology Fund" among others, 22 U.S.C. § 6306(d), 137 Stat. at 989, and made funds available for that purpose. To comply with this directive, OTF pioneers open-source internet freedom technologies that counter authoritarian information controls and enhance digital security and privacy so that all people can access the internet and the free flow of information. First Cunningham Decl., ¶¶ 4–5. This includes supporting anti-censorship tools for 45 million users in the world's most repressive environments and supporting over 400 interventions in over 80 countries in response to urgent, state-sponsored digital attacks. *Id.* ¶¶ 12, 23.

Today, over two billion people around the world use OTF-supported technology on a daily basis, and more than two-thirds of all mobile phone users have OTF-incubated technology on their devices. *Id.* ¶ 5. OTF currently has ongoing activities in 60 different countries. *Id.* ¶ 18. By orders of magnitude, OTF is the largest funder and project partner in the internet freedom space, specializing in technical solutions to digital authoritarianism. *Id.* ¶ 20. Increasingly, digital authoritarianism is being embraced by regimes worldwide in efforts to stymie access to a free and open internet. *Id.* ¶ 18. For example, OTF's Security Lab has investigated and exposed apps used

for repressive surveillance throughout China, including tools used by the government to target religious minority Uyghur Muslims in Xinjiang province as well as tourists entering the region, *id.* ¶¶ 21, 33; in Iran OTF supported the infrastructure costs of carrying additional circumvention users—approximately 26 million—for a number of Virtual Private Network ("VPN") providers, *id.* ¶¶ 23, 34; and in Myanmar OTF's Rapid Respond Fund Partners deployed mirror sites of blocked independent media cites to allow residents to access these publications in both English and Burmese without fear of retribution. *Id.* ¶¶ 21, 36.

To help combat state surveillance and repressive tactics, OTF helps fund development of and access to technologies such as VPN and Messaging Layer Security ("MLS"). *Id.* ¶¶ 17, 22. A VPN provides a user with a secure, encrypted connection between their device and the internet by masking the IP address, location, and encrypting data. *Id.* ¶¶ 17–18. Today VPNs are an essential prerequisite for tens of millions of people to be able to access the global internet. *Id.* ¶ 18. OTF has ongoing active contracts with partners in highly repressive environments. *Id.* ¶ 20. Traditional communication methods such as cell service, email, instant messaging or social media can leave a user vulnerable to data collection and surveillance. *Id.* ¶¶ 17–18. End-to-end encryption protects the privacy of data being transmitted between a sender and a receiver. *Id.* ¶¶ 22, 29. The encryption is applied to the data at the source (sender) and can only be decrypted by the intended recipient (receiver). No one can access or view the encrypted information, not even the provider of the messaging-service. OTF was an early funder of the Signal Protocol, which underlies many of the most popular secure communications technologies in the world, including WhatsApp. *Id.* ¶ 29. OTF is now funding the development and implementation of MLS, which extends the privacy and security of end-to-end encryption to complex messaging environments comprising large groups with many senders and receivers.

With 32 full-time employees, OTF oversees 149 active programmatic contracts totaling over $71 million essential to carrying out its congressionally mandated mission and 23 operational contracts and leases for enterprise services, office space, and supplies. *Id*. ¶ 12. All of these contracts are funded in whole or in part with federal appropriations. *Id.* The employees of these contractors are highly skilled developers and security experts who focus on the challenges presented by authoritarian censorship and information controls. *Id*. ¶ 19. OTF's staffing is already lean. OTF's operating costs are approximately 50 percent below the limit established in federal regulations. *Id.* ¶ 25; 2 C.F.R. § 200.414(f).

**B.    OTF Is Funded by Nondiscretionary Congressional Appropriations.**

Congress has provided money to OTF through a specific appropriation every year since OTF was created. *See* ECF 4-1 at 6-7. Relevant to this motion are the funds authorized for FY2024.

For FY2024, Congress provided that "Subject to subsection (b), funds appropriated by this Act under titles III through V **shall be made available in the amounts specifically designated** in the respective tables included in the explanatory statement described in section 4 (in the matter preceding division A of this consolidated Act)." Further Consolidated Appropriations Act of 2024 ("FY2024 FCAA"), Pub. L. No. 118-47, §§ 7019, 7050, 138 Stat. 460, 771-772, 833 (2024) (emphasis added). The referenced table includes a specific line item for OTF to be funded at $43,500,000. 170 Cong. Rec. H2097 (daily ed. Mar. 22, 2024); *see also id.* at H2089. The FY2024 FCAA also provided additional funding of "not less than $94,000,000 shall be made available for programs to promote Internet freedom globally," 138 Stat. at 833, which provides the basis for an additional grant to OTF from the State Department.

It is also noteworthy that Congress has continued funding for OTF through FY2025 through the multiple continuing resolutions, including most recently, last month. Continuing Appropriations Act, 2025 ("First Continuing Resolution"), Pub. L. No. 118-83, 138 Stat. 1524

(2024); the American Relief Act, 2025 ("Second Continuing Resolution"), Pub. L. No. 118-158, 138 Stat. 1722 (2024); Full Year Continuing Appropriations and Extensions Act, 2025 ("Third Continuing Resolution"), Pub. L. No. 119-4, § 1101(a), 139 Stat. 9, 10-12 (2025).

Congress has enacted safeguards to ensure that OTF receives the grant money appropriated to it. For example, Congress has restricted USAGM's ability to interfere with the grant agreement between OTF and USAGM ("OTF Grant") by specifically circumscribing USAGM's authority and requiring a vote by three-fourths of the International Broadcasting Advisory Board (the "Advisory Board") to suspend or debar OTF (a lesser power than grant termination). 22 U.S.C. § 6205. In addition, while USAGM is directed by statute to make grants with OTF, it lacks any statutory authority to unilaterally withhold OTF's appropriated funds or to terminate the OTF Grant. *See* 22 U.S.C. § 6205; First Cunningham Decl., ¶ 7. Importantly, USAGM has no discretion whether to provide the OTF Grant or even how much to provide; rather, Congress has directed that the money it appropriates for OTF shall go to OTF. USAGM administers the OTF Grant pursuant to strict parameters set by Congress. Further, OTF is unique in that the grants it receives from USAGM are generally considered "no-year" funds—i.e., funds that are appropriations that remain available for obligation by OTF indefinitely until expended, regardless of the fiscal year.[3]

### C.    The OTF Grant Agreements

The money appropriated for OTF is first apportioned to USAGM and then disbursed to OTF under the OTF Grant. *See* 22 U.S.C. § 6208a(e); *see also* First Cunningham Decl., ¶ 6. The period of performance for each OTF Grant lasts for the three subsequent fiscal years with an

---

[3] In each of OTF's grants, there is the following provision: "No-Year International Broadcasting Operations Funds: USAGM acknowledges that unlike other USAGM grantees, the funds provided to OTF are generally "no-year" funds. (Specifically, they are from a specific sub-account of International Broadcasting Operations Funds which do not have an express statutory limit on the period of availability.)" First Cunningham Decl., ¶ 6, Ex. A.

elective one-year extension option. First Cunningham Decl., ¶ 6; 2 C.F.R. § 200.308(e)(2). Each OTF Grant includes a Financial Plan prepared by OTF that details the expenses or programs that will be funded by the OTF Grant each month, as well as the schedule for distribution of the OTF Grant funds. The Financial Plan is signed by USAGM when the OTF Grant is executed. OTF follows this approved Financial Plan when making its drawdown requests to USAGM.

For the purposes of this Motion, the relevant OTF Grant is the FY2024 Grant Agreement executed on September 9, 2024. The FY2024 Grant Agreement acknowledges that OTF had completed all necessary consultations—including with the Congress, and that OTF's spending plan was approved. *See* April 28, 2025 Declaration of Laura Cunningham in support of Plaintiff's Motion for a Preliminary Injunction ("Third Cunningham Decl."), ¶ 10, Ex. D. The FY2024 Financial Plan includes operational funding for OTF through September 2025.

OTF also has an approved FY2024 Financial Plan, which was signed by USAGM's Chief Executive Officer on December 13, 2024 (the "Approved FY2024 Financial Plan"). *Id.* ¶ 11. Under the Approved FY2024 Financial Plan, OTF and USAGM agreed that $780,508 would be disbursed to cover OTF's personnel and other expenses in April 2025. *Id.* These funds would normally have been disbursed on or about April 1, 2025. *Id.* However, USAGM has still not disbursed the congressionally appropriated funds. *Id.*

### D.    USAGM's Termination of OTF's Grant

Starting in February 2025, USAGM has taken actions adverse to OTF. As detailed in OTF's motion for temporary restraining order, *see* ECF 4-1 at 9-10, in February and March 2025, USAGM delayed acting on OTF's regular drawdown request. *See also* First Cunningham Decl., ¶¶ 9–10.

On March 14, 2025, the White House issued Executive Order 14238, which directed a number of agencies, including USAGM, to reduce their components and functions to the extent

consistent with applicable law. 90 Fed. Reg. 13,043 (Mar. 20, 2025). The Office of Management and Budget ("OMB") approves the apportionment of funding to USAGM to be disbursed to OTF. Executive Order 14238 directed OMB that it should review any grant requests from USAGM and "to the extent consistent with applicable law . . . reject funding requests for such government entities to the extent they are inconsistent with this order." *Id.* at 13,043.

The next day, March 15, 2025, Defendant Lake, acting as a "Senior Advisor to the Acting CEO with Authorities Delegated by Acting CEO," notified OTF that USAGM was terminating OTF's federal grants (the "Grant Termination"). First Cunningham Decl., ¶ 13. The Grant Termination stated that OTF's Grants "no longer effectuate[] agency priorities" and cited the Executive Order 14238 directing USAGM to eliminate all non-statutorily required activities and functions. *Id*. The Grant Termination did not acknowledge OTF's congressional mandate, the congressional appropriations directed specifically to OTF, the State Department grant, or USAGM's statutory obligation to disburse OTF's funding. *Id*. Three other independent networks, Radio Free Europe/Radio Liberty ("RFE/RL"), Radio Free Asia, and Middle East Broadcasting Network (collectively, the "Networks"), received similar Grant Terminations. *Widakuswara v. Lake*, 2025 WL 1166400, at *4-5. (discussing the current status of each of these lawsuits).[4]

### E.    USAGM's Grantees Are Forced to Seek Judicial Relief.

In response to the Grant Termination and withholding of appropriated funds, OTF and the Networks filed lawsuits, all of which are pending before this court. *Id*. On March 20, 2025, OTF moved for a temporary restraining order requesting that USAGM halt their unlawful efforts to terminate, impound, interfere or otherwise prevent OTF from obtaining its congressionally appropriated funds. ECF 4 at 1.

---

[4] Notably in *RFE/RL v. Lake*, No. 25-cv-799, this Court granted RFE/RL's Motion for a Temporary Restraining Order prior to the withdrawal letters issued by USAGM to the various grantees.

After the parties' briefing, and on the eve of the hearing for the TRO Motion, USAGM filed a Notice of Withdrawal of Grant Termination, ECF 13, and the morning of the hearing represented to the OTF and the Court that the Withdrawal Letter covered "any other grants" with USAGM, including the FY2023 and FY2024 grants and that USAGM would "today begin processing the funding request submitted by OTF to USAGM on February 26, 2025 for $655,508." ECF 15 at 3. In lieu of a ruling on the Motion for Temporary Restraining Order, OTF consented to an Order requiring Defendants to provide to the Court a daily status update regarding the disbursement of OTF's congressionally appropriated funds. ECF 16. OTF received its payment on April 3, 2025 and withdrew its Motion for Temporary Restraining Order, but noted that on April 1, 2025, it had submitted its regularly monthly drawdown request for April and was awaiting Defendants' timely approval and disbursements of these congressionally appropriated funds. ECF 19 at 1.

**F.    USAGM Continues to Withhold Funds in Contravention of Its Statutory Mandates.**

On March 28, 2025, USAGM requested that OTF submit an updated financial plan through the end of FY2025. Third Cunningham Decl., ¶ 12. On March 28, 2025, OTF provided updated FY2024 and FY2025 Financial Plans as requested by USAGM, and on April 1, 2025 OTF submitted related drawdown requests as recommended by USAGM staff. *Id*. USAGM took no action for weeks despite OTF requesting updates on the status of the revised financial plans on April 1, April 3, April 7, and April 10. *Id.*

On April 15, 2025, without approving the pending funding drawdown requests, USAGM sent to OTF a revised FY2025 Grant Agreement (the "Proposed Amended FY2025 Grant

Agreement") that would significantly alter OTF's existing FY2025 Grant Agreement.[5] *Id.* ¶ 15. USAGM directed OTF to "provide a signed version of this Grant Agreement . . . **in order to expedite the payment process**." *Id.* (emphasis in original). This strongly implied that unless OTF agreed to the proposed changes to the FY2025 Grant Agreement, USAGM would continue to withhold congressionally appropriated funds, inexplicably including FY2024 funds, from OTF. *Id*. The Proposed Amended FY2025 Grant Agreement adds requirements that are contrary to law or would effectively prevent OTF from fulfilling its congressional mandates. *Id*. ¶ 16.

On April 18, 2025, OTF wrote to Mr. Morales, Ms. Lake, and Mr. Napoli ("USAGM Leadership") and requested that USAGM promptly honor its obligations to disburse **$780,508** pursuant to the approved OTF <u>FY2024</u> Financial Plan, Grant Agreement, and congressional appropriation. *Id.* ¶ 17, Ex. E. On April 21, OTF asked USAGM Leadership to confirm when OTF could expect to receive the $780,508 in April operating funds. *Id.* ¶ 18. On April 23, 2025 OTF again asked USAGM's Leadership to when it would disburse the $780,508 in April 2025 operating funds. *Id.* ¶ 19. As of the date of this filing, USAGM has not agreed to disburse OTF's April funds. *Id.* ¶ 20.

USAGM has also cancelled regular budget meetings with OTF. *Id.* ¶ 22. OTF and USAGM's standard operating procedures for the last five years have included weekly meetings to

---

[5] OTF has an existing grant agreement for FY2025, the FY2025 Grant Agreement. The FY2025 Grant Agreement is in the amount of $16,196,355, which reflected the pro-rata annual appropriation to OTF for the period covered by the First Continuing Resolution. In recognition that further appropriations were anticipated to cover the remaining fiscal year after the First Continuing Resolution expired, the FY2025 Grant Agreement states that the agreement "shall be amended to comply" with any continuing resolutions passed by Congress. Since then, two additional continuing resolutions have been passed that continue OTF's funding at the same level. No changes in applicable substantive law applying to USAGM or OTF has occurred. The only allowable change to the approved FY2025 Grant Agreement would be to update the Award Total to the amount appropriated by the Third Continuing Resolution—$43,500,000.

review and discuss budgetary items. *Id.* After the March 15, 2025 termination notice, those meetings were cancelled. *Id.* After the recission of the termination notice, those meetings resumed. *Id.* Recently, on April 22, 2025, USAGM again cancelled all upcoming budget meetings with OTF. *Id.*

While OTF can cover its operating costs for a limited period using its reprogramming authority, every month that USAGM unreasonably and needlessly delays payment of OTF's agreed upon operating costs consumes funds that could otherwise be used to provide 7,000,000 people with uncensored and open access to the internet. *Id.* ¶ 25. Without disbursement of the congressionally appropriated funds to cover OTF's operating costs on the schedule previously agreed to by USAGM, OTF's congressionally established mission will continue to be harmed. *Id.*

## JURISDICTION

As explained in OTF's prior briefing, this Court has jurisdiction over OTF's claims. Specifically, OTF's claims, based on violation of the APA, federal statutes, and the U.S. Constitution, fall under this Court's jurisdiction. 5 U.S.C. § 704; 28 U.S.C. § 1331. Moreover, the relief OTF seeks—disbursement of the funds that have been congressionally appropriated to OTF, and a declaration that USAGM's decision to withhold OTF's funds was unlawful—can be awarded by this Court.

### A.    This Court Has Jurisdiction.

OTF's claims do not fall under the jurisdiction of the U.S. Court of Federal Claims ("CFC") despite USAGM arguments to the contrary. *See, e.g.*, ECF 7 at 7-12. The Tucker Act grants exclusive jurisdiction to the CFC over suits based on "any express or implied contract with the United States." 28 U.S.C. § 1491(a)(1). But "the mere fact that a court may have to rule on a contract issue does not, by triggering some mystical metamorphosis, automatically transform an action . . . into one on the contract and deprive the court of jurisdiction it might otherwise have."

*Megapulse, Inc. v. Lewis*, 672 F.2d 959, 968 (D.C. Cir. 1982). Rather, the "longstanding test" to determine whether a claim falls under the CFC's exclusive jurisdiction asks whether an action "is *at its essence* a contract claim." *Crowley Gov't Srvs., Inc. v. Gen. Srvs. Admin*., 38 F.4th 1099, 1106 (D.C. Cir. 2022) (quoting *Megapulse*, 672 F.2d at 967) (emphasis in original). In turn, that determination "depends on both the source of the rights upon which the plaintiff bases its claims, and upon the type of relief sought (or appropriate)." *Id.* (quoting *Megapulse*, 672 F.2d at 968).

First, the "source of the rights" depends "on whether, despite the presence of a contract, plaintiffs' claims are founded only on a contract, or whether they stem from a statute or the Constitution." *Transohio Sav. Bank v. Dir., Off. of Thrift Supervision*, 967 F.2d 598, 609 (D.C. Cir. 1992), *abrogated in part on other grounds by Perry Cap. LLC v. Mnuchin*, 864 F.3d 591, 620 (D.C. Cir. 2017). The court must "make rational distinctions between actions sounding genuinely in contract and those based on truly independent legal grounds[.]" *Crowley*, 38 F.4th at 1107 (quoting *Megapulse*, 672 F.2d at 969–70). In doing so, the court considers factors such as whether a plaintiff's "asserted rights and the government's purported authority arise from statute," "whether the plaintiff's rights exist prior to and apart from rights created under the contract," and "whether the plaintiff seeks to enforce any duty imposed upon the government by the relevant contracts to which the government is a party[.]" *Id*. (cleaned up) (internal quotations and citations omitted).

Here, OTF's claims are grounded in statute, including the International Broadcasting Act and relevant appropriations laws, all of which require USAGM to release congressionally appropriated funds to OTF through the grant agreement. The fact that OTF seeks to set aside the unlawful termination of its grant agreement does not mean its action is based upon a contractual right. *See, e.g., Md. Dep't of Hum. Res. v. Dep't of Health & Hum. Srvs.*, 763 F.2d 1441, 1449

(D.C. Cir. 1985) (claims that "arise under a federal grant program and turn on the interpretation of statutes and regulations rather than on the interpretation of an agreement negotiated by the parties . . . are not contract claims for Tucker Act purposes."); *Katz v. Cisneros*, 16 F.3d 1204, 1207–09 (Fed. Cir. 1994) (suit seeking payments from the Department of Housing and Urban Development under the Housing Act of 1937 could be brought in district court because plaintiff sought "payments to which it alleges it is entitled pursuant to federal statute and regulations; it did not seek money as compensation for a loss suffered."). In particular, "a claim of entitlement to congressional appropriations is certainly one over which the Court can exercise jurisdiction." *Widakuswara v. Lake*, 2025 WL 1166400, at *10 (citation omitted); *see also Nat'l Ctr. for Mfg. Scis. v. United States*, 114 F.3d 196, 200 (Fed. Cir. 1997) (plaintiff's "demand for the release of the remaining funds . . . in the Appropriations Act" based on statute).

Second, actions to enforce requirements for the government to pay certain amounts a party is entitled to are not claims for "money damages." *See, e.g.*, *Bowen v. Massachusetts*, 487 U.S. 879, 900 (1988) (claims seeking to enforce government payment for Medicaid services "is a suit seeking to enforce the statutory mandate itself, which happens to be one for the payment of money."); *Nat'l Ctr. for Mfg. Scis.*, 114 F.3d at 200 ("demand for the release of the remaining funds" not "money damages" and "does not bar the district court from conducting APA review of the [government]'s refusal to release funds appropriated under the Appropriations Act."). OTF does not seek monetary relief, but equitable relief for what it is entitled to under statute: a lawful grant agreement and release of congressionally appropriated funds. "The fact that a judicial remedy may require [USAGM] to pay money to [OTF] is not a sufficient reason to characterize the relief as 'money damages.'" *Bowen*, 487 U.S. at 893.

**B.    The Supreme Court's Decision in *Department of Education v. California* Does Not Change This Court's Jurisdiction.**

To the extent that USAGM relies on the U.S. Supreme Court's emergency-docket order in *Department of Education v. California*, 145 S. Ct. 966 (2025) (per curiam) ("*California*"), this Court's jurisdiction over OTF's claims do not change. In *California*, the "source of the rights" the grantees of the Department of Education relied on were statutory provisions that directed the Secretary of Education to "use certain funds to make grants to entities," which were awarded pursuant to a "competitive application process." *California v. U.S. Dep't of Educ.*, 132 F.4th 92, 95 (1st Cir. 2025). The Supreme Court stayed the temporary restraining order granted by the district court, finding it "likely" that the district court lacked jurisdiction based on the CFC's jurisdiction over "any express or implied contract" with the U.S. *California*, 145 S. Ct. at 968.

Nevertheless, and just as this Court has recognized, "*California* does not change the governing law[.]" *Widakuswara*, 2025 WL 1166400, at *9. Just as "[i]t was true before *California*, and it remains true now," "whether a claim is 'at its essence' contractual for the Tucker Act 'depends both on the source of the rights upon which the plaintiff bases its claims, and upon the type of relief sought (or appropriate).'" *Id.* (quoting *Crowley*, 38 F.4th at 1106). In *California*, "the relevant statute did not entitle any particular grantee to the funds" and "the source of the rights relied on by the plaintiffs were contained *in the grant agreements*" themselves. *Id.* By contrast, OTF is entitled to appropriated funds because "Congress passed laws directing USAGM to provide grants to specific grantees, and appropriated funds for those grantees specifically." *Id.* at *19–20 (citing 22 U.S.C. §§ 6204(a)(5), (6), 6207(f), 6208 (International Broadcasting Act); Third Continuing Resolution).[6] Any consideration of *California* must also be tempered by the Supreme

---

[6] For the same reason, USAGM's reliance on *U.S. Conference of Catholic Bishops v. U.S. Dep't of State*, ___ F. Supp. 3d ___, 2025 WL 763738 (D.D.C. Mar. 11, 2025), *appeal docketed* (D.C.

Court's decision a month earlier reaching a different result. *Dep't of State v. AIDS Vaccine Advoc. Coal.*, 145 S. Ct. 753 (2025). Until the Supreme Court has had the opportunity to fully examine and explain its differing views in these cases in a merits opinion, lower courts should be skeptical of claims that they have radically reshaped the law in one direction or another. Accordingly, this Court has jurisdiction to review USAGM's termination of congressionally appropriated funds to OTF. *Widakuswara v. Lake*, 2025 WL 1166400, at *10.

## LEGAL STANDARD

To obtain a preliminary injunction, a movant must show: (1) "that he is likely to succeed on the merits"; (2) "that he is likely to suffer irreparable harm in the absence of preliminary relief"; (3) "that the balance of equities tips in his favor"; and (4) "that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council*, *Inc.*, 555 U.S. 7, 20 (2008) (citations omitted); *Costa v. Bazron*, 456 F. Supp. 3d 126, 133 (D.D.C. 2020). The third and fourth factors merge when the government is a party. *Karem v. Trump*, 960 F.3d 656, 668 (D.C. Cir. 2020) (quoting *Nken v. Holder*, 556 U.S. 418, 435 (2009)). The movant bears the burden to show that "all four factors, taken together, weigh in favor of the injunction." *Abdullah v. Obama*, 753 F.3d 193, 197 (D.C. Cir. 2014) (citation omitted). Here, all the factors strongly support the issuance of a preliminary injunction to prevent irreparable harm caused by USAGM's Withholding Decision.

---

Cir. No. 25-5066), is misplaced. *See* ECF 7 at 10–11. Just as in *California*, the only source of the plaintiffs' claimed rights in *U.S. Conference of Catholic Bishops* was a statutory scheme that authorized the State Department to enter into agreements with private agencies, but did not require the State Department to fund any specifically named entity. *See U.S. Conf. of Catholic Bishops*, 2025 WL 763738, at *1.

# ARGUMENT

## I.    OTF Is Likely to Succeed on the Merits of Its Claims.

The continued withholding of funds from OTF violates the APA, federal statutes, and the U.S. Constitution. OTF is likely to succeed on the merits of these claims.

### A.    The Withholding of OTF's Grant Funds Violates the APA.

USAGM's withholding of funds is reviewable under the APA as either: "agency action" that is "unlawfully withheld or unreasonably delayed," 5 U.S.C. § 706(1); or "final agency action" subject to the review provisions set forth in 5 U.S.C. § 706(2). Regardless of which mechanism of judicial review this Court employs, the conclusion is the same—USAGM has acted in direct violation of its statutorily required duties by refusing to disburse congressionally appropriated funds to OTF.

### 1.    USAGM Is Statutorily Required to Distribute OTF's Grant Funds and Its Refusal to Do So Is Agency Action Unlawfully Withheld.

USAGM's refusal to make OTF's appropriated funds available to OTF constitutes reviewable agency action as the funds are being "unlawfully withheld." *Id.* § 706(1); *see also Ramirez v. U.S. Immigr. & Customs Enf't*, 471 F. Supp. 3d 88, 94, 191 (D.D.C. 2020) (allowing plaintiff to maintain section 706(1) and 706(2) claims that "focus on the same conduct."). Section 706(1) requires a plaintiff to identify a "discrete agency action" that the agency is "required to take," either by statute or regulation. *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64–65 (2004). As set forth above, "disbursing congressional appropriations are statutorily required." *Widakuswara v. Lake*, 2025 WL 1166400, at *13.

### a.    USAGM Is Required to Provide Funds to OTF.

OTF is unique in that it is a private nonprofit corporation with a congressional remit established in the FY2021 NDAA and receives funding specifically directed to it in congressional

appropriations. OTF's mission is codified at, 22 U.S.C. § 6208a, which states that OTF "shall carry out" its congressionally defined mission, *id.* § 6208a(a)(2), (b) & (c). Congress has enacted special provisions governing OTF's funding and appropriates money to USAGM that "shall be available" to OTF. *Id.* § 6208a(a)(1). Congress underscored the importance of OTF's mission by directing that, if OTF were unable to fulfill its congressional remit, USAGM is required to provide OTF with assistance. *See id.* § 6208a(e)(2). Congress has also directed that USAGM "shall ensure that internet freedom research and development projects of the [OTF] are coordinated with internet freedom programs of the Department of State and other [U.S.] Government departments[.]" *Id.* § 6208a(f).

In each appropriation since establishing OTF, Congress has specifically directed the funds that shall be provided to OTF. When Congress directs that an agency "shall" take a certain action, the agency has no discretion to ignore that directive. "'Shall' means shall." *Forest Guardians v. Babbitt*, 174 F.3d 1178, 1187 (10th Cir. 1999) (citing cases). "Congress could not have chosen stronger words to express its intent" that distribution of OTF's funds is "mandatory[.]" *United States v. Monsanto*, 491 U.S. 600, 607 (1989); *see also Bridgeport Hosp. v. Becerra*, 108 F.4th 882, 887 (D.C. Cir. 2024) (Congress uses "shall" to "'impose[] a mandatory duty' that is 'impervious to discretion.'" (omission in original) (citation omitted)).

Congress has used this binding language to direct USAGM to fund OTF. The appropriation act for FY2024, the FY2024 FCAA, states that "funds appropriated by this Act . . . **shall be made available in the amounts specifically designated** in the respective tables included in the explanatory statement described in section 4," FY2024 FCAA § 7019(a), 138 Stat. at 771 (emphasis added), which set OTF's funding at $43,500,000 million, 170 Cong. Rec. H2097. Congress also spoke to USAGM's discretion in setting the amount of OTF's Grants, providing

USAGM discretion to deviate by only up to 5% of the appropriated amounts. FY2024 FCAA §

7019(a), 138 Stat. at 771. OTF's appropriation has been maintained at these levels for FY2025.

*See* First Continuing Resolution; Second Continuing Resolution; Third Continuing Resolution.

Other statutes likewise direct USAGM to take nondiscretionary action to fund OTF. The

International Broadcasting Act, which governs USAGM and its grantees, provides that

> Grants authorized under section 6204 of this title **shall be available** to make annual grants for the purpose of promoting, consistent with United States law, unrestricted access to uncensored sources of information via the internet to enable journalists . . . to create and disseminate, and for their audiences to receive, news and information consistent with the purposes, standards, and principles specified in sections 6201 and 6202 of this title.

22 U.S.C. § 6208a(a)(1) (emphasis added). The statutory language directing OTF's funding stands

in contrast to situations where Congress gives the executive branch discretion to spend less than

the full amount appropriated—for example, that an agency is appropriated "sums not exceeding"

or "up to" an amount for a particular purpose. *See, e.g.*, *Consumer Fin. Prot. Bureau v. Cmty. Fin.

Servs. Ass'n of Am.*, 601 U.S. 416, 432–33 (2024); *id.* at 442–43 (Kagan, J., concurring). Absent

such language, courts properly understand appropriations statutes as commands to obligate and

expend the full amount of money appropriated. *See, e.g.*, *Train v. City of New York*, 420 U.S. 35,

47–48 (1975).

Congress also limited the powers of USAGM's Chief Executive Officer ("CEO"), which

runs USAMG, with oversight by the Advisory Board. *See* 22 U.S.C. §§ 6203 & 6205 (establishing

the office of CEO and the Advisory Board). The powers of USAGM's CEO are established by

Congress and do not include the statutory authority to terminate grants like the one directed to

OTF. *See id.* § 6204 (enumerating the powers of USAGM's CEO). In addition, Congress clearly

intended to insulate OTF's congressional appropriations and grant funding from unilateral actions

by USAGM's CEO. *See id.* § 6205(f)(1), (3) (instructing that no USAGM grantee can be debarred or suspended absent approval by the Advisory Board by a three-fourths vote).

There can be no question that in failing to disburse funds that are appropriated by Congress to OTF and apportioned to USAGM, Defendants have failed to take "discrete" and "required" steps. *Id.* Apportionment of funds to USAGM and disbursement to OTF are discrete, legally required, and non-discretionary actions that the Court can and should compel.

        b.  <u>Refusal to Disperse Grant Funds Is Agency Action Unlawfully Withheld.</u>

USAGM's failure to disburse OTF's FY2024 Grant Agreement funding is a non-discretionary agency action that has been unlawfully withheld or delayed and may be ordered by the Court. 5 U.S.C. § 706(1); *Norton*, 542 U.S. at 63 (explaining that the Court can order under the APA discrete agency action where it has a nondiscretionary duty to act). As this Court has previously found disbursing congressionally appropriated funds is a discrete agency action that USAGM is required to take. *Widakuswara v. Lake*, 2025 WL 1166400, at *15 ("Here, it is likely that the defendants have also violated section 706(1) of the APA by unlawfully withholding the international broadcasting programming and grants that USAGM is statutorily required to provide."). USAGM has unlawfully withheld funds that is required to make and therefore violates the APA. This "administrative inaction . . . has precisely the same impact on the rights of the parties as denial of relief": the denial of OTF's congressionally appropriated funds, which will inevitably force OTF into dissolution. *Friedman v. Fed. Aviation Admin.*, 841 F.3d 537, 543 (D.C. Cir. 2016).

        2.  *USAGM's Withholding Decision and Ongoing Refusal to Disburse OTF's Grant Funds Is Subject to Judicial Review.*

USAGM's Withholding Decision is a final agency action also subject to judicial review. 5 U.S.C. § 706(2). Agency actions are final where: (1) the action "mark[s] the consummation of the

agency's decisionmaking process" and is not "of a merely tentative or interlocutory nature"; and (2) it is an action "by which rights or obligations have been determined, or from which legal consequences will flow[.]" *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997) (internal quotations and citations omitted); *see also Reliable Automatic Sprinkler Co., Inc. v. Consumer Prod. Safety Comm'n*, 324 F.3d 726, 731 (D.C. Cir. 2003) ("An agency action is deemed final if it is definitive and has a direct and immediate effect on the day-to-day business of the party challenging the agency action.") (cleaned up and citations omitted). The Withholding Decision satisfies both requirements. The Grant Termination has all the "hallmarks of APA finality" and is a final agency action subject to review under the APA. *Sackett v. EPA*, 566 U.S. 120, 126 (2012).

      3.   *The Withholding Decision and Ongoing Refusal to Disburse OTF's Grant Funds Are Not in Accordance with Law.*

USAGM's refusal to distribute OTF's appropriated funding is contrary to law as it violates the following: (1) statutory provisions defining administration of the OTF Grant and Congress's specific appropriation acts; (2) the Congressional Budget and Impoundment Control Act of 1974 (the "Impoundment Control Act"), Pub. L. No. 93-344, 88 Stat. 297 (1974) (codified as amended at 2 U.S.C. § 682 et seq.), and the Anti-Deficiency Act, Pub. L. No. 97-258, 96 Stat. 929 (1982) (codified as amended at scattered sections of Title 31 of the U.S. Code); and (3) the Constitution's separation of powers principles. *See supra* Section I.A.2.

      a.   <u>USAGM Violated Its Statutory Obligations to Provide the Appropriated Grant Funds to OTF.</u>

Where, as here, "a statute commands an agency without qualification to carry out a particular program in a particular way, the agency's duty is clear; if it believes the statute untoward in some respect, then it should take its concerns to Congress" and, in the meantime, comply with the statute as written. *Oceana, Inc. v. Locke*, 670 F.3d 1238, 1243 (D.C. Cir. 2011) (internal quotations and citations omitted). Because Defendants' actions "conflict[] with . . . federal law,"

they must be reversed under the APA. *NextWave Pers. Commc'ns, Inc. v. Fed. Commc'ns Comm'n*, 254 F.3d 130, 149 (D.C. Cir. 2001) (citations omitted).

b.   Withholding OTF's Grant Funds Violates the Impoundment Control
       Act and the Anti-Deficiency Act.

Even if OTF's funding were not specifically directed and secured by the statutory provisions detailed above, *supra* pages 5-6, USAGM still could not withhold OTF congressionally appropriated funds as it has attempted in this instance. Congress has directed how appropriated funds may be treated in Impoundment Control Act and the Anti-Deficiency Act.

Under the Impoundment Control Act, appropriated funds "shall be made available for obligation" unless specific procedures are followed, which include transmitting a special message to Congress and Congress rescinding the appropriation. 2 U.S.C. § 683. The Impoundment Control Act requires that the funds in question be made available for obligation unless Congress rescinds the appropriation within 45 days. *Id.* § 683(b). USAGM did not follow the procedures required under the Impoundment Control Act to rescind or otherwise withhold the funds.

The Anti-Deficiency Act provides similar direction on appropriated funds. Under that statute, "[a]ppropriations shall be applied only to the objects for which the appropriations were made except as otherwise provided by law." 31 U.S.C. § 1301(a). Government officers thus violate the Anti-Deficiency Act if they withhold appropriated funds from their congressionally assigned program. To the extent USAGM is holding appropriated funds in reserve instead of distributing them to OTF, USAGM has violated the Anti-Deficiency Act.

c.   USAGM's Actions Violate the U.S. Constitution

For the reasons set out below, the Withholding Decision and USAGM's failure to disburse OTF's funds violate the U.S. Constitution. *See infra* Section I.C.

### 4. *USAGM's Withholding Decision Is Arbitrary and Capricious.*

USAGM's Withholding Decision is arbitrary and capricious because, as discussed *supra* Section I.A.2, it directly contradicts USAGM's congressional mandate to provide funds to OTF, as well as OTF's obligation to fulfill its statutory mandates and USAGM's statutorily defined obligation to assist OTF in meeting those obligations, and therefore "entirely failed to consider an important aspect of the problem." *AIDS Vaccine Advoc. Coal. v. U.S. Dep't of State*, ___ F. Supp. 3d ___, No. 25-cv-400, 2025 WL 485324, at *5 (D.D.C. Feb. 13, 2025). The APA requires courts to "hold unlawful and set aside" any agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law[.]" 5 U.S.C. § 706(2)(A). Under that standard, a reviewing court "must confirm that the agency has fulfilled its duty to 'examine the relevant data and articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made.'" *Ark Initiative v. Tidwell*, 816 F.3d 119, 127 (D.C. Cir. 2016) (quoting *Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) (internal quotations omitted)). Agency action is arbitrary and capricious "if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Id.* (citation omitted). And agency action must be "upheld, if at all, on the same basis articulated in the order by the agency itself[.]" *Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 168–69 (1962) (citing *Sec. & Exch. Comm'n v. Chenery Corp.*, 332 U.S. 194, 196 (1947)).

USAGM is refusing to distribute funds under a grant agreement that USAGM itself signed, without so much as a word of explanation for the decision. Where an agency reverses a prior decision it must "provide a reasoned explanation for the change. . . . But where the agency has

failed to provide even that minimal level of analysis, its action is arbitrary and capricious and so cannot carry the force of law." *Encino Motorcars, LLC v. Navarro*, 579 U.S. 211, 221 (2016) (citing 5 U.S.C. § 706(2)(A) and other cases).

USAGM's wholesale refusal to disburse congressionally appropriated funds vis-a-vis a grant, without explanation does not demonstrate a rational connection between the facts and USAGM's decision. It is axiomatic that failure to provide <u>*any*</u> explanation at all cannot meet the APA's requirement of a rational explanation. *See Commc'ns & Control, Inc. v. Fed. Commc'ns Comm'n*, 374 F.3d 1329, 1335–36 (D.C. Cir. 2004) (a decision "with *no* explanation, renders its void *ab initio* rationale arbitrary and capricious." (emphasis original) (citation omitted)). Rather than respond to OTF's drawdown requests, USAGM has demanded that OTF sign the Proposed Amended FY2025 Grant Agreement to "expedite the payment process." Third Cunningham Decl., ¶ 15. But, the FY2025 Grant Agreement is entirely unrelated to OTF's FY2024 grant funds. There is no rational connection between the two, and USAGM has refused to engage further with OTF on its repeated requests to disburse the agreed FY2024 funds.

For the foregoing reasons, OTF has demonstrated a high likelihood of success on its claims that Defendants actions violated the APA, that the Withholding Decision be set aside, and that the payment of OTF's funds be compelled.

### B.    OTF Is Also Likely to Succeed under Alternative Forms of Relief.

As demonstrated above, OTF is likely to succeed on the merits of its APA claim. In the alternative, OTF is also likely to succeed on its claims that the Withholding Decision was *ultra vires* and OTF has also made a strong showing of success in its mandamus action to compel USAGM to release OTF's appropriated funds.

   *1.   The Withholding Decision Is* Ultra Vires.

As set out above, *supra* Section I.A.1.a, Congress's intent to appropriate funds to OTF was clear by mandating that USAGM shall make "annual grants" available to OTF and by declaring the amount appropriated to OTF via line item in the FY2024 FCAA itself. By "disregard[ing] a specific and unambiguous statutory directive" by Congress to direct the appropriated funds to OTF, the withholding of OTF's funds were *ultra vires. Fed. Express Corp. v. U.S. Dep't of Com.*, 39 F.4th 756, 764 (D.C. Cir. 2022) (internal quotations and citation omitted).

Judicial "[r]eview for *ultra vires* acts rests on the longstanding principle that if an agency action is unauthorized by the statute under which [the agency] assumes to act, the agency has violate[d] the law and the courts generally have jurisdiction to grant relief." *Nat'l Ass'n of Postal Supervisors v. U.S. Postal Serv.*, 26 F.4th 960, 970 (D.C. Cir. 2022) (internal quotations and citations omitted, alterations in original). To prevail on an *ultra vires* claim, a plaintiff must show that "(i) there is no express statutory preclusion of all judicial review; (ii) there is no alternative procedure for review of the statutory claim; and (iii) the agency plainly acts in excess of its delegated powers and contrary to a specific prohibition in the statute that is clear and mandatory." *Fed. Express Corp.*, 39 F.4th at 763 (internal quotations and citations omitted). "Moreover, an agency acts *ultra vires* when its decision is not supported by a contemporaneous justification by the agency itself, but only a *post hoc* explanation [by] counsel." *Nat'l Ass'n of Postal Supervisors*, 26 F.4th at 975 (internal quotations and citation omitted).

Defendants have also acted "in excess of [their] statutory authority." *Id.* at 970 (internal quotations and citation omitted). Congress has thoughtfully delineated procedures that prohibit USAGM from withholding appropriated funds.

*First*, the powers of the USAGM CEO are delineated in 22 U.S.C. § 6204(a). They do not include the authority to withhold its appropriated funding as attempted here.

*Second*, Congress imposed a non-discretionary duty on USAGM to make annual grants available to OTF in furtherance of OTF's statutory mandate. 22 U.S.C. § 6208a(a)(1) ("Grants authorized under section 6204 of this title *shall be available* to make annual grants for the purpose of promoting, consistent with United States law, unrestricted access to uncensored sources of information via the internet to enable journalists . . . to create and disseminate, and for their audiences to receive, news and information consistent with the purposes, standards, and principles specified in sections 6201 and 6202 of this title." (emphasis added)); *Bridgeport Hosp.*, 108 F.4th at 887 (Congress uses "shall" to "'impose[] a mandatory duty' that is 'impervious to discretion.'" (omission in original) (citation omitted)). And Congress has subsequently imposed additional restrictions on reducing funding for OTF's operations. *See* FY2024 FCAA, 138 Stat. at 735 ("funds may be reprogrammed within and between amounts designated in such table, subject to the regular notification procedures of the Committees on Appropriations, except that no such reprogramming may reduce a designated amount by more than 5 percent"). USAGM is thus required by law to fund OTF, the only exception being a proper suspension or debarment, which USAGM has not pursued.

*Third*, Congress provided a specific statutory procedure for suspension or debarment of OTF by the USAGM Advisory Council, but did not include any procedure for withholding congressionally authorized funds. Congress placed bipartisan guardrails on the lesser power of suspension by requiring a three-fourths vote of the Advisory Board to take action. 22 U.S.C. § 6205(f)(1). As a matter of statutory construction, it makes little sense that Congress intended that USAGM's CEO possess the power to unilaterally withhold OTF's funding, while prohibiting such action for the lesser power of suspension.

Defendants acted *ultra vires* in withholding the OTF funds that Congress specifically required be provided to OTF under the OTF Grant, which went far beyond the authority delegated by Congress. OTF is likely to prevail on this count.

### 2. OTF Is Likely to Succeed on Its Request for Mandamus Relief.

To the extent that review under the APA is unavailable, mandamus relief is appropriate. The "power grounded in 5 U.S.C. § 706(1) to compel agency action can also be effectuated through the use of a writ of mandamus." *Potomac Elec. Power Co. v. Interstate Com. Comm'n*, 702 F.2d 1026, 1034, *suppl. by*, 705 F.2d 1343 (D.C. Cir. 1983); *see also Vietnam Veterans of Am. v. Shinseki*, 599 F.3d 654, 659 n.6 (D.C. Cir. 2010) (the "standard[] for obtaining relief" under 5 U.S.C. § 706(1) and under mandamus "are essentially the same.") (citing *In re Core Commc'n Inc.*, 531 F.3d 849, 855 (D.C. Cir. 2008)).

For the reasons discussed *supra* Section I.A.1, USAGM's failure to disburse funds constitutes action unlawfully withheld and unreasonably delayed under 5 U.S.C. § 706(1).

### C. The Withholding Decision and Failure to Disburse OTF's Grant Funds Violates the U.S. Constitution.

OTF is likely to succeed on its claims that Defendants violated the U.S. Constitution. The Court has jurisdiction to enjoin constitutional violations by federal officials. *See Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 327 (2015). OTF's constitutional claims include violation of the Appropriations Clause, Spending Clause, Presentment Clause, Take Care Clause, and separation of powers principles. OTF is likely to succeed on these claims for the reasons set out below.

Defendants' actions violate the Constitution's Appropriations Clause and Spending Clause. The Constitution vests in Congress "exclusive power over the federal purse." *U.S. Dep't of the Navy v. Fed. Lab. Rels. Auth.*, 665 F.3d 1339, 1346 (D.C. Cir. 2012) (internal quotations and

citation omitted); *AIDS Vaccine Advoc. Coal. v. U.S. Dep't of State*, ___ F. Supp. 3d ___, No. 25-cv-400, 2025 WL 752378, at \*16 (D.D.C. Mar. 10, 2025) (finding that the "Constitution *explicitly* vests in Congress the power to spend, U.S. Const. art. I, § 8, cl. 1, and appropriate funds, *id.* art. I, § 9, cl. 7.") (emphasis in original). As set out above, Congress has directly spoken as to how OTF shall be funded. Defendants' refusal to distribute the money set aside for OTF amounts to an unconstitutional violation of Congress's exclusive authority. In fact, the most recent Continuing Resolution confirms that Congress intended to maintain the funds appropriated for OTF to fulfill the mission it set out for it.

Defendants' actions also run afoul of the Presentment Clause, which prohibits the executive branch from "unilaterally amending or cancelling federal appropriations[.]" *See PFLAG, Inc. v. Trump*, No. CV 25-337, 2025 WL 510050, at \*18 (D. Md. Feb. 14, 2025) (citing *Clinton v. City of New York*, 524 U.S. 417, 448 (1998)). Defendants' actions are, in practice, an attempt by the executive branch to amend the statutes described above, including the FY2021 NDAA and the appropriation acts, *supra* Section I.A.2, which is not allowed. *Clinton*, 524 U.S. at 438 (explaining that the Constitution does not authorize the executive branch to enact, amend, or repeal statutes); *City & Cnty. of San Francisco v. Trump*, 897 F.3d 1225, 1232 (9th Cir. 2018) ("Aside from the power of veto, the President is without authority to thwart congressional will by cancelling appropriations passed by Congress.").

The Constitution requires the executive branch to take care that the laws of the United States are faithfully executed. U.S. Const. art. II, § 3. This "necessarily extends to appropriations." *City & Cnty. of San Francisco*, 897 F.3d at 1234. The FY2021 NDAA and the subsequent appropriation acts all are laws of the United States. Indeed, the FY2024 NDAA, which has been extended through FY2025 by continuing resolution, incorporates a specific line item that mandates

$43.5 million be appropriated for OTF to fulfill its statutory mission. Defendants' refusal to honor the statutory appropriations to OTF thus violates the Take Care Clause.

Finally, Defendants' actions have violated the separation of powers principles. Under the Constitution, the executive branch's powers "must stem either from an act of Congress or from the Constitution itself." *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 585 (1952). Defendants lack the authority to withhold OTF's funds or to terminate the USAGM Grant in this manner, as Congress has directed precisely how the grant money should flow to OTF and has delineated USAGM's limited authority to withhold the funds. USAGM's withholding of the OTF funds is incompatible with Congress's instructions.

## II.    OTF Will Suffer Irreparable Harm If a Preliminary Injunction Is Not Granted.

This Court should issue a preliminary injunction because the harm OTF faces is "certain and great, actual and not theoretical, and so imminent that there is a clear and present need for equitable relief to prevent irreparable harm . . . [that is] beyond remediation." *League of Women Voters of the U.S. v. Newby*, 838 F.3d 1, 7–8 (D.C. Cir. 2016) (cleaned up and citation omitted). A party experiences actionable harm when he is "depriv[ed] of a procedural protection to which he is entitled" under the APA. *Northern Mariana Islands v. United States*, 686 F. Supp. 2d 7, 17 (D.D.C. 2009) (citing *Sugar Cane Growers Coop. of Fla. v. Veneman*, 289 F.3d 89, 94-95 (D.C. Cir. 2002)) (alteration in original). OTF will suffer irreparable harm unless the Court intervenes.

### A.    OTF Cannot Continue Normal Operations Without Access to Appropriated Funds.

Defendants' Withholding Decision amounts to a de facto termination of OTF. Currently, OTF is deprived of access to funds allocated to it by Congress. First Cunningham Decl., ¶ 13. In other words, OTF, which sources 98% of its operating and programmatic budget from the OTF

Grant administered by USAGM, will no longer be able to operate if it does not receive its mandated funds.

The harm OTF will suffer is particularly acute because the appropriation administered by USAGM is the life-blood of OTF, constituting virtually all of OTF's operating and programmatic budget. *Id.* ¶ 8 (fiscal years 2024 and 2025 appropriations "cover approximately 98% of OTF's operating budget."). OTF's loss of funding "threatens the very existence of [its] business." *Wis. Gas Co. v. Fed. Energy Regul. Comm'n*, 758 F.2d 669, 674 (D.C. Cir. 1985) (citing *Wash. Metro. Area Transit Comm'n v. Holiday Tours, Inc.*, 559 F.2d 841, 843 n.2 (D.C. Cir. 1977)). As this Court has repeatedly found "blanket suspension of congressionally appropriated funds" results in extreme financial hardship, which "in many cases, force[s] [grantees] to significantly cut down on staff or otherwise reduce core operations." *AIDS Vaccine Advoc. Coal.*, 2025 WL 485324, at *2, *4 ("Plaintiffs have made a sufficient preliminary showing that the loss of funding at issue in this litigation 'threatens the very existence of [its] business'"); *Nat'l Council of Nonprofits v. OMB*, ___ F. Supp. 3d ___, No. 25-cv-239, 2025 WL 368852, at *9 (D.D.C. Feb. 3, 2025) ("Because the funding freeze threatens the lifeline that keeps countless organizations operational, Plaintiffs have met their burden of showing irreparable harm.").

OTF's reprogramming authority permits it shift funds from one authorized purpose to another. OTF's FY2024 Grant Agreement permits OTF to reprogram up to 10 percent of its budget. However, using reprogramming to meet essential operating costs comes at a high price. Each month that USAGM's unreasonable and unexplained Withholding Decision continues, OTF is forced to use funds that could otherwise provide 7,000,000 people with access to the open internet.

While reprogramming can delay a catastrophic collapse of OTF and <u>all</u> its programs, it cannot prevent it. Without distribution of the appropriated funds, OTF will become insolvent and

unable to meet its financial obligations to its employees, contractors, and vendors in less than a year. *See* First Cunningham Decl., ¶¶ 8, 15–19. In particular, OTF will have to terminate 32 full-time staff, and they would lose their income and benefits. *Id*. ¶¶ 12, 15. A funding freeze would require OTF to materially breach some, if not all, of its 149 programmatic and 23 operational contracts that it oversees around the world. *Id*. ¶¶ 12, 19. OTF currently provides stipends to a number of fellows located abroad who research authoritarian information controls and often provide the beginnings of practical solutions (80 total to date). *Id*. ¶ 26. Without access to its funds, these stipends cannot continue to be paid. *Id*. These fellows work on highly sensitive matters and may be subject to reprisal without support from, and connection to, OTF. *Id*.

In short, if the appropriated grant money continues to be blocked, OTF will not be able to continue as an entity. These are harms for which "there can be no do over and no redress." *Newby*, 838 F.3d at 9 (quoting *League of Women Voters of N.C. v. North Carolina*, 769 F.3d 224, 247 (4th Cir. 2014)).

### B.    A Freeze in Funding Puts OTF Programs and Partners at Risk.

OTF would suffer additional irreparable harm from the fact that a shut-down of operations would extinguish a number of programs that fulfill the agency's core mission with little to no hope of restoration. Withholding funds undoubtedly makes "it more difficult for the [plaintiffs] to accomplish their primary mission." *Id.* (citations omitted). OTF currently has ongoing activities in 60 different countries and is by far the largest funder and project partner in the internet freedom space. First Cunningham Decl., ¶ 18. OTF offers technical solutions to counter digital authoritarianism. *Id*. ¶ 5. If OTF can no longer support its own programs, or even if it is viewed as an unreliable partner because of funding risk, the United States' position as the worldwide leader in opposing digital authoritarianism will be substantially weaker. *Id*. ¶ 18. This harm to OTF would directly contravene Congress's ongoing funding of the organization. *Id*. ¶¶ 5, 18. Moreover, as a

trusted partner to experts operating in countries under authoritarian rule, to continue to fulfill its congressionally mandated mission OTF must protect its contractors, who are frequent cyber targets of hostile adversaries. *Id.* ¶ 19. A denial of funding will put sensitive organizational and contractor information at risk. *Id.* This will likely jeopardize the safety, and potentially the lives of, a number of OTF's partners. *Id.*

> **C.    Without Access to Appropriated Funds, OTF Will Suffer Irreparable Harm to Its Reputation as a Trusted Partner in the Global Effort to Fight Digital Authoritarianism.**

Further harm to OTF, its network of experts, and its reputation, is ongoing. OTF has a reputation as a reliable partner in the global effort to preserve access to critical communications tools. Immediate reputational harm is and will continue to be felt in the following areas:

- *Threat intelligence*. OTF supports a network of regional helpdesks and complementary technologies to effectuate a threat intelligence sharing network. *Id.* ¶ 30. In this effort, OTF works alongside U.S. government efforts to identify and respond to threats of attack and actual attacks carried out by authoritarian regimes. *Id.*

- *VPN Access*. If the termination of the OTF Grant is upheld, OTF will need to immediately terminate all contracts with VPN providers. *Id.* ¶ 17. OTF-supported VPNs currently provide secure and uncensored access to the internet over 45 million people living in authoritarian countries. *Id.* OTF is the largest funder of VPNs worldwide and has active multi-million-dollar contracts with partners located in repressive environments. *Id.* ¶ 20. Without access to VPNs, users will be immediately exposed to online censorship and surveillance, putting their communication, work, and safety at significant risk, and leaving them vulnerable to despotic reprisal. *Id.* ¶¶ 17, 23.

- *Rapid Response Fund*. OTF's Rapid Response Fund has supported over 100 interventions in over 80 countries in response to urgent, state-sponsored digital attacks. *Id.* ¶ 25. OTF's inability to offer this support will mean that independent media and civil society actors in authoritarian countries will be at serious risk without any recourse against targeted digital attacks from their governments. *Id.* ¶¶ 21, 25. Examples of recent rapid response projects include: mitigating digital attacks and device compromises for targeted independent journalists reporting on the Junta military actions in Myanmar; urgent forensic assessments and digital compromise remediations of the digital infrastructure used by a prominent civil society leader highly targeted by the Communist Party of China; and detection and compromise remediation for journalists and human rights defenders targeted by the highly advanced commercial spyware Pegasus. *Id.* ¶ 21.

- *Internet Freedom Fund.* OTF's primary funding mechanism for new applications and technologies is its Internet Freedom Fund. *Id.* ¶ 24. This fund is designed to be nimble and operate at the speed of private sector technology development to quickly respond to novel forms of digital authoritarianism. *Id.*

The suspension of new projects will result in significant opportunity cost, and will enable autocrats to develop unchecked information. *Id.*; *see also Armour & Co. v. Freeman*, 304 F.2d 404, 406 (D.C. Cir. 1962) (holding that irreparable harm was apparent where defendant's conduct "could not fail to damage [plaintiff's] good name"); *Atlas Air, Inc. v. Int'l Bhd. of Teamsters*, 280 F. Supp. 3d 59, 103 (D.D.C. 2017) ("Injury to reputation can, at least at times, rise to the level necessary to support the issuance of an injunction.") (citations omitted); *Xiaomi Corp. v. Dep't of Def.*, No. 21-cv-280, 2021 WL 950144, at *9 (D.D.C. Mar. 12, 2021) (collecting cases).

While "economic loss does not, in and of itself, constitute irreparable harm," if a plaintiff demonstrates that "financial losses are certain, imminent, and unrecoverable, then the imposition of [the restraining order] is appropriate and necessary." *Tex. Children's Hosp. v. Burwell*, 76 F. Supp. 3d 224, 242 (D.D.C. 2014) (internal citation and quotations omitted). Additionally, where the movant "will be unable to sue to recover any monetary damages against a government agency in the future . . . financial loss can constitute irreparable injury." *Nat'l Mining Ass'n v. Jackson*, 768 F. Supp. 2d 34, 52 (D.D.C. 2011) (internal citation and quotations omitted).

### D.    Damages Are Unavailable and Would Not Cure the Harms Caused by the Withholding Decision.

Here, because OTF's claims are brought under the APA, OTF cannot recover damages from the federal government. *Open Cmty. All. v. Carson*, 286 F. Supp. 3d 148, 178 (D.D.C. 2017). As this Court has recognized, when plaintiffs cannot recover damages due to the defendant's sovereign immunity, "any loss of income suffered by a plaintiff is irreparable *per se.*" *Feinerman v. Bernardi*, 558 F. Supp. 2d 36, 51 (D.D.C. 2008) (citing *United States v. New York*, 708 F.2d 92, 93–94 (2d Cir. 1983)) (emphasis in original); *Brendsel v. Off. of Fed. Hous. Enter. Oversight*, 339

F. Supp. 2d 52, 66–67 (D.D.C. 2004) (irreparable harm when loss of compensation is not recoverable due to federal government's immunity from suit). Given the inability to remediate the demonstrated economic harms, OTF is harmed for purposes of preliminary injunctive relief.

### III.    The Balance of Equities and the Public Interest Support Issuing a Preliminary Injunction.

The balance of equities and the public interest also support issuing the preliminary injunction. The balance-of-equities factor "directs the Court to balance the competing claims of injury and . . . consider the effect on each party of the granting or withholding of the requested relief." *Richardson v. Trump*, 496 F. Supp. 3d 165, 188 (D.D.C. 2020) (internal quotations and citation omitted). When the government is the non-movant, this factor merges into the public interest factor, and the Court weighs "the benefits to the private party from obtaining an injunction against the harms to the government and the public from being enjoined[.]" *Turner v. USAGM*, 502 F. Supp. 3d 333, 386 (D.D.C. 2020) (internal quotations and citation omitted). These factors favor granting the request for preliminary injunction.

OTF funds and supports the ongoing maintenance of some of the world's most vital secure communications solutions. Granting a preliminary would allow OTF's congressionally mandated mission and programs to survive and would be in the public interest, which has been recognized repeatedly by Congress and the State Department, as recently as a few weeks ago. The public interest in this case extends to billions of individuals worldwide who continue to rely upon accessible networks, technologies, and communication platforms.

Preliminary injunctive relief, on the other hand, will not harm the Defendants; it will merely require that USAGM continue to administer the OTF Grant and disburse funds as the agency has been directed by Congress. This will end the unlawful withholding of these appropriated funds. The Government "cannot suffer harm from an injunction that merely ends an

unlawful practice or reads a statute as required to avoid constitutional concerns." *R.I.L-R v. Johnson*, 80 F. Supp. 3d 164, 191 (D.D.C. 2015) (quoting *Rodriguez v. Robbins*, 715 F.3d 1127, 1145 (9th Cir. 2013)); *see also TikTok Inc. v. Trump*, 507 F. Supp. 3d 92, 115 (D.D.C. 2020) (same). That is because "[t]here is generally no public interest in the perpetuation of unlawful agency action." *Newby*, 838 F.3d at 12; *see also Climate United Fund v. Citibank, N.A.*, ___ F. Supp. 3d ___, No. 25-cv-698, 2025 WL 842360, at *12 (D.D.C. Mar. 18, 2025) (same). Rather, "there is a substantial public interest 'in having governmental agencies abide by the federal laws that govern their . . . operations.'" *Newby*, 838 F.3d at 12 (quoting *Washington v. Reno*, 35 F.3d 1093, 1103 (6th Cir. 1994)). This Court has recognized that "[t]he public interest is served when administrative agencies comply with their obligations under the APA." *Northern Mariana Islands*, 686 F. Supp. 2d at 21 (citation omitted); *see also Cresote Council v. Johnson*, 555 F. Supp. 2d 36, 40 (D.D.C. 2008) (granting injunction because it "serves the general public interest in open and accountable agency decision-making[.]").

Here, an injunction compelling Defendants to fulfill their statutory obligations would do no more than end Defendants' unlawful practices.

## IV.    The Court Should Waive Any Bond Requirement.

If OTF's motion for a preliminary injunction is granted, this Court should waive any bond requirement or, in the alternative, require OTF to post a minimal bond in the amount of $100. Fed. R. Civ. P. 65(c) requires an applicant for preliminary relief to post security "in an amount that the court considers proper." However, the amount of security is a matter of discretion for the trial court and the court is permitted to require no security at all. *Simms v. District of Columbia*, 872 F. Supp. 2d 90, 107 (D.D.C. 2012). Here, there will be little to no financial harm inflicted on USAGM if the Court grants a preliminary injunction. *Bailey v. Fed. Bureau of Prisons*, No. 24-cv-1219, 2024 WL 3219207, at *13 n.5 (D.D.C. June 28, 2024).

**CONCLUSION**

For the foregoing reasons, the Court should enter a preliminary injunction requiring Defendants to continue to honor the terms of the FY2024 Grant Agreement and disburse the funds that Congress mandated be dispersed and providing other appropriate relief as set forth in the accompanying proposed order.

Dated this 29th day of April, 2025.

VAN NESS FELDMAN, LLP

/s/ *Patrick O. Daugherty*
Patrick O. Daugherty, D.C. Bar No. 981008
Michael Farber, D.C. Bar No. 449215
(*Admission Pending*)
2000 Pennsylvania Avenue, NW
Suite 6000
Washington, DC 20006
Tel.: 202-298-1800
Email: pod@vnf.com; mfarber@vnf.com

Sophia E. Amberson, WA Bar No. 52528
*Pro Hac Vice*
Liberty Quihuis, WA Bar No. 57779
*Pro Hac Vice*
1191 Second Avenue
Suite 1800
Seattle, WA 98101
Tel.: 206-623-9372
Email: samberson@vnf.com; lquihuis@vnf.com

*Attorneys for Plaintiff*