IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| OPEN TECHNOLOGY FUND,<br><br>　　　　　　　Plaintiff,<br><br>　v.<br><br>KARI LAKE, in her official capacity, *et al*.,<br><br>　　　　　　　Defendants. | No. 25-cv-00840-RCL |

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION**
**FOR A PRELIMINARY INJUNCTION**

**INTRODUCTION**

United States Agency for Global Media (USAGM); Kari Lake, in her official capacity as Senior Advisor to the Acting CEO of USAGM; Victor Morales, in his official capacity as Acting CEO of USAGM; and the Office of Management and Budget (together, Defendants) respectfully submit this opposition to Plaintiff Open Technology Fund's request for preliminary injunction, ECF No. 22 (Plaintiff's Motion).

The core of Plaintiff's Motion is what Plaintiff characterizes as "a *de facto* termination of OTF's Grant Agreement." *See* ECF No. 22-1 at 1. Regardless of whether Plaintiff's claim is seen as a challenge to a purported termination of its contract, *see id.*, or as a demand for payment of funds it claims to be entitled to under that contract, *see* ECF No. 22-5, its motion must be denied. Earlier this week, the D.C. Circuit issued dispositive guidance making clear that this Court lacks jurisdiction to address such claims. *See Widakuswara v. Lake*, No. 25-5144, 2025 WL 1288817, at *2 (D.C. Cir. May 3, 2025). In *Widakuswara*, plaintiffs challenged the efforts of United States Agency for Global Media (USAGM) to comply with Executive Order 14,238, both with respect to personnel decisions and, as relevant here, as to grant cancellations. This Court issued a preliminary injunction requiring USAGM to, *inter alia*, "restore its FY 2025 grants with" two of its grantees. The Court of Appeals granted a stay of this injunction by a divided vote, concluding that the district court likely lacked jurisdiction over such claims. *See Widakuswara*, 2025 WL 1288817, at *2. Earlier today, the D.C. Circuit stayed another injunction that, *inter alia*, had required USAGM to disburse funds under an extension of a grant agreement that the Court had ordered; relying on its reasoning in *Widakuswara*, the D.C. Circuit explained: "For reasons explained in a related case, we conclude that the court likely lacked jurisdiction to order the payment of funds owed under a grant agreement." Order, *RFE/RL, Inc.*

*v. Lake*, 25-5158 at *4 (citing *Widakuswara*, 2025 WL 1288817, at *3–5).

Because that conclusion applies here with equal force, Plaintiff cannot show a likelihood of success on the merits. Nor can Plaintiff satisfy the remaining factors informing whether a party is entitled to preliminary relief. Plaintiff has made no showing of cognizable irreparable harm likely to result in the absence of preliminary relief; and the balance of equities and the public interest cut against the Plaintiff's request. For all these reasons, the Court should deny the Plaintiff's motion.

## LEGAL STANDARD

A preliminary injunction is 'an extraordinary remedy that should be granted only when the party seeking relief, by a clear showing, carries the burden of persuasion.'" *State v. Musk*, --- F. Supp. 3d ---, 2025 WL 520583, at *2 (D.D.C. Feb. 18, 2025) (quoting *Hulli v. Mayorkas*, 549 F. Supp. 3d 95, 99 (D.D.C. 2021)). To warrant preliminary relief, the movant must satisfy a four-prong test, establishing "that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *accord Sherley v. Sebelius*, 644 F.3d 388, 392 (D.C. Cir. 2011). The third and fourth factors of the analysis—harm to others and the public interest—"merge when the Government is the opposing party." *Nken v. Holder*, 556 U.S. 418, 435 (2009). Although the party attempting to establish these four factors may rely on "evidence that is less complete than in a trial on the merits," *NRDC v. Pena*, 147 F.3d 1012, 1023 (D.C. Cir. 1998), it nevertheless "bear[s] the burden of produc[ing] . . . credible" evidence sufficient to demonstrate his entitlement to injunctive relief,

*R.I.L-R v. Johnson*, 80 F.Supp.3d 164, 173 (D.D.C. 2015) (quotation omitted) (first alteration in original).

"Although the Court of Appeals has not yet expressly held that a plaintiff must make a clear showing on each of the four *Winter* factors, current caselaw in this jurisdiction favors that approach." *Cmty. Oncology All. v. Becerra*, No. 23-CV-2168 (CJN), 2023 WL 9692027, at *3 (D.D.C. Dec. 21, 2023); *see also In re Navy Chaplaincy*, 738 F.3d 425, 428 (D.C. Cir. 2013) (requiring proof on all four factors); *Davis v. Pension Benefit Guar. Corp.*, 571 F.3d 1288, 1296 (D.C. Cir. 2009) (Kavanaugh, J., concurring) (noting that, after *Winter*, "the old sliding-scale approach to preliminary injunctions—under which a very strong likelihood of success could make up for a failure to show a likelihood of irreparable harm, . . . is no longer . . . viable") (internal quotation and citation omitted). Indeed, relief that "deeply intrudes into the core concerns of the executive branch"—including foreign affairs and national security—may be awarded only upon "an extraordinarily strong showing" as to each element. *Adams v. Vance*, 570 F.2d 950, 954–55 (D.C. Cir. 1978).

Moreover, the particular form of injunction Plaintiff seeks here—an affirmative injunction ordering Defendants to change the status quo, immediately pay Plaintiff a lump sum approximately $780,508, and to disburse funds under a grant agreement going forward, under the Court's supervision—comprises a highly disfavored form of relief. Mandatory preliminary injunctions, which seek to alter rather than preserve the status quo by compelling affirmative action, "are disfavored as an even more extraordinary remedy than the typical preliminary injunction, especially when directed at the United States Government." *Strait Shipbrokers Pte. Ltd. v. Blinken*, 560 F. Supp. 3d 81, 92–93 (D.D.C. 2021) (quotation marks and citations omitted); *see also, e.g.*, *Mylan Pharms., Inc. v. Shalala*, 81 F. Supp. 2d 30, 36 (D.D.C. 2000).

Plaintiffs seeking such relief "face a significantly heightened burden" of showing an entitlement to relief. *Feng Wang v. Pompeo*, 354 F. Supp. 3d 13, 20 (D.D.C. 2018). "[C]ourts exercise extreme caution in assessing" motions seeking affirmative injunctive relief, and as a general rule they deny such relief unless "the facts and law clearly favor the moving party." *Shipbrokers*, 560 F. Supp. 3d at 93 (quotation marks omitted).

## ARGUMENT

### I.   Likelihood of success on the merits.

"[T]he first and most important" of these four factors is whether the movant "ha[s] established a likelihood of success on the merits." *Aamer v. Obama*, 742 F.3d 1023, 1038 (D.C. Cir. 2014). If a plaintiff cannot show a likelihood of success on the merits, "there is no need to consider the remaining factors." *Greater New Orleans Fair Hous. Action Ctr. v. U.S. Dep't of Hous. & Urban Dev.*, 639 F.3d 1078, 1088 (D.C. Cir. 2011). Here, the D.C. Circuit's analysis in *Widakuswara* is dispositive: in that case, staying an order requiring USAGM to restore grants it had terminated, the D.C. Circuit held: "[t]he government is likely to succeed on the merits because the district court likely lacked subject-matter . . . to compel the agency to restore [other grantees'] FY 2025 grants." *Widakuswara*, 2025 WL 1288817, at *2.[1]

In reaching that conclusion, the D.C. Circuit applied *Department of Education v. California*, 145 S. Ct. 966 (2025) (per curiam), where the Supreme Court explained:

> The APA's waiver of sovereign immunity does not apply "if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought." 5 U.S.C. § 702. Nor does the waiver apply to claims seeking "money damages." *Ibid*. True, a district court's jurisdiction is "not barred by the possibility" that an order setting aside an agency's action may result in the disbursement of funds. *Bowen v. Massachusetts*, 487 U.S. 879, 910 (1988). But, as we have recognized,

---

[1] Plaintiffs-Appellees have filed an emergency petition for rehearing en banc. *See* Pet. For Rehearing En Banc, *Widakuswara v. Lake*, No. 25-5144 (D.C. Cir. May 5, 2025).

> the APA's limited waiver of immunity does not extend to orders "to enforce a contractual obligation to pay money" along the lines of what the District Court ordered here. *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 212 (2002). Instead, the Tucker Act grants the Court of Federal Claims jurisdiction over suits based on "any express or implied contract with the United States." 28 U.S.C. § 1491(a)(1).

*California*, 2015 WL 1008354 at *1. *See also U.S. Conf. of Catholic Bishops v. U.S. Dep't of State*, No. 1:25-CV-00465, 2025 WL 763738 at *4 (D.D.C. Mar. 11, 2025) (explaining that the D.C. Circuit has long "interpreted the Tucker Act as providing the *exclusive* remedy for contract claims against the government" (quoting *Transohio Sav. Bank v. Dir. Off. Of Thrift Supervision*, 967 F.2d 598, 609 (D.C. Cir. 1992)))[2].

Based on that guidance, the D.C. Circuit reasoned that in the "grants at issue, USAGM . . . promised to pay the appropriated funds to the [grantees] in monthly installments. In return, the [grantees] promised to use the funds to advance statutory objectives and to comply with all program requirements." *Widakuswara*, 2025 WL 1288817, at *3. Such "exchanges of promises—reflecting offer, acceptance, consideration, mutuality of intent, and action by an official with authority to bind the government—constitute government contracts for Tucker Act purposes." *Id.* (citing *Columbus Reg'l Hosp. v. United States*, 990 F.3d 1330, 1338-39 (Fed. Cir. 2021)). As a result, "the injunction" at issue there "in substance orders specific performance of the grant agreements—a quintessentially contractual remedy." *Id.* And "the claims of

---

[2] Since *California*, courts have been reacting by withholding or staying orders that would have required the types of remedies sought here. *See, e.g.*, *American Ass'n of Colleges for Teacher Education, et al. v. McMahon*, No. 25-1281 (4th Cir. Apr. 10, 2025) (granting the Government's motion to stay a preliminary injunction in light of *California*); Electronic Order, *Mass. Fair Housing Ctr*, No. 3:25-cv-30041-RGS (D. Mass. Apr. 14, 2025), ECF No. 42 (dissolving a temporary restraining order that had enjoined termination of federal grants in light of the Supreme Court's "unmistakable directive" that challenges to grant terminations—even those purporting to be grounded in federal statutes—must be litigated in the Court of Federal Claims).

government nonpayment necessarily challenge its performance under the grants. Such claims are squarely contract claims under the Tucker Act." *Id.* at *4.

The Tucker Act, 28 U.S.C. § 1491(a)(1), provides for judicial review of breach claims for express or implied contracts over $10,000 in the Court of Federal Claims (or district court for claims less than $10,000) "unless such jurisdiction was explicitly withheld or withdrawn by statute." *Slattery v. United States*, 635 F.3d 1298, 1321 (Fed. Cir. 2011) (*en banc*). The D.C. Circuit has long "interpreted the Tucker Act as providing the *exclusive* remedy for contract claims against the government." *U.S. Conf. of Catholic Bishops*, 2025 WL 763738, at *4 (quoting *Transohio Sav. Bank v. Dir. Off. Of Thrift Supervision*, 967 F.2d 598, 609 (D.C. Cir. 1992) (emphasis in original)). Put another way, "[t]he only remedy to which the United States has consented in cases of breach of contract is to the *payment of money damages* in either the Court of Claims [now the Court of Federal Claims], if the amount claimed is in excess of $10,000, 28 U.S.C. § 1491(a)(1), or the district courts, where the amount in controversy is $10,000 or less. 28 U.S.C. § 1346(a)(1)." *Coggeshall Dev. Corp. v. Diamond*, 884 F.2d 1, 3 (1st Cir. 1989) (emphasis in original). And "[f]ederal courts do not have the power to order specific performance by the United States of its alleged contractual obligations." *Id.* at 3.

The D.C. Circuit concluded that the Tucker Act barred litigation over USAGM grant terminations before this Court, and the same analysis applies equally to Plaintiff's claims in this case. Just the Court did not have jurisdiction to adjudicate claims concerning other USAGM grant terminations, the Court lacks jurisdiction to address Plaintiff's claims concerning alleged grant termination in this case.

Moreover, it did not matter in *Widakuswara* that "Congress appropriated specific sums for" the grantees. *Widakuswara*, 2025 WL 1288817, at *4. Rather, those statutes "do not give

the [grantees] an unqualified right to the appropriated funds," but instead "allocate funds for the [grantee]s, which may be disbursed only as grants." *Id.* "Once the agency entered those contracts," its compliance with the terms of those agreements was subject to the Court of Federal Claims. *Id.*

The D.C. Circuit also rejected the *Widakuswara* plaintiffs' contention that their "non-APA claims regarding grant money" warranted departure from the conclusion that the district court lacked subject-matter jurisdiction in light of the Tucker Act: "[T]hese constitutional claims simply flow from allegations that the Executive Branch has failed to abide by governing congressional statutes, which does not suffice to trigger the distinctively strong presumptions favoring judicial review of constitutional claims." *Id.* at *5 (citing, *inter alia*, *Ingersoll-Rand Co. v. United States*, 780 F.2d 74, 79–80 (D.C. Cir. 1985), for notion that "Tucker Act governs challenge to contract termination, 'despite plaintiff's allegations of statutory and constitutional violations'").

The same reasoning controls in this case. While Plaintiff's arguments focus on Congressional appropriation, *see* ECF No. 22-1 at 1, 17–23, *Widakuswara*—and, indeed, the Supreme Court's reasoning in *California*—confirms that Plaintiff's claims regarding grant termination, even grants premised on appropriated funds, are properly viewed as contractual claims for purposes of the Tucker Act. Accordingly, such claims are properly brought only before the Court of Federal Claims, and this Court lacks subject matter jurisdiction to address them.

Like the other USAGM grants at issue in *Widakuswara* and the education grants at issue in *California*, this grant dispute should be resolved in the Court of Federal Claims. Accordingly, the Court should deny Plaintiff's motion for a preliminary injunction.

## II. The Court should deny Plaintiff's preliminary injunction motion because Plaintiff fails to show irreparable harm.

Plaintiff likewise fails to establish that it will suffer irreparable harm absent a preliminary injunction motion. To demonstrate irreparable harm, Plaintiff must meet a "high standard" and show that it faces injuries that are "certain, great, actual, and imminent," *Hi-Tech Pharmacal Co. v. FDA*, 587 F. Supp. 2d 1, 11 (D.D.C. 2008) (citation omitted), and that are "beyond remediation." *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006). Making that showing requires "proof" that the harm it identifies "is certain to occur in the near future." *Wis. Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985) (per curiam). And the "moving party must show that such harm is likely to occur absent injunctive relief." *Robert Half Int'l Inc. v. Billingham*, 315 F. Supp. 3d 419, 432 (D.D.C. 2018).

In its motion, Plaintiff claims that it will be irreparably harmed in multiple ways if it does not immediately receive its congressionally appropriated funds. ECF. No. 22-1 at 29. But the D.C. Circuit in *Widakuswara*—while recognizing the gravity of the harms claimed—noted several potential avenues for remediation. *Widakuswara*, 2025 WL 1288817, at *5. For grantees claiming that funds had been wrongfully withheld, the D.C. Circuit found: "they may seek to recover any wrongfully withheld grant funds in the CFC. 28 U.S.C. § 1491(a)(1). Indeed, for almost a month, the Supreme Court has made clear that the CFC is likely the only forum open to them." *Id.* (citing *California*, 145 S. Ct. at 968). The same is true here.

Plaintiff's alleged economic injuries are insufficient to show irreparable harm. "Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay are not enough." *Chaplaincy of Full Gospel Churches*, 454 F.3d at 297 (quoting *Va. Petroleum Jobbers Ass'n v. FPC*, 259 F.2d 921, 925 (D.C. Cir. 1958)). Rather, it is black-letter law that economic harm is generally not irreparable. *Wis. Gas Co.*, 758 F.2d at 674

(describing that principle as "well-settled"). The only exceptions are "where the loss threatens the very existence of the movant's business," *id.* (citation omitted), or "where the claimed economic loss is unrecoverable." *Safari Club Int'l v. Jewell*, 47 F. Supp. 3d 29, 36 (D.D.C. 2014) (citation omitted).

The first exception is a narrow one—it encompasses only cases where the plaintiffs demonstrate "extreme hardship to the business" or a threat to the business's "very existence." *Gulf Oil Corp. v. Dep't of Energy*, 514 F. Supp. 1019, 1025 (D.D.C. 1981). Plaintiffs may be forced to make difficult choices and lose profits in critical areas of their business without incurring irreparable harm sufficient to warrant injunctive relief. *Cf. Boivin v. U.S. Airways, Inc.*, 297 F. Supp. 2d 110, 118–19 (D.D.C. 2003) ("[T]he forced sale of a house, a boat or stock. . . do[es] not rise to the level of 'irreparable' harm necessary to warrant the extraordinary remedy of a preliminary injunction."). And plaintiffs must document any claim that an alleged harm is a threat to the business's very existence with specific details. *Nat'l Mining Ass'n v. Jackson*, 768 F. Supp. 2d 34, 51–52 (D.D.C. 2011) (plaintiff needed to "offer a projection of anticipated future losses, tie that to an accounting of the company's current assets, [and] explain with . . . specificity how he arrived at the conclusion that he would be forced out of business in eighteen months" to show irreparable harm on this theory). Here, Plaintiff alleges that a lack of funds "'threatens the very existence" of the organization," ECF No. 22-1 at 30 (quoting *Wis. Gas Co. v. FERC*, 758 F.2d 669 (D.C. Cir. 1985)), but supplies none of the detailed projections required under the caselaw to substantiate such a claim.

The second exception, for monetary harms unrecoverable because a defendant enjoys sovereign immunity, likewise does not apply. As discussed above, *supra* at 5–6, and as the D.C. Circuit emphasized earlier this seek, *see Widakuswara*, 2025 WL 1288817, at *5, Plaintiff's

economic injuries are reparable through the Tucker Act for contract disputes concerning monetary payments. Sovereign immunity is not an obstacle for monetary recovery on Plaintiff's claims because of that statute. *See Safari Club Int'l*, 47 F. Supp. 3d at 37.

### III. The Balance of the Equities (Including the Public Interest) Does Not Favor a Preliminary Injunction.

A preliminary injunction also is not appropriate because the balance of the equities and the public interest tip in Defendants' favor. *See Nken*, 556 U.S. at 435 (holding that "[t]hese factors merge when the Government is the opposing party"). In this setting, granting the preliminary injunction that Plaintiff seeks would disrupt USAGM's oversight of its grantees to ensure taxpayer money is stewarded well, as intended by the statutory scheme that Congress provided.

In another case in which a grantee sought preliminary equitable relief against USAGM, the Court recognized that "thwarting the lawful exercise of authority of a duly appointed official would be inequitable and disserve the public interest." *Open Tech. Fund*, 470 F. Supp. 3d at 31. The Court held: "[s]etting USAGM's priorities and managing, at a broad level, U.S. international broadcasting is the prerogative of the USAGM CEO—not that of plaintiffs, and certainly not of this Court. Moreover, Congress's choice to grant the USAGM CEO broad, unilateral powers over grant-making and oversight of USAGM grantees is itself 'a declaration of public interest and policy which should be persuasive in inducing courts to give relief.'" *Id.* (quoting Va*. Ry. v. Sys. Fed'n No. 40*, 300 U.S. 515, 552 (1937)).

Moreover, in addition to concluding that the defendants were likely to succeed on their Tucker Act arguments, the Supreme Court's decision in *California* and the D.C. Circuit's decision in *Widakuswara* indicate that the balance of harms favors Defendants rather than Plaintiff. *See California*, 2015 WL 1008354 at *1 ("[R]espondents have not refuted the Government's representation that it is unlikely to recover the grant funds once they are disbursed.");

*Widakuswara*, 2025 WL 1288817 at *6. The D.C. Circuit reasoned: "the public has an interest in the Judicial Branch's respect for the jurisdictional boundaries laid down by Congress. Because . . . grant disputes directly concern the public fisc, Congress has limited the resolution of these potentially costly claims to specialized tribunals such as the . . . CFC. We must respect those boundaries no less than the substantive and appropriations provisions governing the operation of USAGM." *Widakuswara*, 2025 WL 1288817 at *6.

In this setting, the balance of the equities and the public interest align against the entry of relief.

### IV. Plaintiff Cannot Make the Heightened Showing Required for the Mandatory Injunctive Relief It Seeks.

Here, Plaintiff asks the Court to change the status quo and order USAGM, *inter alia*, to make an affirmative payment of approximately $780,508. Yet Plaintiff proffers insufficient grounds supporting this especially extraordinary form of relief. Mandatory injunctions, which seek to alter rather than preserve the status quo by compelling affirmative action, "are disfavored as an even more extraordinary remedy than the typical preliminary injunction, especially when directed at the United States Government." *Strait Shipbrokers Pte. Ltd. v. Blinken*, 560 F. Supp. 3d 81, 92–93 (D.D.C. 2021) (quotation marks and citations omitted); *see also*, *e.g.*, *Mylan Pharms., Inc. v. Shalala*, 81 F. Supp. 2d 30, 36 (D.D.C. 2000). Plaintiffs seeking such relief "face a significantly heightened burden" of showing an entitlement to relief. *Feng Wang v. Pompeo*, 354 F. Supp. 3d 13, 20 (D.D.C. 2018); *accord Archdiocese of Wash. v. Wash. Metro Area Transit Auth.*, 897 F.3d 314, 319 (D.C. Cir. 2018). "[C]ourts exercise extreme caution in assessing" motions seeking affirmative injunctive relief, and as a general rule they deny such relief unless "the facts and law clearly favor the moving party." *Shipbrokers*, 560 F. Supp. 3d at 93 (quotation marks omitted).

## V. Plaintiff Should Be Ordered to Post Security in Connection with Any Preliminary Injunctive Relief and this Court should stay any order to allow the Government to determine whether to seek an emergency stay pending appeal

For the reasons stated above, Defendants submit that the Court can and should deny Plaintiff's motion in its entirety. However, should the Court be inclined to order any injunctive relief, the Court should also order Plaintiff to post security. Under Federal Rule of Civil Procedure 65(c), the Court may issue a preliminary injunction "only if the movant gives security" for "costs and damages sustained" by Defendants if they are later found to "have been wrongfully enjoined." Fed. R. Civ. P. 65(c). In the event the Court issues a preliminary injunction here, the Court should require Plaintiff to post an appropriate bond commensurate with the scope of any such preliminary relief. *See DSE, Inc. v. United States*, 169 F.3d 21, 33 (D.C. Cir. 1999) (stating that Rule 65(c) places "broad discretion in the district court to determine the appropriate amount of an injunction bond"). As Plaintiff is seeking the payment of a particular sum, *i.e.* approximately $780,508, the Court should order the posting of a bond equal to the size of any payment that the Court orders on a preliminary basis here. Without such a protective measure, there may be no way to recover the funds lost to United States taxpayers if the Court were later to find that Defendants were "wrongfully enjoined." *See* Fed. R. Civ. P. 65(c). Indeed, the D.C. Circuit emphasized the importance of the bond requirement earlier this week. *See Widakuswara*, 2025 WL 1288817, at *5.

Finally, this Court should stay any order requiring disbursement of funds for at least seven days to allow the Solicitor General to determine whether to authorize the Government to seek a stay pending appeal. *See California*, 2015 WL 1008354 at *1–2.

## CONCLUSION

For the foregoing reasons, the Court should deny the Plaintiff's Motion for a Preliminary Injunction.

Dated:  May 7, 2025	Respectfully submitted,

YAAKOV M. ROTH
Acting Assistant Attorney General

ERIC J. HAMILTON
Deputy Assistant Attorney General
Civil Division, Federal Programs Branch

JOSEPH E. BORSON
Assistant Branch Director
Federal Programs Branch


/s/ *Abigail Stout*
ABIGAIL STOUT
(DC Bar No. 90009415)
*Counsel*
U.S. Department of Justice
Civil Division
950 Pennsylvania Avenue, NW
Washington, DC 20530
Telephone: (202) 514-2000
Email: Abigail.Stout@usdoj.gov

*/s/  Julia A. Heiman*
JULIA A. HEIMAN (D.C. Bar No. 986228)
Federal Programs Branch
U.S. Department of Justice, Civil Division
1100 L Street, N.W.
Washington, DC  20005
Tel. (202) 616-8480 / Fax (202) 616-8470
julia.heiman@usdoj.gov
*Attorneys for Defendants*