IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| OPEN TECHNOLOGY FUND,<br><br>    Plaintiff,<br><br>v.<br><br>KARI LAKE et al.,<br><br>    Defendants. | Civil Action No. 1:25-cv-840-RCL<br><br>**PLAINTIFF'S REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION** |

## INTRODUCTION

Congress' instructions to the United States Agency for Global Media ("USAGM") are clear—it must execute grant agreements with Open Technology Fund ("OTF") and provide appropriated funds in accordance with those agreements.[1] Rather than comply with this statutory mandate, USAGM refuses to disburse funds it has already approved under OTF's fiscal year 2024 grant agreement (the "FY2024 Grant Agreement"). Even worse, USAGM has not provided OTF or the Court with any explanation for its decision to withhold these congressionally appropriated funds.

USAGM previously represented to OTF and to the Court that OTF's FY2024 Grant Agreement is "in effect," after USAGM rescinded its March 15, 2025 Grant Termination decision. ECF 13 (Notice of Withdrawal of Grant Termination); ECF 15 at 3 (confirming that the Withdrawal Letter covered "any other grants" with USAGM, including the FY2024 Grant Agreement). Yet, USAGM has failed to disburse funds to OTF in accordance with the USAGM-

---

[1] *See RFE/RL, Inc. v. Lake*, ___ F. Supp. 3d ___, No. 25-cv-799-RCL, 2025 WL 1232863, at *9 (D.D.C. Apr. 29, 2025) ("It is, after all, *Congress* that makes the laws in this country. In this case, for example, it was *Congress* who ordained that the monies at issue should be allocated to [OTF].") (emphasis in the original), *appeal docketed*, No. 25-5158 (D.C. Cir. May 1, 2025).

Pl.'s Reply in Supp. of Mot. for Prelim. Inj. - 1
*Open Technology Fund v. Lake*, No. 1:25-cv-840-RCL

approved financial plan governing distribution of the FY2024 Grant Agreement funding. The approved financial plan required USAGM to provide OTF with April operating funds of $780,508 and May operating funds of $655,508, both of which are now seriously delinquent.

Rather than offer any explanation for its decision, USAGM defends its actions solely by asserting that this Court lacks jurisdiction. However, on May 7, 2025 (the same day that USAGM filed its response), the U.S. Court of Appeals for the D.C. Circuit acting *en banc* overruled the opinion on which USAGM rests its defense. Order on Stays, *RFE/RL, Inc. v. Lake*, No. 25-5158 (D.C. Cir. May 7, 2025) (en banc). And, given USAGM's recalcitrance—i.e., refusing to disburse funds or explain why they are withholding such funds, canceling meetings, and holding its FY2025 Grant Agreement hostage—it is unlikely that USAGM will distribute the money absent further court intervention. Accordingly, a preliminary injunction is necessary to preserve the status quo and provide OTF with the necessary relief during the pendency of this case.

USAGM's arguments on the merits rest solely on the mistaken contention that this Court lacks jurisdiction. This argument has failed multiple times in this Court and in the D.C. Circuit. Additionally, USAGM's arguments related to the irreparable harm and public interest factors have similarly been rejected, as has USAGM's argument that OTF must post bond and fails to meet the heightened showing of a mandatory injunction. In sum, USAGM has marshalled all these arguments before, and has lost—repeatedly.

## ARGUMENT

**I.  The Standard of Review for Prohibitory Injunctions Is Appropriate, but OTF Would Prevail Even under a More Stringent Standard.**

OTF seeks to preserve the status quo as it exists since USAGM withdrew its unlawful termination of OTF's grant agreements. Specifically, OTF seeks disbursement of OTF's

congressionally appropriated funds promised to OTF under the FY2024 Grant Agreement and based on OTF's FY24 financial plan that USAGM and OTF both authorized. A mandatory injunction—as opposed to a prohibitory injunction—"would alter, rather than preserve, the *status quo* by commanding some positive act[.]" *Singh v. Carter*, 185 F. Supp. 3d 11, 17 (D.D.C. 2016) (quoting *Elec. Priv. Info. Ctr. v. Dep't of Just.*, 15 F. Supp. 3d 32, 39 (D.D.C. 2014); *Veitch v. Danzig*, 135 F. Supp. 2d 32, 35 & n.2 (D.D.C. 2001)). More recently, the D.C. Circuit "has rejected any distinction between a mandatory and prohibitory injunction, observing that the mandatory injunction has not yet been devised that could not be stated in prohibitory terms." *League of Women Voters of U.S. v. Newby*, 838 F.3d 1, 7 (D.C. Cir. 2016) (internal quotation marks and citation omitted); *but see Pantoja v. Martinez*, No. 21-cv-7118, 2022 WL 893017, at *1 (D.C. Cir. Mar. 25, 2022) (per curiam) (characterizing injunction that would reinstate the plaintiff in his prior leadership roles as a "mandatory preliminary injunction . . . requir[ing] a higher standard than an ordinary preliminary injunction[.]") (citation omitted). At any rate, the Court need not resolve whether that heightened standard applies here, because under either standard, OTF has shown that preliminary injunctive relief is warranted.

II. **This Court Has Jurisdiction and USAGM Waived Any Argument on Likelihood of Success.**

The Tucker Act does not divest this Court of jurisdiction over this case. The D.C. Circuit has explained that the jurisdictional question "depends not simply on whether a case involves contract issues, but on whether, despite the presence of a contract, plaintiffs' claims are founded only on a contract, or whether they stem from a statute or the Constitution." *Transohio Sav. Bank v. Dir., Off. of Thrift Supervision*, 967 F.2d 598, 609 (D.C. Cir. 1992). Accordingly, if a plaintiff's claim depends on interpretations of statutes and regulations rather than the terms of an agreement negotiated by the parties, the claim is not in essence contractual. *Crowley Gov't*

*Servs., Inc. v. Gen. Servs. Admin.*, 38 F.4th 1099, 1106 (D.C. Cir. 2022); *see also Widakuswara v. Lake*, No. 25-5144, 2025 WL 1288817, at *12 (D.C. Cir. May 3, 2025) (per curiam) ("*Widakuswara II*") ("What matters is what the court must examine to resolve the case") (citing *Crowley*, 38 F.4th at 1109–10). Moreover, the D.C. Circuit has rejected the argument that "an agency action may not be enjoined, even if in clear violation of a specific statute, simply because that same action might also amount to a breach of contract." *Megapulse, Inc. v. Lewis*, 672 F.2d 959, 971 (D.C. Cir. 1982).

As the Court noted in *RFE/RL, Inc. v. Lake*, the mere "existence (or, in this case, non-existence) of a grant agreement between USAGM and RFE/RL is incidental to RFE/RL's claims—a grant is involved only as a vehicle to distribute congressionally appropriated funds because Congress requires USAGM to transmit funds to RFE/RL that way." 2025 WL 1232863, at *4 (citing *Widakuswara v. Lake*, No. 25-cv-1015-RCL, 2025 WL 1166400, at *9 (D.D.C. Apr. 22, 2025) ("*Widakuswara I*")). In *Widakuswara II*, the Court also held that it had jurisdiction over Plaintiffs' claims regarding the withholding of congressional appropriations from networks. 2025 WL 1288817, at *4. The decisions reached by this Court are supported by the action of the D.C. Circuit en banc, declining to stay these rulings pending appeal. Order on Stays, *RFE/RL, Inc. v. Lake*, No. 25-5158 (D.C. Cir. May 7, 2025) (en banc).

Rather than engage with OTF's arguments that the continued withholding of funds from OTF violates the Administrative Procedure Act, federal statutes, and the U.S. Constitution, Defendants have conceded that OTF is likely to succeed on the merits of those claims if Defendants' procedural objections are rejected. *See, e.g.*, *Wannall v. Honeywell, Inc.*, 775 F.3d 425, 428 (D.C. Cir. 2014) ("[I]f a party files an opposition to a motion and therein addresses only some of the movant's arguments, the court may treat the unaddressed arguments as conceded.")

(citations omitted); *Day v. D.C. Dep't of Consumer & Regul. Affs.*, 191 F. Supp. 2d 154, 159 (D.D.C. 2002) ("If a party fails to counter an argument that the opposing party makes in a motion, the court may treat that argument as conceded.") (citation omitted); *United States v. Great Am. Ins. Co. of N.Y.*, 738 F.3d 1320, 1328 (Fed. Cir. 2013) ("It is well established that arguments that are not appropriately developed in a party's briefing may be deemed waived.") (citing *SmithKline Beecham Corp. v. Apotex Corp.*, 439 F.3d 1312, 1320 (Fed. Cir. 2006); *United States v. Charles*, 469 F.3d 402, 408 (5th Cir. 2006)).

### III. OTF Is Likely to Suffer Irreparable Harm Without Immediate Relief.

OTF previously provided a detailed explanation of the irreparable and imminent harm it faces without relief from the Court. ECF 4-1 at 26-31; ECF 22-1 at 29-34. Defendants' only argument is that these harms can be remedied by the U.S. Court of Federal Claims because (1) OTF's claims are economic in nature; and (2) sovereign immunity does not apply because OTF can avail its of relief in the Court of Federal Claims. Neither of these arguments actually address OTF's contentions of irreparable harm, and these arguments fail for the same reasons as stated above.

First, Defendants' argument that OTF's "economic injuries are insufficient to show irreparable harm," ECF 24 at 8, indicates Defendants lack an even rudimentary understanding of the harms OTF faces. First, as Defendants acknowledge, economic injuries are sufficient if they "threaten[] the very existence of [its] business." *Wis. Gas Co. v. Fed. Energy Regul. Comm'n*, 758 F.2d 669, 674 (D.C. Cir. 1985) (citation omitted). This Court has found irreparable harm in similar circumstances: "An organization can only survive so many rounds of missed payments, broken contracts, and lost employees before it is gone for good; RFE/RL need not wait until it has crossed that threshold to be deserving of preliminary injunctive relief." *RFE/RL, Inc. v. Lake*, 2025 WL 1232863, at *7; *see also Nat'l Council of Nonprofits v. Off. of Mgmt. & Budget*, ___ F.

Pl.'s Reply in Supp. of Mot. for Prelim. Inj. - 5
*Open Technology Fund v. Lake*, No. 1:25-cv-840-RCL

Supp. 3d ___, No. 25-cv-239-LLA, 2025 WL 368852, at *11 n.8 (D.D.C. Feb. 3, 2025). As explained in OTF's memorandum, OTF has the ability to reprogram some funds in an effort to stymie the hemorrhaging of operational funding. That maneuver, however, is only a temporary fix, is subject to regulatory limits, and merely delays the inevitable collapse of OTF. Contrary to Defendants' assertions, OTF provides ample evidence of how the funding freeze will ultimately result in OTF's demise.[2]

Moreover, reprogramming funds comes at a significant cost to OTF's mission. Reprogramming involves diverting funds away from OTF core projects such as providing virtual private network ("VPN") access to 7,000,000 people, primarily in Russia, Iran, and Myanmar. April 29, 2025 Declaration of Laura Cunningham in support of Plaintiff's Motion for a Preliminary Injunction, ¶ 25, ECF 22-2. OTF's Multilateral Surge and Sustain Fund provides secure and uncensored access to the internet to over 45 million people in such conditions. Declaration of Laura Cunningham in support of Motion for Temporary Restraining Order ("First Cunningham Decl."), ¶ 18, ECF 4-2. This program is consistent with OTF's functions, as established by Congress. *See* 22 U.S.C. § 6208a(b)(1)(A) ("[T]he Open Technology Fund shall seek to advance freedom of the press and unrestricted access to the internet in repressive environments overseas, and shall research, develop, implement, and maintain technologies that circumvent techniques used by authoritarian governments, nonstate actors, and others to block or censor access to the internet, including circumvention tools that bypass internet blocking, filtering, and other censorship techniques used to limit or block legitimate access to content and

---

[2] Defendants' argument that "Plaintiffs may be forced to make difficult choices and lose profits in critical areas of their business without incurring irreparable harm sufficient to warrant injunctive relief," ECF 24 at 9, is nonsensical. OTF is a section 501(c)(3) non-profit entity that is statutorily mandated by Congress. Any "loss in profits" amounts to a loss in operation or programmatic funding.

Pl.'s Reply in Supp. of Mot. for Prelim. Inj. - 6
*Open Technology Fund v. Lake*, No. 1:25-cv-840-RCL

information[.]"). It is also consistent with federal policy enshrined in statutes. *See id.* § 6217(a)(1) ("It is the policy of the United States to promote internet freedom through programs . . . that preserve and expand the internet as an open, global space for freedom of expression and association, which shall be prioritized for countries whose governments restrict freedom of expression on the internet[.]").

Even assuming arguendo that the aforementioned "economic harms" are insufficient to support a preliminary injunction, OTF has also alleged several other harms that are not purely economic. In its motion for a preliminary injunction, OTF highlighted the harm to its programs, core mission, and partners. ECF 22-1 at 31-32. Additionally, OTF's reputation as a trusted partner in VPN access, threat intelligence, and interventions to state sponsored digital attacks help incubate rapid responses to novel methods of digital authoritarianism. First Cunningham Decl., ¶¶ 17–30.

Defendants' second argument that OTF has legal recourse in the form of damages relies on the faulty premise that jurisdiction is appropriate in the Court of Federal Claims. For the reasons explained in section II above, jurisdiction is proper in this Court.

## IV. The Balance of the Equities and Public Interest Favor Granting the Preliminary Injunction.

The balance of the equities and the public interest factors "merge when the Government is the opposing party." *Am. Ass'n of Pol. Consultants v. U.S. Small Bus. Admin.*, 613 F. Supp. 3d 360, 365 (D.D.C. 2020) (quoting *Nken v. Holder*, 556 U.S. 418, 435 (2009)). "[T]here is a substantial public interest 'in having governmental agencies abide by the federal laws that govern their existence and operations.'" *League of Women Voters of the U.S.*, 838 F.3d at 12 (citation omitted).

The public interest in protecting and preserving OTF's mission is no less important than that determined by this Court with regard to RFE/RL. When RFE/RL began broadcasting in 1950, radio was the dominant form of global communication. Seventy-five years later, the internet dominates. Congress recognized this fact when it called for OTF to receive grants "for the purpose of promoting . . . unrestricted access to uncensored sources of information via the internet to enable journalists, including journalists employed by . . . Radio Free Europe/Radio Liberty, . . . to create and disseminate . . . news and information[.]" 22 U.S.C. § 6208a(a)(1). OTF's operations further the express policy of the United States to "promote internet freedom through programs . . . that preserve and expand the internet as an open, global space for freedom of expression and association," *id*. § 6217(a), especially in countries whose governments restrict access to the truth.[3] As this Court noted, "[o]ur Constitution provides that laws are enacted by the Congress and enforced by the Executive. When money has been appropriated by Congress, 'the Executive has no residual constitutional power to refuse to spend these appropriations.'" *RFE/RL, Inc. v. Lake*, 2025 WL 1232863, at *8 (quoting *Guadamuz v. Ash*, 368 F. Supp. 1233, 1243–44 (D.D.C. 1973)).

---

[3] Defendants' reliance on *Open Technology Fund v. Pack*, is misplaced. ECF 24 at 10. That case concerned USAGM's unilateral replacement of both the grantee's head and board, and the Court's statement in dicta that USAGM's CEO has "broad, unilateral powers over grant-making," pre-dates Congress's removal of these authorities from the CEO. *Open Tech. Fund v. Pack*, 470 F. Supp. 3d 8, 31 (D.D.C. 2020), *vacated*, No. 20-cv-5195, 2021 WL 11096700 (D.D.C. Mar. 16, 2021). Following the *Pack* decision, Congress amended the applicable statute, specifically reining in the CEO's authority. James M. Inhofe National Defense Authorization Act for Fiscal Year 2023, Pub. L. No. 117-263, § 9706, 136 Stat. 2395, 3916 (2022) (removing the authority of the USAGM CEO to condition grants on the authority to name and replace the board of any grantee). Congress has not provided a mechanism for USAGM to unilaterally withhold OTF's appropriated funds or to terminate the OTF Grant. *See* 22 U.S.C. § 6205.

**V.     Under These Circumstances Neither a Bond nor Stay Are Appropriate.**

If OTF's motion for a preliminary injunction is granted, this Court should waive any bond requirement or, in the alternative, require OTF to post a minimal bond in the amount of $100. Federal Rule of Civil Procedure 65(c) requires an applicant for preliminary relief to post security "in an amount that the court considers proper," "including the discretion to require no bond at all." *P.J.E.S. ex rel. Escobar Francisco v. Wolf*, 502 F. Supp. 3d 492, 520 (D.D.C. 2020). However, the amount of security is a matter of discretion for the trial court and the court is permitted to require no security at all. *Simms v. Dist. of Columbia*, 872 F. Supp. 2d 90, 107 (D.D.C. 2012). Moreover, "where the defendants are already constitutionally required to distribute funds in accordance with the yearly appropriations bill, [] a bond would merely impose a financial barrier to litigation for plaintiffs seeking to vindicate their statutory and constitutional rights." *Widakuswara I*, 2025 WL 1166400, at *17; *see also Nat'l Council of Nonprofits v. Off. of Mgmt. & Budget*, ___ F. Supp. 3d ___, No. 25-cv-239-LLA, 2025 WL 597959, at *19 (D.D.C. Feb. 25, 2025) ("In a case where the government is alleged to have unlawfully withheld trillions of dollars of previously committed funds to countless recipients, it would defy logic—and contravene the very basis of this opinion—to hold Plaintiffs hostage for the resulting harm.").

The Court should also deny Defendants' request to "stay any order requiring disbursement of funds for at least seven days." ECF 24 at 12. "[T]he factors regulating the issuance of a stay" include "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987) (citations omitted).

As detailed in this Court's orders in *Widakuswara I*, 2025 WL 1166400, at *13, *RFE/RL, Inc. v. Lake*, 2025 WL 1232863, and *Radio Free Asia v. United States*, No. 25-cv-907-RCL, 2025 WL 1291342 (D.D.C. Apr. 25, 2025), as discussed in OTF's briefing on its Motion for a Temporary Restraining Order, ECF 4-1, and Motion for a Preliminary Injunction, ECF 22-1, and as implied by the D.C. Circuit's en banc ruling, Order on Stays, *RFE/RL, Inc. v. Lake*, No. 25-5158 (May 7, 2025) (en banc), OTF is likely to succeed on the merits.[4]

Regarding the likelihood of irreparable harm to the United States in absence of a stay, as Defendants point out "it is black-letter law that economic harm is generally not irreparable." ECF 24 at 8. An order requiring USAGM to disburse congressionally mandated funds is not economic harm that would "threaten[] the very existence of the movant's business." *Climate United Fund v. Citibank, N.A.*, ___ F. Supp. 3d ___, No. 25-cv-698-TSC, 2025 WL 842360, at *10 (D.D.C. Mar. 18, 2025) (citation omitted).

A stay, however, would irreparably harm OTF and threaten its existence as well as cause reputational harm and harm to its statutorily required mission. "In short, ordering the payment of congressionally appropriated money to the intended recipient, and for its intended use, does not amount to irreparable harm to the federal government. The indefinite withholding of appropriations from international broadcasting outlets, however, does cause irreparable harm."

---

[4] Given the Court's prior rejection of these arguments, "the Government should have followed the sage advice of Kenny Rogers and known to run away" from repeatedly making the same failed arguments. *Cherokee Nation v. U.S. Dep't of Interior*, No. 19-cv-2154-TNM-ZMF, 2021 WL 1217911, at *3 n.2 (D.D.C. Jan. 4, 2021); *In re Lehman Bros. Sec. & ERISA Litig.*, No. 08-cv-5523-LAK, 2012 WL 1563879, at *1 (S.D.N.Y. May 3, 2012) ("As Kenny Rogers taught at least one generation with his hit song, *The Gambler*, in both life and in poker[:] 'You got to know when to hold 'em, know when to fold 'em, [k]now when to walk away[,] and know when to run.'").

*Widakuswara v. Lake*, No. 25-cv-1015-RCL, 2025 WL 1210937, at *2 (D.D.C. Apr. 25, 2025) (citation omitted).

Lastly, a stay would not be in the public interest given Defendants continued obstinate actions in contravention of Congress' mandate, the Constitution, and the Administrative Procedure Act.

## CONCLUSION

OTF respectfully requests that its Motion for Preliminary Injunction be granted requiring Defendants to continue to honor the terms of the FY2024 Grant Agreement and disburse the funds that Congress mandated be dispersed and providing other appropriate relief as set forth in the proposed order.

Dated this 15th day of May 2025.

Respectfully submitted,

VAN NESS FELDMAN, LLP

/s/ *Patrick O. Daugherty*
Patrick O. Daugherty, D.C. Bar No. 981008
Michael Farber, D.C. Bar No. 449215
      (*Admission Pending)*
2000 Pennsylvania Avenue, NW
Suite 6000
Washington, DC 20006
Tel.: 202-298-1800
Email: pod@vnf.com; mfarber@vnf.com

Sophia E. Amberson, WA Bar No. 52528
      *Pro Hac Vice*
Liberty Quihuis, WA Bar No. 57779
      *Pro Hac Vice*
1191 Second Avenue
Suite 1800
Seattle, WA 98101
Tel.: 206-623-9372
Email: samberson@vnf.com; lquihuis@vnf.com

*Attorneys for Plaintiff*

Pl.'s Reply in Supp. of Mot. for Prelim. Inj. - 11
*Open Technology Fund v. Lake*, No. 1:25-cv-840-RCL

## CERTIFICATE OF SERVICE

    I hereby certify that on this 15th day of May 2025, a true and correct copy of the foregoing was filed using the Court's CM/ECF filing system, which shall send notice to all counsel of record.

                                    /s/ *Patrick O. Daugherty*
                                    Patrick O. Daugherty