UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**OPEN TECHNOLOGY FUND**,

    *Plaintiff*,

v.

**KARI LAKE**, in her official capacity, *et al.*,

    *Defendants*.

Case No. 1:24-cv-840-RCL

## MEMORANDUM ORDER

Before the Court is Plaintiff Open Technology Fund's Motion [ECF No. 22] for a Preliminary Injunction, which seeks to enjoin the defendants from withholding congressionally appropriated funds under the grant agreement for Fiscal Year 2024 between USAGM and OTF. For the reasons contained herein, the Motion is **GRANTED**.

### I.   BACKGROUND

#### A.   Statutory Background

The Open Technology Fund ("OTF") is a nonprofit corporation that was incorporated in 2019. Decl. of OTF President Laura Cunningham ¶ 4, ECF No. 4-2. In the National Defense Authorization Act for fiscal year 2021, Congress directed OTF to "advance freedom of the press and unrestricted access to the internet in repressive environments overseas" by "research[ing], develop[ing], implement[ing], and maintain[ing] . . . technologies that circumvent techniques used by authoritarian governments . . . to block or censor access to the internet," as well as "secure communication tools . . . that facilitate the creation and distribution of news and enable audiences to access media content on censored websites." *Id.*; *see also* 22 U.S.C. § 6208a(b). OTF was additionally tasked with "advanc[ing] internet freedom by supporting private and public sector

1

research, development, implementation, and maintenance of technologies that . . . counter attempts by authoritarian governments, nonstate actors, and others to improperly restrict freedom online," and to "research and analyze emerging technical threats and develop innovative solutions . . . to maintain the technological advantage of the United States Government over" such actors. 22 U.S.C. § 6208a(b)(2)–(3). OTF fulfills this remit by honing in on the surveillance and censorship technologies used by repressive regimes such as Iran, China, and Cuba, and by developing and deploying digital tools to circumvent these technologies, such as virtual private networks (VPNs) and internet shutdown-resistant communication technologies. Cunningham Decl. ¶¶ 24–31.

Since OTF's inception, Congress has appropriated money that it directs to be distributed to OTF by USAGM via grant agreements. In the Further Consolidated Appropriations Act of 2024, Pub. L. No. 118-47, §§ 7019, 7050, 138 Stat. 460, 833 (2024), Congress allocated $43.5 million specifically for OTF for the 2024 fiscal year. Since then, OTF has been allocated funding via continuing resolutions, the most recent of which was signed into law by President Trump on March 15, 2025. Full Year Continuing Appropriations and Extensions Act, 2025, H.R. 1968, 119th Cong. § 1101(a) (2025). The money appropriated for OTF is first apportioned to USAGM and then provided to OTF under a grant agreement between OTF and USAGM, and the period of performance for each OTF grant lasts for the three subsequent fiscal years. *See* 22 U.S.C. § 6208a(e); *see also* Cunningham Decl. ¶ 6. For the purposes of this Motion, the relevant OTF Grant is the FY 2024 Grant Agreement executed on September 9, 2024. The FY 2024 Grant Agreement covers the period of October 1, 2023 through September 30, 2026. Third Cunningham Decl. ¶ 10, ECF No. 22-2. 2). As with every other OTF grant, it includes a Financial Plan prepared by OTF that details the expenses or programs that will be funded by the OTF Grant each month, as well as the schedule for distribution of the funds. PI Mot. at 22–23. In typical practice, at the

beginning of each month, OTF makes drawdown requests to USAGM in accordance with the financial plan. *Id.* at 23.

### B. Procedural History

On March 15, 2025, defendant Kari Lake, in her capacity as "Senior Advisor to the Acting CEO" of USAGM, sent a letter to OTF's president Laura Cunningham notifying her that their operative grant agreement was terminated. *See* Notice of Grant Termination, ECF No. 4-4. OTF filed a Complaint in this Court on March 20, 2025, *see* Compl., ECF No. 1, and moved for a temporary restraining order the same day. *See* Mot. for Temporary Restraining Order, ECF No. 4. The Court scheduled a TRO hearing for March 27, 2025. However, that morning before the hearing, the defendants notified the Court that the letter terminating OTF's grant agreement had been withdrawn. *See* Notice of Withdrawal of Grant Termination, ECF No. 13. A further email from USAGM to Ms. Cunningham confirmed that the agency would begin processing OTF's March drawdown request for $655,508 of funds. *See* Suppl. Notice, ECF No. 15. Based on these representations, the Court reserved ruling on the plaintiff's Motion for a TRO.

On March 31, 2025, the Court held a second hearing on OTF's TRO Motion. At that hearing, OTF represented that it had not yet received the promised funds. The Court entered an Order, with the plaintiff's consent, requiring the defendant to submit daily status updates for seven days or until the specified funds were disbursed to OTF. *See* Order of March 31, 2025, ECF No. 16. The defendants' status update filed two days later confirmed that the funds were nearly finished processing and would be deposited the following day. *See* Status Update of April 2, 2025, ECF No. 18. The following day, OTF received its March payment in full and, accordingly, withdrew its Motion for a TRO. *See* Notice of Withdrawal of TRO Motion, ECF No. 19. OTF has not received a payment from USAGM since then.

*i.   Related Cases, and D.C. Circuit En Banc Reversal*

In the meantime, several related cases regarding USAGM's withholding of funding from other network grantee organizations—Radio Free Asia, Middle East Broadcast Networks, and RFE/RL (formerly "Radio Free Europe/Radio Liberty")—have progressed.  As is relevant here, on April 22, 2025, this Court granted a preliminary injunction that ordered USAGM to "restore the FY 2025 grants with USAGM Networks Radio Free Asia and Middle East Broadcasting Networks,"[1] and to that end, to disburse the congressionally appropriated funds to each of these organizations on a monthly basis.  *Widakuswara v. Lake*, --- F. Supp. 3d. ---, 2025 WL 1166400, at *18 (D.D.C. Apr. 22, 2025) (hereinafter "*Widakuswara* PI").[2]  The Court did not grant relief to OTF at that time because OTF did not have any outstanding motions for preliminary relief.  *See id.* at *1 n.1.

The defendants appealed and sought a stay of the *Widakuswara* PI, which was granted by a divided panel of the D.C. Circuit.  *Widakuswara v. Lake*, No. 25-5144, 2025 WL 1288817, at *6 (D.C. Cir. May 3, 2025) (hereinafter "*Widakuswara* Panel Stay").  However, the *en banc* D.C. Circuit administratively stayed the panel's stay order, putting this Court's PI back into effect and restoring funding to the network grantees.  *Middle East Broad. Networks, Inc. v. United States*, No. 25-5150, 2025 WL 1378735, at *1 (D.C. Cir. May 7, 2025).  Three weeks later, on May 28,

---

[1] Though the Court granted relief for Radio Free Asia and Middle East Broadcast Networks, the Court did not grant relief for RFE/RL because RFE/RL's FY 2024 grant had lapsed, and the parties were engaged in negotiations for a new FY 2025 agreement. *Widakuswara* PI at *12 n.23. However, a week later with no progress on negotiations, the Court ordered the government to enter into an "extender" agreement with RFE/RL to immediately disburse RFE/RL's congressionally appropriated funds for April, while negotiations could ostensibly continue to take place. *RFE/RL, Inc. v. Lake*, No. 25-cv-799-RCL, 2025 WL 1232863, at *1 (D.D.C. Apr. 29, 2025). With no meaningful progress on negotiations by the end of May, the Court entered a similar order to facilitate RFE/RL's access to its May funds. *See RFE/RL, Inc. v. Lake*, No. 25-cv-799-RCL, 2025 WL 1565307, at *1 (D.D.C. May 30, 2025).

[2] To allow the networks themselves to participate in the appeals process, the Court entered identical relief in the cases brought directly by Radio Free Asia and Middle East Broadcast Networks. Those cases are being litigated on appeal alongside *Widakuswara*. *See Radio Free Asia v. United States*, No. 25-5151 (D.C. Cir. 2025); *Middle East Broadcast Networks v. United States*, No. 25-5150 (D.C. Cir. 2025).

2025, the *en banc* Circuit granted the plaintiff grantee networks' motion for reconsideration and vacatur and denied the government's motion for a stay pending appeal. *Widakuswara v. Lake*, No. 25-5144, 2025 WL 1521355, at *1 (D.C. Cir. May 28, 2025) (hereinafter "*Widakuswara* En Banc Order"). *The en banc* Circuit reasoned that the original panel erred in staying this Court's PI because "the government ha[d] not made the requisite 'strong showing' of a likelihood of success on the merits" and because "the government has not contended that it will ultimately prevail in establishing an entitlement to those funds; it instead has argued solely that, as a jurisdictional matter, the entitlement must be determined in another forum (the U.S. Court of Federal Claims)," which did not merit a stay pending appeal. *Id.*

Thus, this Court's PI remains in effect as it pertains to the funding of USAGM network grantees. The D.C. Circuit has ordered expedited briefing in *Widakuswara* and the related cases, to be completed by the end of July for the panel's consideration.

  ii. *OTF Seeks Renewed Relief*

On April 29, 2025, OTF filed the instant Motion for a preliminary injunction. Mot. For Preliminary Injunction ("PI Mot."), ECF No. 22. OTF states that USAGM had not disbursed any funding to OTF since the March payment (i.e., since the earlier TRO Motion), and instead, USAGM is inexplicably withholding congressionally appropriated funds despite representing to OTF and the Court that the grant agreement is back in effect. *Id.* at 11. Thus, OTF seeks an order from this Court enjoining the defendants to "immediately obligate and disburse to OTF the amount of OTF's congressionally appropriated funds of approximately $780,508 in fiscal year 2024 funds for the period covering April 1–30, 2025." *Id.* at 2. Additionally, OTF seeks an order requiring the defendants to obligate and disburse to OTF congressionally appropriated funds at the beginning of each month through the rest of the fiscal year. *Id.* This amounts to:

5

- $655,508 for the period covering May 2025;
- $655,508 for the period covering June 2025;
- $780,508 for the period covering July 2025;
- $655,508 for the period covering August 2025; and
- $655,511 for the period of September 2025.

*Id.* The defendants do not dispute that these are the correct numerical amounts owed to OTF for each month under the grant agreement. On May 7, 2025, the defendants filed an Opposition. Defs.' Opp'n to Pls.' Mot. For Preliminary Injunction ("Opp'n"), ECF No. 24. On May 15, OTF filed a Reply in support of its Motion. Reply, ECF No. 27. On May 20, the Court held a hearing during which both parties presented argument. Min. Entry for Mot. Hr'g, May 20, 2025. The Motion is now ripe for this Court's review.

## II.     LEGAL STANDARDS

A preliminary injunction "is a stopgap measure, generally limited as to time, and intended to maintain a status quo or 'to preserve the relative positions of the parties until a trial on the merits can be held.'" *Sherley v. Sebelius*, 689 F.3d 776, 781–82 (D.C. Cir. 2012) (quoting *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981)). It is an "extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). "A plaintiff seeking a preliminary injunction must establish [1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Id.* at 20. "Where, as here, the government is a party, the latter two factors of the preliminary analysis merge into one, because the interest of the government is taken to be identical to the interest of the public." *RFE/RL*, --- F.Supp.3d at ---, 2025 WL 900481, at *2 (citing *Nken v. Holder*, 556 U.S. 418, 435 (2009)). Courts in this Circuit have adopted a "sliding scale" approach to the preliminary relief analysis,

6

"whereby a relatively strong showing on one of these factors may partially offset weakness in another, although some non-speculative showing of irreparable harm is essential." *Id.* (citing *CityFed Fin. Corp. v. Off. of Thrift Supervision*, 58 F.3d 738, 747 (D.C. Cir. 1995)).

### III. DISCUSSION

#### A. The Court Has Jurisdiction Over this Dispute

The Court has repeatedly confirmed its jurisdiction over disputes between USAGM and its various network grantees suing for access to congressionally appropriated funds. *See Widakuswara* PI at *9; *see also RFE/RL, Inc. v. Lake*, --- F. Supp. 3d ---, 2025 WL 1232863, at *4 (D.D.C. Apr. 29, 2025) (granting a temporary restraining order for Radio Free Europe/Radio Liberty, requiring the government to immediately disburse over $12 million in congressionally appropriated funds for April); *RFE/RL, Inc. v. Lake*, 25-cv-799-RCL, 2025 WL 1565307 (D.D.C. May 30, 2025) (same, for May funds). And as explained *supra*, in denying the government's motion for a stay pending appeal in *Widakuswara* and the related cases, the D.C. Circuit *en banc* court has taken the same view. *See* En Banc Order at *1. Based on the D.C. Circuit's most recent guidance on this issue, the Court's original reasoning in *Widakuswara* applies here. The Court has jurisdiction to hear OTF's claims regarding the defendants' withholding of congressionally appropriated funds.

#### B. OTF Is Entitled to Preliminary Relief

##### i. PI Factor 1: Likelihood of Success on the Merits

For substantially the same reasoning as explained in the *Widakuswara* PI, OTF is likely to succeed on the merits of its challenge. The defendants' continuous withholding of congressionally appropriated funds, month after month, with no explanation, is a violation of the Administrative Procedure Act (APA). *See Widakuswara* PI at *14–15 (finding that the decision to terminate grants

7

to Radio Free Asia and Middle East Broadcast Networks was "arbitrary and capricious," "not in accordance with the law," and "unlawfully withheld or unreasonably delayed," violating at least three different provisions of the APA).

The only difference in this dispute is that, strangely, the defendants are representing to OTF that the grant agreement is still operative. PI Mot. at 1. Indeed, USAGM purported to "rescind" its termination of OTF's grant, putting it "back in effect" as of March 26, 2025. *See* Notice of Withdrawal of Grant Termination, ECF No. 13. It is therefore inexplicable, based on that representation, that USAGM has not made any payments to OTF under the grant agreement since March. Despite USAGM's representations to the contrary both to OTF and to this Court, OTF's grant is terminated. The fact that the defendants mysteriously continue to represent to OTF that OTF's grant agreement is still in effect is, to put it mildly, insincere—the reality is that OTF has not received its last three months of congressionally appropriated funds, and the defendants have given no indication that they intend to resume payment. The Court need not give credence to the defendants' characterization when their actions dictate the opposite conclusion.

On the merits, the defendants have not offered any justification for their withholding of congressionally appropriated funds to OTF. It is worth emphasizing, as both this Court and the *en banc* Circuit have, that the government "has not contended that it will ultimately prevail in establishing an entitlement to [grantee networks'] funds" even if the lawsuit were brought in their desired forum of the Court of Federal Claims—because the defendants have not proffered any merits defense at all. *See* En Banc Order at *1; *see also Widakuswara* Panel Stay at *6 (Pillard, J. dissenting) ("Defendants are not likely to succeed on the merits. They do not claim that any court would likely hold that they are carrying out the will of Congress. They argue instead that other entities should have heard plaintiffs' claims."). Instead, the defendants continue to lean entirely on

8

the jurisdictional bar that the original D.C. Circuit panel relied on, but which the *en banc* Circuit has since vacated. For the exhaustive reasons explained by this Court and the *en banc* Circuit, those arguments are unavailing. And once this jurisdictional argument is dispensed of, the defendants' total failure to raise a merits defense proves fatal under the first *Winter* prong.

In short, the reasoning that this Court has already provided regarding the other USAGM network grantees, whose grants were terminated, applies with equal force here. OTF is likely to succeed on the merits of its challenge.

        ii.       *PI Factor 2: Irreparable Harm*

The Court concludes that OTF has made a sufficient showing of irreparable harm to justify the instant preliminary injunction. OTF receives ninety-eight percent of its funding from USAGM. Cunningham Decl. ¶ 8. Every month that it goes without USAGM's distribution of funds, OTF must reprogram a portion of its funds to stay afloat operationally—meaning that, practically speaking, funds are directed away from providing OTF's core services that it is congressionally mandated to provide. In concrete terms, that means that of the roughly 45 million people that OTF serves, OTF shuts down its services for 7 million of those users every month it goes without funding. Tr. of May 20 Hr'g, 6:20–23; Tr. 9:17–20 ("[I]f [OTF doesn't] have this funding by early June, we're looking at another 7 million [fewer users]. If we don't have the funding by early July, that's another 7 million, and so on as we continue through September."). In theory, OTF could continue this reprogramming pattern for a couple more months, while USAGM's withholding steadily chips away at OTF's business, until OTF runs out of money completely and has completely decimated its services. Tr. 9:8–12 ("[OTF] will be able to [reprogram] for several months before OTF has to cease to exist"). But as this Court has stated before with regard to another USAGM network grantee, "[a]n organization can only survive so many rounds of missed

payments, broken contracts, and lost employees before it is gone for good." *RFE/RL*, 2025 WL 1232863, at *7. The same concern applied regarding the shutdown of Voice of America, another USAGM-funded entity: "Each day that passes without VOA publishing any content only compounds the irreparable harm: The stifling of its distinctive journalistic voice, the erosion of its audience, and the breach of the trust of every reporter and listener who has relied on its broadcasts." *Widakuswara* Panel Stay at *14 (Pillard, J. dissenting). And the same concern applies here as OTF whittles down to nothing. The Court will not risk allowing such a grim fate for OTF to become a reality—particularly when faced without *any* explanation from the government to justify abruptly pulling the plug on a congressionally funded entity. The Court therefore concludes that OTF has made a sufficient showing of irreparable harm to merit immediate relief.

### iii.    PI Factors 3 and 4: Balance of the Equities and Public Interest

The final two PI factors weigh in OTF's favor, as they did with the other network grantees that were being denied their congressionally appropriated funds. *See Widakuswara* PI at *17; *see also Widakuswara* Panel Stay at *16 (Pillard, J. dissenting) (finding that the public interest leans in the network grantees' favor because "[d]uly enacted legislation, fashioned by Congress and signed by the President, is a strong indicator of where the public interest lies").

### C. The Court Will Impose a Nominal Bond of $100.

When this Court has granted relief for the other USAGM network grantees, it has declined to impose bond under Federal Rule of Civil Procedure 65(c), finding that it would "would merely impose a financial barrier to litigation for plaintiffs seeking to vindicate their statutory and constitutional rights." *Widakuswara* PI at *17; *RFE/RL*, 2025 WL 1232863, at *8. However, at the PI hearing, OTF requested that this Court impose a nominal bond of $100, because of pending

10

legislation "that would purport to strip the jurisdiction of Article III courts to enforce their own judgments and orders if a bond was not imposed." Tr. of May 20 Hr'g 17:7–8.

Without taking a position on the pending litigation, and with no opposition from the defendants regarding the imposition of a nominal bond, the Court will grant OTF's request. "Courts in this Circuit have found [that] Rule [65(c)] vests broad discretion in the district court to determine the appropriate amount of an injunction bond, including the discretion to require no bond at all." *Escobar Francisco ex rel. P.J.E.S. v. Wolf*, 502 F. Supp. 3d 492, 520 (D.D.C. 2020); *see also J.G.G. v. Trump*, No. 25-cv-766 (JEB), 2025 WL 1577811, at *31 (D.D.C. June 4, 2025) (imposing nominal bond of $1.00, in part because of "the uncertain nature of courts' ability to forgo a bond altogether"). In that vein, the Court will impose a nominal bond of $100.

## IV.    CONCLUSION

Based on the foregoing, it is hereby

**ORDERED** that the defendants must immediately obligate and disburse to OTF the amount of OTF's congressionally appropriated funds in the amount of $780,508 for the period covering April 1–30, 2025; $655,508 for the period covering May 1–31, 2025; and $655,508 for the period covering June 1–30, 2025; and it is hereby

**ORDERED** that the defendants must obligate and disburse to OTF congressionally appropriated funds at the beginning of each month through the rest of the fiscal year, amounting to $780,508 for the period covering July 2025; $655,508 for the period covering August 2025; and $655,511 for the period of September 2025; and it is hereby

**ORDERED** that the defendants must provide monthly status reports on the first day of each month apprising the Court of the status of the defendants' compliance with this Order,

including documentation sufficient to show the disbursement to OTF of the funds Congress appropriated.

**IT IS SO ORDERED.**

Date: 6/20/25

*Royce C. Lamberth*
Royce C. Lamberth
United States District Judge