# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

OPEN TECHNOLOGY FUND,

                Plaintiff,

  v.

KARI LAKE et al.,

                Defendants.

Civil Action No. 1:25-cv-840-RCL

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR FURTHER PRELIMINARY INJUNCTIVE RELIEF**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................................... iii

INTRODUCTION ..................................................................................................................... 1

BACKGROUND ........................................................................................................................ 2

JURISDICTION ........................................................................................................................ 6

LEGAL STANDARD ................................................................................................................ 8

ARGUMENT ............................................................................................................................. 8

    I.     OTF Is Likely to Succeed on the Merits of Its Claims. .............................................. 8

          A.     USAGM's Failure to Disburse OTF's FY2025 Funds Violates the APA ................................................................................................... 8

          B.     OTF Is Also Likely to Succeed under Alternative Forms of Relief. .................................................................................................. 17

          C.     USAGM's Failure to Disburse OTF's FY2025 Funds Violates the U.S. Constitution ....................................................................... 20

    II.    OTF Will Suffer Irreparable Harm If a Preliminary Injunction Is Not Granted ....................................................................................................................... 21

          A.     OTF Cannot Continue Normal Operations Without Access to Appropriated Funds. ................................................................... 22

          B.     A Freeze in Funding Puts OTF Programs and Partners at Risk ............... 23

          C.     Damages Are Unavailable and Would Not Cure the Harms Caused by the Withholding Decision. .................................................. 25

    III.   The Balance of Equities and the Public Interest Support Issuing a Preliminary Injunction. .......................................................................................... 26

    IV.   The Court Should Waive Any Bond Requirement. ............................................... 27

CONCLUSION ....................................................................................................................... 28

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abdullah v. Obama*,
753 F.3d 193 (D.C. Cir. 2014) ................................................................8

*Armour & Co. v. Freeman*,
304 F.2d 404 (D.C. Cir. 1962) ..............................................................25

*Armstrong v. Exceptional Child Ctr., Inc.*,
575 U.S. 320 (2015).............................................................................20

*Atlas Air, Inc. v. Int'l Bhd. of Teamsters*,
280 F. Supp. 3d 59 (D.D.C. 2017).........................................................25

*Bailey v. Fed. Bureau of Prisons*,
No. 24-cv-1219, 2024 WL 3219207 (D.D.C. June 28, 2024)..................27

*Bennett v. Spear*,
520 U.S. 154 (1997)..............................................................................13

*\*Bowen v. Massachusetts*,
487 U.S. 879 (1988)............................................................................7, 8

*Brendsel v. Off. of Fed. Hous. Enter. Oversight*,
339 F. Supp. 2d 52 (D.D.C. 2004).........................................................25

*Bridgeport Hosp. v. Becerra*,
108 F.4th 882 (D.C. Cir. 2024)........................................................10, 18

*City & Cnty. of San Francisco v. Trump*,
897 F.3d 1225 (9th Cir. 2018) ..........................................................20, 21

*Climate United Fund v. Citibank, N.A.*,
775 F. Supp. 3d 335 (D.D.C. 2025).......................................................27

*Clinton v. City of New York*,
524 U.S. 417 (1998)..............................................................................20

*Consumer Fin. Prot. Bureau v. Cmty. Fin. Servs. Ass'n*,
601 U.S. 416 (2024)..............................................................................11

*Costa v. Bazron*,
456 F. Supp. 3d 126 (D.D.C. 2020) .........................................................8

*Cresote Council v. Johnson*,
  555 F. Supp. 2d 36 (D.D.C. 2008)................................................................27

*Crowley Gov't Srvs., Inc. v. Gen. Srvs. Admin.*,
  38 F.4th 1099 (D.C. Cir. 2022)..................................................................6

*Encino Motorcars, LLC v. Navarro*,
  579 U.S. 211 (2016)..................................................................................15

*Fed. Express Corp. v. U.S. Dep't of Com.*,
  39 F.4th 756 (D.C. Cir. 2022)..............................................................17, 18

*Feinerman v. Bernardi*,
  558 F. Supp. 2d 36 (D.D.C. 2008)............................................................25

*Forest Guardians v. Babbitt*,
  174 F.3d 1178 (10th Cir. 1999) ................................................................10

*Friedman v. Fed. Aviation Admin.*,
  841 F.3d 537 (D.C. Cir. 2016)..................................................................12

*Karem v. Trump*,
  960 F.3d 656 (D.C. Cir. 2020)....................................................................8

*League of Women Voters of the U.S. v. Newby*,
  838 F.3d 1 (D.C. Cir. 2016)........................................................21, 23, 27

*Md. Dep't of Hum. Res. v. Dep't of Health & Hum. Srvs.*,
  763 F.2d 1441 (D.C. Cir. 1985)..................................................................7

*\*Megapulse, Inc. v. Lewis*,
  672 F.2d 959 (D.C. Cir. 1982)....................................................................6

*Nat'l Ass'n of Postal Supervisors v. U.S. Postal Serv.*,
  26 F.4th 960 (D.C. Cir. 2022)..............................................................17, 18

*Nat'l Ctr. for Mfg. Scis. v. United States*,
  114 F.3d 196 (Fed. Cir. 1997)....................................................................7

*Nat'l Mining Ass'n v. Jackson*,
  768 F. Supp. 2d 34 (D.D.C. 2011)............................................................25

*NextWave Pers. Commc'ns, Inc. v. Fed. Commc'ns Comm'n*,
  254 F.3d 130 (D.C. Cir. 2001)..................................................................14

*Northern Mariana Islands v. United States*,
  686 F. Supp. 2d 7 (D.D.C. 2009)........................................................21, 27

*Norton v. S. Utah Wilderness All.*,
    542 U.S. 55 (2004) ................................................................................................9, 12

*Oceana, Inc. v. Locke*,
    670 F.3d 1238 (D.C. Cir. 2011) ........................................................................13

*Open Cmty. All. v. Carson*,
    286 F. Supp. 3d 148 (D.D.C. 2017) ...................................................................25

*PFLAG, Inc. v. Trump*,
    No. CV 25-337, 2025 WL 510050 (D. Md. Feb. 14, 2025) ...............................20

*Potomac Elec. Power Co. v. Interstate Com. Comm'n*,
    702 F.2d 1026, *suppl. by*, 705 F.2d 1343 (D.C. Cir. 1983) .................................19

*R.I.L-R v. Johnson*,
    80 F. Supp. 3d 164 (D.D.C. 2015) .....................................................................27

*Ramirez v. U.S. Immigr. & Customs Enf't*,
    471 F. Supp. 3d 88 (D.D.C. 2020) .......................................................................9

*Reliable Automatic Sprinkler Co., Inc. v. Consumer Prod. Safety Comm'n*,
    324 F.3d 726 (D.C. Cir. 2003) ..........................................................................13

*Richardson v. Trump*,
    496 F. Supp. 3d 165 (D.D.C. 2020) ...................................................................26

*Simms v. District of Columbia*,
    872 F. Supp. 2d 90 (D.D.C. 2012) .....................................................................27

*Tex. Children's Hosp. v. Burwell*,
    76 F. Supp. 3d 224 (D.D.C. 2014) .....................................................................25

*TikTok Inc. v. Trump*,
    507 F. Supp. 3d 92 (D.D.C. 2020) .....................................................................27

*Train v. City of New York*,
    420 U.S. 35 (1975)..............................................................................................11

*Transohio Sav. Bank v. Dir., Off. of Thrift Supervision*,
    967 F.2d 598 (D.C. Cir. 1992), *abrogated in part on other grounds by Perry
    Cap. LLC v. Mnuchin*, 864 F.3d 591 (D.C. Cir. 2017) ...........................................7

*Turner v. USAGM*,
    502 F. Supp. 3d 333 (D.D.C. 2020) ...................................................................26

*U.S. Dep't of the Navy v. Fed. Lab. Rels. Auth.*,
    665 F.3d 1339 (D.C. Cir. 2012) ........................................................................20

*United States v. Monsanto*,
　　491 U.S. 600 (1989) ...................................................................................10

*Vietnam Veterans of Am. v. Shinseki*,
　　599 F.3d 654 (D.C. Cir. 2010) ....................................................................19

*\*Widakuswara v. Lake*,
　　779 F. Supp. 3d 10 (D.D.C. 2025) .......................................................7, 9, 12

*Winter v. Nat. Res. Def. Council, Inc.*,
　　555 U.S. 7 (2008) ..........................................................................................8

*Wis. Gas Co. v. Fed. Energy Regul. Comm'n*,
　　758 F.2d 669 (D.C. Cir. 1985) ....................................................................22

*Youngstown Sheet & Tube Co. v. Sawyer*,
　　343 U.S. 579 (1952) ....................................................................................21

**Statutes**

2 U.S.C. § 682 et seq. ............................................................................................13

2 U.S.C. § 683 .......................................................................................................14

2 U.S.C. § 683(b) ..................................................................................................14

5 U.S.C. § 704 .........................................................................................................6

5 U.S.C. § 706(1) ....................................................................................8, 9, 12, 19

5 U.S.C. § 706(2) ...........................................................................................8, 12

22 U.S.C. § 6203 ...................................................................................................11

22 U.S.C. § 6204 ...................................................................................................11

22 U.S.C. § 6204(a) ..............................................................................................18

22 U.S.C. § 6204(a)(6) ............................................................................................3

22 U.S.C. § 6205 ...................................................................................................11

22 U.S.C. § 6205(f)(1) .....................................................................................11, 19

22 U.S.C. § 6205(f)(3) .....................................................................................11, 12

22 U.S.C. § 6208a ...................................................................................................9

22 U.S.C. § 6208a(a)(1) ..............................................................................9, 11, 18

22 U.S.C. § 6208a(a)(2) ...................................................................................................9

22 U.S.C. § 6208a(b) .......................................................................................................9

22 U.S.C. § 6208a(b)(3) ..........................................................................................1, 6, 22

22 U.S.C. § 6208a(c) .......................................................................................................9

22 U.S.C. § 6208a(e)(2) ...................................................................................................9

22 U.S.C. § 6208a(f) ......................................................................................................10

28 U.S.C. § 1331 .............................................................................................................6

31 U.S.C. § 1301(a) ......................................................................................................14

American Relief Act, 2025, Pub. L. No. 118-158, 138 Stat. 1722 (2024) ....................10

Anti-Deficiency Act, Pub. L. No. 97-258, 96 Stat. 929 (1982) ....................................13

Congressional Budget and Impoundment Control Act of 1974, Pub. L. No. 93-
    344, 88 Stat. 297 (1974) ........................................................................................13

Continuing Appropriations Act, 2025, Pub. L. No. 118-83, 138 Stat. 1524 (2024).....10

Full Year Continuing Appropriations and Extensions Act, 2025, Pub. L. No. 119-
    4, 139 Stat. 9 (2025).............................................................................................10

Further Consolidated Appropriations Act of 2024, Pub. L. No. 118-47, 138 Stat.
    460............................................................................................................10, 18

National Defense Authorization Act for Fiscal Year 2024, Pub. L. No. 118-31,
    137 Stat. 136 (2023)..............................................................................................21

William M. (Mac) Thornberry National Defense Authorization Act for Fiscal
    Year 2021, Pub. L. No. 116-283, 134 Stat. 3388 (2020) .......................................9

**Other Authorities**

2 C.F.R. § 200.305(b)(1).................................................................................4, 15, 16, 17

170 Cong. Rec. H2087 (daily ed. Mar. 22, 2024).....................................................3, 10

Fed. R. Civ. P. 65(c) ......................................................................................................27

U.S. Const. art. II, § 3 ...................................................................................................21

# INTRODUCTION

Open Technology Fund ("OTF") filed this case on March 20, 2025, after the U.S. Agency for Global Media ("USAGM") terminated OTF's grant agreements on March 15, 2025, despite appropriations that expressly directed funding to OTF. After OTF moved for a temporary restraining order, USAGM withdrew the unlawful grant termination and disbursed OTF's March 2025 operating funds. OTF then withdrew its motion for temporary restraining order. *See* ECF 16-19.

When USAGM continued to unlawfully withhold the funds appropriated to OTF, OTF sought and obtained preliminary injunctive relief requiring Defendants to disburse congressionally appropriated Fiscal Year ("FY") 2024 funds equal to OTF's operating expenses for the months of April, May, June, July, August, and September 2025. Preliminary Injunction Order at 11, ECF 35. Since the Order granting that relief, the parties have fully briefed cross motions for summary judgment. *See* ECF 33, 36, 40, & 41.

As the month of October begins, OTF seeks additional preliminary injunctive relief to require Defendants to continue to disburse the FY2025 funds appropriated by Congress to OTF necessary to continue OTF's vital programs that carry out its congressionally mandated mission to develop, implement, and maintain technologies to circumvent authoritarian government censorship and secure communication tools that enable users to safely access information censored by authoritarian regimes and to "maintain the technological advantage of the United States Government over authoritarian governments." 22 U.S.C. § 6208a(b)(3). Without this funding, OTF's congressionally mandated mission will go unfulfilled.

OTF is entitled to further preliminary injunctive relief because it is likely to succeed on the merits of its claims that USAGM failed to comply with the requirements of the Administrative Procedure Act ("APA") when withholding and refusing to disburse FY2025 funds appropriated

specifically for OTF. OTF also brings alternative claims that USAGM's actions violate constitutional provisions and are *ultra vires*, and that OTF is entitled to mandamus relief. OTF is suffering and will continue to suffer irreparable harm in the absence of the requested relief; and the balance of equities and public interest are in OTF's favor.

Specifically, OTF requests that the Court enter an order requiring USAGM to disburse to OTF congressionally appropriated funds on the schedule set forth in OTF's revised FY2025 financial plan for October 2025, to wit:

- $19,063,013 in programmatic funds to support OTF's Internet Freedom Fund, Surge and Sustain Fund, Rapid Response Fund, FOSS Sustainability Fund, Research Fellowships, Labs contracts, and other authorized programs; and

- $788,875 in October 2025 operating funds.

## BACKGROUND

The Court is already familiar with OTF, its history, and its mission. *See* Preliminary Injunction Order at 1-2. This brief background section will not repeat that information but will share information on OTF's interactions with USAGM over the last few months.

After USAGM rescinded the termination of OTF's grants, OTF requested disbursement of FY2025 funds on April 1, 2025 in order to fulfill its congressional mandate. Fifth Cunningham Decl., ¶ 13. Although USAGM has complied with the Preliminary Injunction Order requiring the disbursement of FY2024 funds to cover OTF's operating costs, USAGM continued to withhold the entire remaining balance of $25,128,645 in FY2025 funds from OTF for the last six months preventing OTF from funding any new contracts during that time. *Id.* ¶¶ 16-17.

On April 15, 2025, despite having a fully executed grant for the FY2025 funds, USAGM sent to OTF a revised grant agreement with over one hundred modifications from the fully executed version, many of which were contrary to law or would otherwise impede or wholly

prevent OTF from fulfilling its congressional mandate. After lengthy discussions and multiple attempts by OTF to work with USAGM to bring the proposed revised grant agreement into proper scope (both legally and practically), USAGM became non-responsive to any further negotiations.

After months of failing to act on OTF's request for disbursement, on August 27, 2025, USAGM requested from OTF an updated FY2025 financial plan with a 5% reduction in OTF's total funding so that USAGM could reprogram it for "other Agency requirements."[1] *Id.* ¶ 24. OTF complied with USAGM's request the next day. *Id.* ¶ 25.  USAGM requested further clarifications on September 8, 2025, and OTF made those changes the next day, and expected that USAGM would honor the drawdown request. *Id.* ¶¶ 26-27 (citing Exhibit F).

After another two weeks of inaction by USAGM, however, on September 23, 2025, USAGM abruptly changed course. Departing from 13 years of consistent application of the relevant federal regulation and contravening the express language of Grant Agreement FAIN OT01-25-GO-00001 (the "FY2025 Grant Agreement"), USAGM, now with a new premise, refused to disburse funding to OTF at the time of OTF's contractual obligation of the funds, stating that USAGM "cannot disburse the full amount of this approved funding." *Id.* ¶ 29. In each of the prior 13 years, USAGM disbursed funds to OTF at the time that OTF obligated the funds competitively to selected contractors engaged in innovative research and technology development

---

[1] While USAGM has discretion to reprogram to meet other urgent Agency or grantee needs, it lacks authority to reprogram and refuse to spend congressionally appropriated funds. 22 U.S.C. § 6204(a)(6) (granting USAGM's CEO authority to "allocate funds appropriated for international broadcasting among the various elements of the Agency and grantees, subject to reprogramming notification requirements in law[.]"). The appropriation itself requires detailed congressional notification requirements. 170 Cong. Rec. H2087 (daily ed. Mar. 22, 2024) (reprogramming notices must contain "detailed information about the sources of the funds and why such funds are no longer needed[.]") This motion, however, does not ask the Court to determine the legality of USAGM's reprograming, only to compel the payment of the funding OTF needs to continue its status quo operations.

projects that effectuate OTF's statutory mandate to advance global internet freedom. *Id.* ¶¶ 29-32. Instead, for the first time, on the waning days of FY2025 and on the eve of an expected government shutdown, USAGM stated that its unbroken practice of disbursing OTF's congressionally appropriated funds in this manner was inconsistent with applicable regulations. USAGM informed OTF that USAGM would only disburse appropriated funds as contractual payments became due, not when the funds were obligated. *Id.*

In addition to being impractical, USAGM's about-face also placed OTF in an impossible bind that ultimately prevents OTF from effectuating its mission in any form. OTF could choose only from the following equally untenable options:

- Agree to the new condition, which violates the requirement in the FY2025 Grant Agreement that OTF "not enter into an obligation without receiving the funding first from USAGM", *id.* ¶ 33, and therefore have its grant agreement subject to cancellation for breach thereof;

- Agree to the new condition, enter into tens of millions of dollars contracts, and then risk breaching those contracts 30 days later if USAGM delays or again withholds payment; or

- Refuse the new condition, in which case USAGM would refuse to disburse any further funds. *Id.* ¶ 38.

OTF attempted to continue discussions with USAGM on this issue, pointing out that USAGM had reversed its interpretation of 2 C.F.R. § 200.305(b)(1) without explanation and that USAGM and OTF had previously agreed that 2 C.F.R. § 200.305(b)(1) requires disbursement of funds to OTF at the time of contractual obligation. *Id.* ¶¶ 34-37. USAGM, however, continues to withhold the funds and insists on forcing OTF to choose among violating its grant agreement,

potentially defaulting on its contractual obligations due to the erratic and/or non-existent disbursement of congressionally mandated funds by USAGM, or having its funds withheld. *Id.* ¶ 38. On October 1, 2025, USAGM withdrew from discussions on disbursing the FY2025 funds, citing a lapse in FY2026 appropriations to USAGM. *Id.* ¶ 40.

Unlike some other government programs, the end of FY2025 does not prevent OTF from obtaining relief here. OTF is unique among USAGM grantees in that Congress appropriates funds to OTF as "no-year" funds—i.e., funds that "remain available until expended," regardless of the fiscal year. The FY2025 Grant Agreement contains the following provision: "No-Year International Broadcasting Operations Funds: USAGM acknowledges that unlike other USAGM grantees, the funds provided to OTF are generally 'no-year' funds. (Specifically, they are from a specific sub-account of International Broadcasting Operations Funds which do not have an express statutory limit on the period of availability.)" First Cunningham Decl., ¶ 6, Ex. A, ECF 4-2 & 4-3.

Without access to its congressionally appropriated FY2025 funds since February, OTF has been prevented from continuing many of its core activities, resulting in a number of compounding operational challenges, which absent intervention, will become acute by the end of October. This includes support for Virtual Private Networks ("VPNs") to overcome authoritarian censorship in China, Iran, Cuba, and other countries; development of new censorship circumvention tools and techniques to counter rapidly evolving censorship practices; combatting AI-enhanced censorship efforts; supporting the development and implementation of decentralized messaging platforms; and developing and scaling network shutdown mitigation solutions to enable users to communicate and access information during government-imposed internet blackouts. *Id.* ¶ 21. OTF is also unable to support its Rapid Response Fund program without its FY2025 appropriated funds, leaving more than 90 such requests for emergency assistance unanswered due to USAGM's

unlawful withholding of the appropriated funds. *Id.* ¶ 22. OTF also has 300 research grant applications pending which it would normally fund to meet its congressional remit to protect internet freedom by supporting private and public sector research assessing emerging technological threats to maintain the technological advantage of the U.S. government over authoritarian governments. *Id.* ¶ 23 (citing 22 U.S.C. § 6208a(b)(2)–(3)).

OTF is also requesting USAGM be compelled to issue requested drawdowns to OTF of its operating funds for October 2025 in accordance with the revised financial plan so that it can pay its operating costs as they become due, consistent with its FY2025 financial plan.

## JURISDICTION

This Court has jurisdiction over OTF's claims. *See* Preliminary Injunction Order at 7. Specifically, OTF's claims, based on violation of the APA, federal statutes, and the U.S. Constitution, fall under this Court's jurisdiction. 5 U.S.C. § 704; 28 U.S.C. § 1331.

OTF's claims do not fall under the jurisdiction of the U.S. Court of Federal Claims ("CFC") despite USAGM arguments to the contrary. *See, e.g.*, ECF 7 at 7-12. The "mere fact that a court may have to rule on a contract issue does not, by triggering some mystical metamorphosis, automatically transform an action . . . into one on the contract and deprive the court of jurisdiction it might otherwise have." *Megapulse, Inc. v. Lewis*, 672 F.2d 959, 968 (D.C. Cir. 1982). Rather, the "longstanding test" to determine whether a claim falls under the CFC's exclusive jurisdiction asks whether an action "is *at its essence* a contract claim." *Crowley Gov't Srvs., Inc. v. Gen. Srvs. Admin.*, 38 F.4th 1099, 1106 (D.C. Cir. 2022) (quoting *Megapulse*, 672 F.2d at 967) (emphasis in original). In turn, that determination "depends on both the source of the rights upon which the plaintiff bases its claims, and upon the type of relief sought (or appropriate)." *Id.* (quoting *Megapulse*, 672 F.2d at 968).

First, the "source of the rights" depends "on whether, despite the presence of a contract, plaintiffs' claims are founded only on a contract, or whether they stem from a statute or the Constitution." *Transohio Sav. Bank v. Dir., Off. of Thrift Supervision*, 967 F.2d 598, 609 (D.C. Cir. 1992), *abrogated in part on other grounds by Perry Cap. LLC v. Mnuchin*, 864 F.3d 591, 620 (D.C. Cir. 2017). Here, OTF's claims are grounded in statute, including the International Broadcasting Act and relevant appropriations laws, all of which require USAGM to make the congressionally appropriated funds available to OTF through the grant agreement. *See, e.g.*, *Md. Dep't of Hum. Res. v. Dep't of Health & Hum. Srvs.*, 763 F.2d 1441, 1449 (D.C. Cir. 1985) (claims that "arise under a federal grant program and turn on the interpretation of statutes and regulations rather than on the interpretation of an agreement negotiated by the parties . . . are not contract claims for Tucker Act purposes."). In particular, "a claim of entitlement to congressional appropriations is certainly one over which the Court can exercise jurisdiction." *Widakuswara v. Lake*, 779 F. Supp. 3d 10, 30 (D.D.C. 2025) (citation omitted); *see also Nat'l Ctr. for Mfg. Scis. v. United States*, 114 F.3d 196, 200 (Fed. Cir. 1997) (plaintiff's "demand for the release of the remaining funds . . . in the Appropriations Act" based on statute).

Second, actions to enforce requirements for the government to pay certain amounts a party is entitled to are not claims for "money damages." *See, e.g.*, *Bowen v. Massachusetts*, 487 U.S. 879, 900 (1988) (claims seeking to enforce government payment for Medicaid services "is a suit seeking to enforce the statutory mandate itself, which happens to be one for the payment of money."); *Nat'l Ctr. for Mfg. Scis.*, 114 F.3d at 200 ("demand for the release of the remaining funds" not "money damages" and "does not bar the district court from conducting APA review of the [government]'s refusal to release funds appropriated under the Appropriations Act."). OTF seeks only what it is entitled to under statute: the release of congressionally appropriated funds.

"The fact that a judicial remedy may require [USAGM] to pay money to [OTF] is not a sufficient reason to characterize the relief as 'money damages.'" *Bowen*, 487 U.S. at 893.

## LEGAL STANDARD

To obtain a preliminary injunction, a movant must show: (1) "that he is likely to succeed on the merits"; (2) "that he is likely to suffer irreparable harm in the absence of preliminary relief"; (3) "that the balance of equities tips in his favor"; and (4) "that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008) (citations omitted); *Costa v. Bazron*, 456 F. Supp. 3d 126, 133 (D.D.C. 2020). The third and fourth factors merge when the government is a party. *Karem v. Trump*, 960 F.3d 656, 668 (D.C. Cir. 2020) (quoting *Nken v. Holder*, 556 U.S. 418, 435 (2009)). The movant bears the burden to show that "all four factors, taken together, weigh in favor of the injunction." *Abdullah v. Obama*, 753 F.3d 193, 197 (D.C. Cir. 2014) (citation omitted). Here, all the factors strongly support the issuance of a preliminary injunction to prevent irreparable harm caused by USAGM's ongoing failure to disburse to OTF the FY2025 funds Congress appropriated to OTF.

## ARGUMENT

**I.     OTF Is Likely to Succeed on the Merits of Its Claims.**

The continued withholding of funds from OTF violates the APA, federal statutes, and the U.S. Constitution. OTF is likely to succeed on the merits of these claims.

**A.     USAGM's Failure to Disburse OTF's FY2025 Funds Violates the APA.**

USAGM's withholding of funds is reviewable under the APA as either: "agency action" that is "unlawfully withheld or unreasonably delayed," 5 U.S.C. § 706(1); or "final agency action" subject to the review provisions set forth in 5 U.S.C. § 706(2). Regardless of which mechanism of judicial review this Court employs, the conclusion is the same—USAGM has acted in direct

violation of its statutorily required duties by refusing to disburse congressionally appropriated funds to OTF.

        1.  <u>USAGM Is Statutorily Required to Distribute OTF's Appropriated Funds and Its Refusal to Do So Is Agency Action Unlawfully Withheld.</u>

USAGM's refusal to make OTF's appropriated funds available to OTF constitutes reviewable agency action as the funds are being "unlawfully withheld." *Id.* § 706(1); *see also Ramirez v. U.S. Immigr. & Customs Enf't*, 471 F. Supp. 3d 88, 94, 191 (D.D.C. 2020) (allowing plaintiff to maintain section 706(1) and 706(2) claims that "focus on the same conduct."). Section 706(1) requires a plaintiff to identify a "discrete agency action" that the agency is "required to take," either by statute or regulation. *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64–65 (2004). As set forth above, "disbursing congressional appropriations are statutorily required." *Widakuswara v. Lake*, 779 F. Supp. 3d at 34.

        *a.  USAGM Is Required to Provide Funds to OTF.*

OTF is a private nonprofit corporation with a congressional remit established in the William M. (Mac) Thornberry National Defense Authorization Act for Fiscal Year 2021 ("FY2021 NDAA"), Pub. L. No. 116-283, § 1299P, 134 Stat. 3388, 4016 (2020) (codified at 22 U.S.C. § 6208a(b)), and receives funding specifically directed to it in congressional appropriations. OTF's mission, codified at 22 U.S.C. § 6208a, states that OTF "shall carry out" its congressionally defined mission, *id.* § 6208a(a)(2), (b) & (c). Congress has enacted special provisions governing OTF's funding and appropriates money to USAGM that "shall be available" to OTF. *Id.* § 6208a(a)(1). Congress underscored the importance of OTF's mission by directing that, if OTF were unable to fulfill its congressional remit, USAGM is required to provide OTF with assistance. *See id.* § 6208a(e)(2). Congress has also directed that USAGM "shall ensure that internet freedom research

and development projects of the [OTF] are coordinated with internet freedom programs of the Department of State and other [U.S.] Government departments[.]" *Id.* § 6208a(f).

In each appropriation since authorizing OTF as an independent organization, Congress has specifically directed the funds that shall be provided to OTF. When Congress directs that an agency "shall" take a certain action, the agency has no discretion to ignore that directive. "'Shall' means shall." *Forest Guardians v. Babbitt*, 174 F.3d 1178, 1187 (10th Cir. 1999) (citing cases). "Congress could not have chosen stronger words to express its intent" that distribution of OTF's funds is "mandatory[.]" *United States v. Monsanto*, 491 U.S. 600, 607 (1989); *see also Bridgeport Hosp. v. Becerra*, 108 F.4th 882, 887 (D.C. Cir. 2024) (Congress uses "shall" to "'impose[] a mandatory duty' that is 'impervious to discretion.'" (omission in original) (citation omitted)).

Congress has used this binding language to direct USAGM to fund OTF. The appropriation act for FY2025 continued funding at FY2024 levels "under the authority and conditions provided" in the FY2024 Appropriations Act. *See* Continuing Appropriations Act, 2025, Pub. L. No. 118-83, 138 Stat. 1524 (2024); the American Relief Act, 2025, Pub. L. No. 118-158, 138 Stat. 1722 (2024); Full Year Continuing Appropriations and Extensions Act, 2025, Pub. L. No. 119-4, § 1101(a), 139 Stat. 9, 10-12 (2025). The Further Consolidated Appropriations Act of 2024 ("FY2024 FCAA"), states that "funds appropriated by this Act . . . **shall be made available in the amounts specifically designated** in the respective tables included in the explanatory statement described in section 4," Pub. L. No. 118-47, § 7019(a), 138 Stat. 460, 771 (emphasis added), which set OTF's funding at $43,500,000 million, 170 Cong. Rec. H2097. Congress also spoke to USAGM's discretion in setting the amount of OTF's grants, providing USAGM discretion to deviate by only up to 5% of the appropriated amounts in limited circumstances. FY2024 FCAA § 7019(a), 138 Stat. at 771.

Congress also directs that OTF's appropriated funding remains available for obligation to OTF indefinitely until expended, regardless of the fiscal year (sometimes called "no-year funds").

Other statutes likewise direct USAGM to take nondiscretionary action to fund OTF. The International Broadcasting Act, which governs USAGM and its grantees, provides that

> Grants authorized under section 6204 of this title **shall be available** to make annual grants for the purpose of promoting, consistent with United States law, unrestricted access to uncensored sources of information via the internet to enable journalists . . . to create and disseminate, and for their audiences to receive, news and information consistent with the purposes, standards, and principles specified in sections 6201 and 6202 of this title.

22 U.S.C. § 6208a(a)(1) (emphasis added). The statutory language directing OTF's funding stands in contrast to situations where Congress gives the executive branch discretion to spend less than the full amount appropriated—for example, that an agency is appropriated "sums not exceeding" or "up to" an amount for a particular purpose. *See, e.g.*, *Consumer Fin. Prot. Bureau v. Cmty. Fin. Servs. Ass'n*, 601 U.S. 416, 432–33 (2024); *id.* at 442–43 (Kagan, J., concurring). Absent such language, courts properly understand appropriations statutes as commands to obligate and expend the full amount of money appropriated. *See, e.g.*, *Train v. City of New York*, 420 U.S. 35, 47–48 (1975).

Congress also limited the powers of USAGM's Chief Executive Officer ("CEO"), which runs USAGM with oversight by the International Broadcasting Advisory Board. *See* 22 U.S.C. §§ 6203 & 6205 (establishing the office of CEO and the Advisory Board). The powers of USAGM's CEO are established by Congress and do not include the statutory authority to unilaterally withhold appropriated funds. *See id.* § 6204 (enumerating the powers of USAGM's CEO); *id.* § 6205(f)(1), (3) (instructing that no USAGM grantee can be debarred or suspended absent approval by the Advisory Board by a three-fourths vote).

There can be no question that in failing to disburse funds that are appropriated by Congress to OTF and apportioned to USAGM, Defendants have failed to take "discrete" and "required" steps. *Id.* Apportionment of funds to USAGM and disbursement to OTF are discrete, legally required, and non-discretionary actions that the Court can and should compel.

> b.  *USAGM's Failure to Disperse OTF's FY2025 Funds Is Agency Action Unlawfully Withheld.*

USAGM's failure to disburse OTF's FY2025 funding is a non-discretionary agency action that has been unlawfully withheld or delayed and may be ordered by the Court. 5 U.S.C. § 706(1); *Norton*, 542 U.S. at 63 (explaining that the Court can order under the APA discrete agency action where it has a nondiscretionary duty to act). As this Court has previously found, disbursing congressionally appropriated funds is a discrete agency action that USAGM is required to take. *Widakuswara v. Lake*, 779 F. Supp. 3d at 37 ("Here, it is likely that the defendants have also violated section 706(1) of the APA by unlawfully withholding the international broadcasting programming and grants that USAGM is statutorily required to provide."). USAGM has unlawfully withheld funds that it is required to make and therefore violates the APA. This "administrative inaction . . . has precisely the same impact on the rights of the parties as denial of relief": the denial of OTF's congressionally appropriated funds, which will eventually force OTF into dissolution. *Friedman v. Fed. Aviation Admin.*, 841 F.3d 537, 543 (D.C. Cir. 2016).

> 2.  <u>USAGM's Failure to Disburse OTF's FY2025 Funds Is Subject to Judicial Review.</u>

USAGM's failure to disburse OTF's FY2025 appropriated funds consistent with OTF's FY2025 financial plan is a final agency action also subject to judicial review. 5 U.S.C. § 706(2). Agency actions are final where: (1) the action "mark[s] the consummation of the agency's decisionmaking process" and is not "of a merely tentative or interlocutory nature"; and (2) it is an action "by which rights or obligations have been determined, or from which legal consequences

will flow[.]" *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997) (internal quotations and citations omitted); *see also Reliable Automatic Sprinkler Co., Inc. v. Consumer Prod. Safety Comm'n*, 324 F.3d 726, 731 (D.C. Cir. 2003) ("An agency action is deemed final if it is definitive and has a direct and immediate effect on the day-to-day business of the party challenging the agency action.") (cleaned up and citations omitted). USAGM has refused to disburse to OTF its FY2025 funds so that OTF may contractually obligate those funds to its partners around the world. USAGM's determination that it will only disburse OTF's appropriated funds when the payments under those contracts are due to be paid satisfies both finality requirements.

3. <u>USAGM's Failure to Disburse OTF's FY2025 Funds Is Not in Accordance with Law.</u>

USAGM's refusal to distribute OTF's appropriated funding is contrary to law as it violates the following: (1) statutory provisions defining administration of the OTF Grant and Congress's specific appropriation acts; (2) the Congressional Budget and Impoundment Control Act of 1974 (the "Impoundment Control Act"), Pub. L. No. 93-344, 88 Stat. 297 (1974) (codified as amended at 2 U.S.C. § 682 et seq.), and the Anti-Deficiency Act, Pub. L. No. 97-258, 96 Stat. 929 (1982) (codified as amended at scattered sections of Title 31 of the U.S. Code); and (3) the Constitution's separation of powers principles. *See supra* Section I.C.

a. *USAGM Violated Its Statutory Obligations to Provide the Appropriated Grant Funds to OTF.*

Where, as here, "a statute commands an agency without qualification to carry out a particular program in a particular way, the agency's duty is clear; if it believes the statute untoward in some respect, then it should take its concerns to Congress" and, in the meantime, comply with the statute as written. *Oceana, Inc. v. Locke*, 670 F.3d 1238, 1243 (D.C. Cir. 2011) (internal quotations and citations omitted). Because Defendants' actions "conflict[] with . . . federal law,"

they must be reversed under the APA. *NextWave Pers. Commc'ns, Inc. v. Fed. Commc'ns Comm'n*, 254 F.3d 130, 149 (D.C. Cir. 2001) (citations omitted).

> ### b. Withholding OTF's FY2025 Funds Violates the Impoundment Control Act and the Anti-Deficiency Act.

Even if OTF's funding were not specifically directed and secured by the statutory provisions detailed above, USAGM still could not withhold OTF's congressionally appropriated funds as it has attempted in this instance. Congress has directed how appropriated funds may be treated in the Impoundment Control Act and the Anti-Deficiency Act.

Under the Impoundment Control Act, appropriated funds "shall be made available for obligation" unless specific procedures are followed, which include transmitting a special message to Congress and Congress rescinding the appropriation. 2 U.S.C. § 683. The Impoundment Control Act requires that the funds in question be made available for obligation unless Congress rescinds the appropriation within 45 days. *Id.* § 683(b). USAGM did not follow the procedures required under the Impoundment Control Act to rescind or otherwise withhold the funds.

The Anti-Deficiency Act provides similar direction on appropriated funds. Under that statute, "[a]ppropriations shall be applied only to the objects for which the appropriations were made except as otherwise provided by law." 31 U.S.C. § 1301(a). Government officers thus violate the Anti-Deficiency Act if they withhold appropriated funds from their congressionally assigned program. To the extent USAGM is holding appropriated funds in reserve instead of distributing them to OTF, USAGM has violated the Anti-Deficiency Act.

> ### c. USAGM's Actions Violate the U.S. Constitution.

For the reasons set out below, USAGM's failure to disburse OTF's FY2025 funds violate the U.S. Constitution. *See infra* Section I.C.

4.  <u>USAGM's Actions Are Arbitrary and Capricious.</u>

In June, this Court noted that "[o]n the merits, the defendants have not offered any justification for their withholding of congressionally appropriated funds to OTF." Preliminary Injunction Order at 8. Since then, Defendants offered a single purported justification for the withholding by reversing their longstanding interpretation and application of 2 C.F.R. § 200.305(b)(1) to disbursement of OTF's programmatic funds. USAGM's reasoning is not a valid basis for withholding OTF's FY2025 funds because it is patently arbitrary and capricious.

On September 23, 2025 and without any supportive reasoning, USAGM first insisted that OTF draw its FY2025 funds only as its contractual obligations become due to be paid, rather than at the time they are obligated through OTF's regular contracting procedure. Fifth Cunningham Decl., ¶ 29. This new requirement, announced more than five months after OTF requested its FY2025 funds, is arbitrary and capricious for two reasons. First, it is a departure from past practice without a reasoned explanation. As recently as January and February 2025, USAGM disbursed FY2025 funds to OTF in the manner it had for the previous 13 years. *Id.* ¶¶ 30-31. Second, it is impossible to fulfill because it would violate the terms of OTF's grant agreement—violations of which could be used as pretext for further adverse actions against OTF by USAGM.

Where an agency reverses a prior decision it must "provide a reasoned explanation for the change. . . . But where the agency has failed to provide even that minimal level of analysis, its action is arbitrary and capricious and so cannot carry the force of law." *Encino Motorcars, LLC v. Navarro*, 579 U.S. 211, 221 (2016) (citing 5 U.S.C. § 706(2)(A) and other cases). For 13 years, OTF and USAGM agreed that it was consistent with 2 C.F.R. § 200.305(b)(1)'s requirement that "[t]he timing and amount of advance payments must be as close as is administratively feasible to the actual disbursements . . ." to disburse OTF's funding at the time OTF entered into contracts. This understanding was based on a number of factors. One such factor is the structure of OTF's

VPN contracts, which as a result of their highly cost-efficient design meant to maximize value, vary from month to month based on the actual number of users served in given countries. A second factor is that OTF enters into contracts to fund critically urgent and cutting-edge software development projects, which are paid based on a schedule of specified deliverables, rather than specific dates, in order to ensure the responsible use of taxpayer funds. Therefore, OTF cannot predict the timing of the disbursements when contracts are issued, as this is tied to the technology development cycle. This approach of issuing small, iterative, deliverable-based contracts was specifically designed to meet the requirements of technology development that counters the rapid evolution of authoritarian censorship and surveillance technology. Further, this approach, which has been critical to OTF's successful fulfillment of its statutory mandate, would not be feasible without the disbursement of funds to OTF upon contract obligation. Fifth Cunningham Decl., ¶¶ 36-37. Here, USAGM changed its interpretation and application of 2 C.F.R. § 200.305(b)(1) without a reasoned explanation and without even a minimal level of analysis.

USAGM's new proposed condition gave OTF only the illusion of a choice. If OTF refused the new funding condition, USAGM would withhold its funds indefinitely. If OTF accepted the new funding condition, OTF would almost immediately be in breach of its grant agreement, which states that OTF "should not enter into an obligation without receiving the funding first from USAGM." *Id.* ¶ 33. Violating the grant agreement in this way could then be used as pretext by USAGM to take further adverse action against OTF. Lastly, in addition to violating the grant agreement, USAGM's new funding condition is impractical, as it puts OTF at risk of defaulting on its contractual obligations. Specifically, USAGM's actions over the past six months, withholding funds for no reason at all, illustrate why OTF must have the funds on hand before it contracts with trusted partners. It is not feasible or prudent for OTF to enter into contracts with its

partners and then face the prospect of being in breach of those contracts 30 days later when USAGM delays or withholds disbursement. *Id.* ¶ 44. USAGM's novel interpretation and application of 2 C.F.R. § 200.305(b)(1) cannot serve as a valid basis for USAGM's continued refusal to disburse to OTF the FY2025 funds that Congress appropriated for OTF's programs.

### B.    OTF Is Also Likely to Succeed under Alternative Forms of Relief.

As demonstrated above, OTF is likely to succeed on the merits of its APA claim. In the alternative, OTF is also likely to succeed on its claims that USAGM has acted *ultra vires* and OTF has also made a strong showing of success in its mandamus action to compel USAGM to release OTF's FY2025 appropriated funds.

#### 1.    USAGM's Actions Are *Ultra Vires*.

As set out above, *supra* Section I.A.1.a, Congress's intent to appropriate funds to OTF was clear by mandating that USAGM shall make "annual grants" available to OTF and by declaring the amount appropriated to OTF via line item in the FY2024 FCAA itself. By "disregard[ing] a specific and unambiguous statutory directive" by Congress to direct the appropriated funds to OTF, the withholding of OTF's funds were *ultra vires. Fed. Express Corp. v. U.S. Dep't of Com.*, 39 F.4th 756, 764 (D.C. Cir. 2022) (internal quotations and citation omitted).

Judicial "[r]eview for *ultra vires* acts rests on the longstanding principle that if an agency action is unauthorized by the statute under which [the agency] assumes to act, the agency has violate[d] the law and the courts generally have jurisdiction to grant relief." *Nat'l Ass'n of Postal Supervisors v. U.S. Postal Serv.*, 26 F.4th 960, 970 (D.C. Cir. 2022) (internal quotations and citations omitted, alterations in original). To prevail on an *ultra vires* claim, a plaintiff must show that "(i) there is no express statutory preclusion of all judicial review; (ii) there is no alternative procedure for review of the statutory claim; and (iii) the agency plainly acts in excess of its delegated powers and contrary to a specific prohibition in the statute that is clear and mandatory."

*Fed. Express Corp.*, 39 F.4th at 763 (internal quotations and citations omitted). "Moreover, an agency acts *ultra vires* when its decision is not supported by a contemporaneous justification by the agency itself, but only a *post hoc* explanation [by] counsel." *Nat'l Ass'n of Postal Supervisors*, 26 F.4th at 975 (internal quotations and citation omitted).

Defendants have also acted "in excess of [their] statutory authority." *Id.* at 970 (internal quotations and citation omitted). Congress has thoughtfully delineated procedures that prohibit USAGM from withholding appropriated funds.

*First*, the powers of the USAGM CEO are delineated in 22 U.S.C. § 6204(a). They do not include the authority to withhold its appropriated funding as attempted here.

*Second*, Congress imposed a non-discretionary duty on USAGM to make annual grants available to OTF in furtherance of OTF's statutory mandate. 22 U.S.C. § 6208a(a)(1) ("Grants authorized under section 6204 of this title *shall be available* to make annual grants for the purpose of promoting, consistent with United States law, unrestricted access to uncensored sources of information via the internet to enable journalists . . . to create and disseminate, and for their audiences to receive, news and information consistent with the purposes, standards, and principles specified in sections 6201 and 6202 of this title." (emphasis added)); *Bridgeport Hosp.*, 108 F.4th at 887 (Congress uses "shall" to "'impose[] a mandatory duty' that is 'impervious to discretion.'" (omission in original) (citation omitted)). And Congress has subsequently imposed additional restrictions on reducing funding for OTF's operations. *See* FY2024 FCAA, 138 Stat. at 735 ("funds may be reprogrammed within and between amounts designated in such table, subject to the regular notification procedures of the Committees on Appropriations, except that no such reprogramming may reduce a designated amount by more than 5 percent"). USAGM is thus required by law to

fund OTF, the only exception being a proper suspension or debarment, which USAGM has not pursued.

*Third*, Congress provided a specific statutory procedure for suspension or debarment of OTF by the International Broadcasting Advisory Board, but did not include any procedure for withholding congressionally authorized funds. Congress placed bipartisan guardrails on suspension and debarment by requiring a three-fourths vote of the Advisory Board to take action. 22 U.S.C. § 6205(f)(1). As a matter of statutory construction, it makes little sense that Congress intended that USAGM's CEO possess the power to unilaterally withhold OTF's funding.

Defendants acted *ultra vires* in withholding the OTF funds that Congress specifically required be provided to OTF under the OTF Grant, which went far beyond the authority delegated by Congress. OTF is likely to prevail on this count.

### 2. OTF Is Likely to Succeed on Its Request for Mandamus Relief.

To the extent that review under the APA is unavailable, mandamus relief is appropriate. The "power grounded in 5 U.S.C. § 706(1) to compel agency action can also be effectuated through the use of a writ of mandamus." *Potomac Elec. Power Co. v. Interstate Com. Comm'n*, 702 F.2d 1026, 1034, *suppl. by*, 705 F.2d 1343 (D.C. Cir. 1983); *see also Vietnam Veterans of Am. v. Shinseki*, 599 F.3d 654, 659 n.6 (D.C. Cir. 2010) (the "standard[] for obtaining relief" under 5 U.S.C. § 706(1) and under mandamus "are essentially the same.") (citing *In re Core Commc'n Inc.*, 531 F.3d 849, 855 (D.C. Cir. 2008)).

For the reasons discussed *supra* Section I.A.1, USAGM's failure to disburse funds constitutes action unlawfully withheld and unreasonably delayed under 5 U.S.C. § 706(1).

C.    **USAGM's Failure to Disburse OTF's FY2025 Funds Violates the U.S. Constitution.**

OTF is likely to succeed on its claims that Defendants violated the U.S. Constitution. The Court has jurisdiction to enjoin constitutional violations by federal officials. *See Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 327 (2015). OTF's constitutional claims include violation of the Appropriations Clause, Spending Clause, Presentment Clause, Take Care Clause, and separation of powers principles. OTF is likely to succeed on these claims for the reasons set out below.

Defendants' actions violate the Constitution's Appropriations Clause and Spending Clause. The Constitution vests in Congress "exclusive power over the federal purse." *U.S. Dep't of the Navy v. Fed. Lab. Rels. Auth.*, 665 F.3d 1339, 1346 (D.C. Cir. 2012) (internal quotations and citation omitted). As set out above, Congress has directly spoken as to how OTF shall be funded. Defendants' refusal to distribute the money set aside for OTF amounts to an unconstitutional violation of Congress's exclusive authority. In fact, the most recent Continuing Resolution confirms that Congress intended to maintain the funds appropriated for OTF to fulfill the mission it set out for it.

Defendants' actions also run afoul of the Presentment Clause, which prohibits the executive branch from "unilaterally amending or cancelling federal appropriations[.]" *See PFLAG, Inc. v. Trump*, No. CV 25-337, 2025 WL 510050, at *18 (D. Md. Feb. 14, 2025) (citing *Clinton v. City of New York*, 524 U.S. 417, 448 (1998)). Defendants' actions are, in practice, an attempt by the executive branch to amend the statutes described above, including the FY2021 NDAA and the appropriation acts, *supra* Section I.A.2, which is not allowed. *Clinton*, 524 U.S. at 438 (explaining that the Constitution does not authorize the executive branch to enact, amend, or repeal statutes); *City & Cnty. of San Francisco v. Trump*, 897 F.3d 1225, 1232 (9th Cir. 2018) ("Aside from the

power of veto, the President is without authority to thwart congressional will by cancelling appropriations passed by Congress.").

The Constitution requires the executive branch to take care that the laws of the United States are faithfully executed. U.S. Const. art. II, § 3. This "necessarily extends to appropriations." *City & Cnty. of San Francisco*, 897 F.3d at 1234. The FY2021 NDAA and the subsequent appropriation acts all are laws of the United States. Indeed, the National Defense Authorization Act for Fiscal Year 2024, Pub. L. No. 118-31, § 6306, 137 Stat. 136, 989 (2023), which has been extended through FY2025 by continuing resolution, incorporates a specific line item that mandates $43.5 million be appropriated for OTF to fulfill its statutory mission. Defendants' refusal to honor the statutory appropriations to OTF thus violates the Take Care Clause.

Finally, Defendants' actions have violated the separation of powers principles. Under the Constitution, the executive branch's powers "must stem either from an act of Congress or from the Constitution itself." *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 585 (1952). Defendants lack the authority to withhold OTF's funds or to terminate the USAGM Grant in this manner, as Congress has directed precisely how the grant money should flow to OTF and has delineated USAGM's limited authority to withhold the funds. USAGM's withholding of the OTF funds is incompatible with Congress's instructions.

## II.    OTF Will Suffer Irreparable Harm If a Preliminary Injunction Is Not Granted.

This Court should issue a preliminary injunction because the harm OTF faces is "certain and great, actual and not theoretical, and so imminent that there is a clear and present need for equitable relief to prevent irreparable harm . . . [that is] beyond remediation." *League of Women Voters of the U.S. v. Newby*, 838 F.3d 1, 7–8 (D.C. Cir. 2016) (cleaned up and citation omitted). A party experiences actionable harm when he is "depriv[ed] of a procedural protection to which he is entitled" under the APA. *Northern Mariana Islands v. United States*, 686 F. Supp. 2d 7, 17

(D.D.C. 2009) (citing *Sugar Cane Growers Coop. of Fla. v. Veneman*, 289 F.3d 89, 94-95 (D.C. Cir. 2002)) (alteration in original). OTF will suffer irreparable harm unless the Court intervenes.

### A.      OTF Cannot Continue Normal Operations Without Access to Appropriated Funds.

Without access to its congressionally appropriated FY2025 funds before the end of October, OTF will not be able to carry out of its core activities. This includes support for VPNs to overcome authoritarian censorship in China, Iran, Cuba, and other countries; development of new censorship circumvention tools and techniques to counter rapidly evolving censorship practices; combatting AI-enhanced censorship efforts; supporting the development and implementation of decentralized messaging platforms; and developing and scale network shutdown mitigation solutions to enable users to communication and access information during government-imposed internet blackouts. Fifth Cunningham Decl., ¶ 21. OTF's is also unable to support its Rapid Response Fund program with its FY2025 appropriated funds, leaving more than 90 such requests for assistance unanswered due to USAGM's unlawful withholding of the appropriated funds. *Id.* ¶ 22. OTF also has over 300 research grant applications pending which it would normally use to meet its congressional charge to internet freedom by supporting private and public sector research assessing emerging technological threats to maintain the technological advantage of the U.S. government over authoritarian governments. *Id.* ¶ 23 (citing 22 U.S.C. § 6208a(b)(2)-(3)).

The harm OTF will suffer is particularly acute because the appropriation administered by USAGM is the lifeblood of OTF, constituting virtually all of OTF's operating and programmatic budget. First Cunningham Decl., ¶ 8 (FY2024 and FY2025 appropriations "cover approximately 98% of OTF's operating budget."). Because USAGM is also withholding OTF's operating funds that cover personnel expenses and rent, OTF's loss of funding also "threatens the very existence of [its] business." *Wis. Gas Co. v. Fed. Energy Regul. Comm'n*, 758 F.2d 669, 674 (D.C. Cir. 1985)

(citing *Wash. Metro. Area Transit Comm'n v. Holiday Tours, Inc.*, 559 F.2d 841, 843 n.2 (D.C. Cir. 1977)). In sum, if the appropriated grant money continues to be blocked, OTF, in short order, will not be able to continue as an entity. These are harms for which "there can be no do over and no redress." *Newby*, 838 F.3d at 9 (quoting *League of Women Voters of N.C. v. North Carolina*, 769 F.3d 224, 247 (4th Cir. 2014)).

**B.    A Freeze in Funding Puts OTF Programs and Partners at Risk.**

OTF offers technical solutions to counter digital authoritarianism. First Cunningham Decl., ¶ 5. If OTF can no longer support its own programs, or even if it is viewed as an unreliable partner because of funding risk, the United States' position as the worldwide leader in opposing digital authoritarianism will be substantially weaker. *Id.* ¶ 18. This harm to OTF would directly contravene Congress's ongoing funding of the organization. *Id.* ¶¶ 5, 18. Moreover, as a trusted partner to experts operating in countries under authoritarian rule, to continue to fulfill its congressionally mandated mission, OTF must protect its contractors, who are frequent targets of hostile adversaries. *Id.* ¶ 19. A denial of funding will put sensitive organizational and contractor information at risk. *Id.* This will likely jeopardize the safety, and potentially the lives of, a number of OTF's partners. *Id.*

Immediate reputational harm is and will continue to be felt in the following areas:

- *Threat intelligence*. OTF supports a network of regional helpdesks and complementary technologies to effectuate a threat intelligence sharing network. *Id.* ¶ 30. In this effort, OTF works alongside U.S. government efforts to identify and respond to threats of attack and actual attacks carried out by authoritarian regimes. *Id.*

- *VPN Access*. OTF's contracts with VPN providers will expire at the end of November, and cannot be renewed without timely access to appropriated resources. *Id.* ¶ 17. OTF-supported VPNs currently provide secure and uncensored access to the internet to tens of millions of people living in authoritarian countries. *Id.* OTF is the largest funder of VPNs worldwide and has active multi-million-dollar contracts with partners working on repressive environments. *Id.* ¶ 20. Without access to VPNs, users will be immediately exposed to online censorship and surveillance, putting their communication, work, and safety at significant risk, and leaving them vulnerable to despotic reprisal. *Id.* ¶¶ 17, 23.

- *Rapid Response Fund*. OTF's Rapid Response Fund is the only U.S. government-funded mechanism that provides technical solutions in response to urgent, authoritarian state-sponsored digital attacks. To date, it has supported over 100 interventions for individuals and organizations in over 80 countries. *Id*. ¶ 25. OTF's ongoing inability to offer this support—due to unlawfully withheld programmatic funds—as requests for assistance have increased significantly over the course of this year to more than 90 applications since March 2025, will mean that independent media and civil society actors in authoritarian countries will be at serious risk without any recourse against targeted digital attacks from their governments. *Id*. ¶¶ 21, 25. Examples of recent rapid response projects include: mitigating digital attacks and device compromises for targeted independent journalists reporting on the Junta military actions in Myanmar; urgent forensic assessments and digital compromise remediations of the digital infrastructure used by a prominent civil society leader highly targeted by the Communist Party of China; and detection and compromise remediation for journalists and human rights defenders targeted by the highly advanced commercial spyware Pegasus. *Id*. ¶ 21.

- *Internet Freedom Fund*. OTF's primary funding mechanism for new applications and technologies is its Internet Freedom Fund. *Id*. ¶ 24. This fund is designed to be nimble and operate at the speed of private sector technology development to quickly respond to novel forms of digital authoritarianism. *Id*.

The suspension of funding new projects has already resulted in significant opportunity costs and is giving authoritarian governments in China, Cuba, Iran, and Russia an unchecked technological advantage. The internet is constantly evolving and OTF projects actively seek to ensure that new technologies and protocols are difficult to censor and surveil by design. However, absent new interventions by OTF and its partners, authoritarian actors have free reign to shape new technologies and protocols to advantage their systems of information control. Once such technological standards are widely adopted, they are extremely difficult to undo.

Further, if OTF cannot respond quickly to new developments in authoritarian information control technologies, users will not be able to evade government censorship and surveillance in order to access information or communicate safely. Given the increasingly sophisticated and multi-layered nature of contemporary authoritarian information control techniques, it is far more difficult, and in some cases impossible, to re-establish circumvention support for a lost user than it is to maintain service for a current user. Furthermore, degradations in security guarantees

resulting from the lapse in funding will put users at significant risk of government reprisal. This collectively undermines the trust users place in OTF-supported internet freedom technologies, which is necessary for their widespread adoption and for OTF to effectuate its congressionally mandated mission. Once user trust is lost, it is extremely difficult to regain. *Id.*; *see also Armour & Co. v. Freeman*, 304 F.2d 404, 406 (D.C. Cir. 1962) (holding that irreparable harm was apparent where defendant's conduct "could not fail to damage [plaintiff's] good name"); *Atlas Air, Inc. v. Int'l Bhd. of Teamsters*, 280 F. Supp. 3d 59, 103 (D.D.C. 2017) ("Injury to reputation can, at least at times, rise to the level necessary to support the issuance of an injunction.") (citations omitted).

While "economic loss does not, in and of itself, constitute irreparable harm," if a plaintiff demonstrates that "financial losses are certain, imminent, and unrecoverable, then the imposition of [the restraining order] is appropriate and necessary." *Tex. Children's Hosp. v. Burwell*, 76 F. Supp. 3d 224, 242 (D.D.C. 2014) (internal citation and quotations omitted). Additionally, where the movant "will be unable to sue to recover any monetary damages against a government agency in the future . . . financial loss can constitute irreparable injury." *Nat'l Mining Ass'n v. Jackson*, 768 F. Supp. 2d 34, 52 (D.D.C. 2011) (internal citation and quotations omitted).

C.    **Damages Are Unavailable and Would Not Cure the Harms Caused by the Withholding Decision.**

Here, because OTF's claims are brought under the APA, OTF cannot recover damages from the federal government. *Open Cmty. All. v. Carson*, 286 F. Supp. 3d 148, 178 (D.D.C. 2017). As this Court has recognized, when plaintiffs cannot recover damages due to the defendant's sovereign immunity, "any loss of income suffered by a plaintiff is irreparable *per se*." *Feinerman v. Bernardi*, 558 F. Supp. 2d 36, 51 (D.D.C. 2008) (citing *United States v. New York*, 708 F.2d 92, 93–94 (2d Cir. 1983)) (emphasis in original); *Brendsel v. Off. of Fed. Hous. Enter. Oversight*, 339 F. Supp. 2d 52, 66–67 (D.D.C. 2004) (irreparable harm when loss of compensation is not

recoverable due to federal government's immunity from suit). Given the inability to remediate the demonstrated economic harms, OTF is harmed for purposes of preliminary injunctive relief.

III.    **The Balance of Equities and the Public Interest Support Issuing a Preliminary Injunction.**

The balance of equities and the public interest also support issuing the preliminary injunction. The balance-of-equities factor "directs the Court to balance the competing claims of injury and . . . consider the effect on each party of the granting or withholding of the requested relief." *Richardson v. Trump*, 496 F. Supp. 3d 165, 188 (D.D.C. 2020) (internal quotations and citation omitted). When the government is the non-movant, this factor merges into the public interest factor, and the Court weighs "the benefits to the private party from obtaining an injunction against the harms to the government and the public from being enjoined[.]" *Turner v. USAGM*, 502 F. Supp. 3d 333, 386 (D.D.C. 2020) (internal quotations and citation omitted). These factors favor granting the request for preliminary injunction.

OTF funds and supports the development and ongoing maintenance of some of the world's most vital censorship circumvention and secure communications solutions to protect citizens from repressive authoritarian surveillance. Granting a preliminary injunction would allow OTF's congressionally mandated mission and programs to survive, which would be in the public interest, and has been recognized as critically important repeatedly by Congress and the State Department. The public interest in this case extends to billions of individuals worldwide who continue to rely upon accessible networks, technologies, and communication platforms incubated, maintained, and funded by OTF.

Preliminary injunctive relief, on the other hand, will not harm the Defendants; it will merely require that USAGM disburse to OTF the funds that Congress has already appropriated. The U.S. government "cannot suffer harm from an injunction that merely ends an unlawful practice

or reads a statute as required to avoid constitutional concerns." *R.I.L-R v. Johnson*, 80 F. Supp. 3d

164, 191 (D.D.C. 2015) (quoting *Rodriguez v. Robbins*, 715 F.3d 1127, 1145 (9th Cir. 2013)); *see*

*also TikTok Inc. v. Trump*, 507 F. Supp. 3d 92, 115 (D.D.C. 2020) (same). That is because "[t]here

is generally no public interest in the perpetuation of unlawful agency action." *Newby*, 838 F.3d at

12; *see also Climate United Fund v. Citibank, N.A.*, 775 F. Supp. 3d 335, 352 (D.D.C. 2025)

(same). Rather, "there is a substantial public interest 'in having governmental agencies abide by

the federal laws that govern their . . . operations.'" *Newby*, 838 F.3d at 12 (quoting *Washington v.*

*Reno*, 35 F.3d 1093, 1103 (6th Cir. 1994)). This Court has recognized that "[t]he public interest is

served when administrative agencies comply with their obligations under the APA." *Northern*

*Mariana Islands*, 686 F. Supp. 2d at 21 (citation omitted); *see also Cresote Council v. Johnson*,

555 F. Supp. 2d 36, 40 (D.D.C. 2008) (granting injunction because it "serves the general public

interest in open and accountable agency decision-making[.]").

Here, an injunction compelling Defendants to fulfill their statutory obligations would do

no more than end Defendants' unlawful practices.

## IV.    The Court Should Waive Any Bond Requirement.

If OTF's motion for a preliminary injunction is granted, this Court should waive any bond

requirement or, in the alternative, require OTF to post a minimal bond in the amount of $100. Fed.

R. Civ. P. 65(c) requires an applicant for preliminary relief to post security "in an amount that the

court considers proper." However, the amount of security is a matter of discretion for the trial court

and the court is permitted to require no security at all. *Simms v. District of Columbia*, 872 F. Supp.

2d 90, 107 (D.D.C. 2012). Here, there will be little to no financial harm inflicted on USAGM if

the Court grants a preliminary injunction. *Bailey v. Fed. Bureau of Prisons*, No. 24-cv-1219, 2024

WL 3219207, at *13 n.5 (D.D.C. June 28, 2024).

**CONCLUSION**

For the foregoing reasons, the Court should enter a preliminary injunction requiring Defendants to promptly obligate and disburse to OTF congressionally appropriated funds for the on the schedule set forth in OTF's revised fiscal year 2025 financial plan, to wit:

- $19,063,013 in programmatic funds to support OTF's Internet Freedom Fund, Surge and Sustain Fund, Rapid Response Fund, FOSS Sustainability Fund, Research Fellowships, Labs contracts, and other authorized programs; and

- $788,875 in October 2025 operating funds.

Dated this 10th day of October, 2025.

<div style="margin-left:40%">

VAN NESS FELDMAN, LLP

/s/ *Patrick O. Daugherty*
Patrick O. Daugherty, D.C. Bar No. 981008
Michael Farber, D.C. Bar No. 449215
2000 Pennsylvania Avenue, NW
Suite 6000
Washington, DC 20006
Tel.: 202-298-1800
Email: pod@vnf.com; mfarber@vnf.com

Sophia E. Amberson, WA Bar No. 52528
        *Pro Hac Vice*
Liberty Quihuis, WA Bar No. 57779
        *Pro Hac Vice*
1191 Second Avenue
Suite 1800
Seattle, WA 98101
Tel.: 206-623-9372
Email: samberson@vnf.com; lquihuis@vnf.com

*Attorneys for Plaintiff*

</div>