IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| OPEN TECHNOLOGY FUND,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>KARI LAKE et al.,<br><br>　　　　　Defendants. | Civil Action No. 1:25-cv-840-RCL<br><br>**PLAINTIFF'S REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR FURTHER PRELIMINARY INJUNCTIVE RELIEF** |

After withholding Fiscal Year 2025 funds from OTF for more than six months, Defendants now concede that OTF "is entitled to its remaining Fiscal Year 2025 appropriated funds." ECF 48 at 3.[1] This is a reversal of Defendants' prior position. As recently as July 15, 2025, Defendants urged this Court to reject OTF's Motion for Summary Judgment, arguing that "Plaintiff claims an entitlement to funds via statute. It lacks such an entitlement." ECF 40 at 2.

However, rather than disburse the congressionally appropriated funds to OTF, Defendants have invented a new reason to withhold funds. On September 23, 2025, Defendants, without explanation, reinterpreted an existing regulation to reverse 13 years of consistent practice and require that OTF's grant funds be doled out in dribs and drabs, rather than at the time OTF contracts for the programmatic services essential to fulfilling its congressionally mandated mission.

It is time for the gamesmanship to stop. Now that Defendants have disavowed their own arguments in opposition to OTF's Motion for Summary Judgment, that motion should be granted. Alternatively, the more limited relief sought in the preliminary injunction motion should be ordered to ensure that the vital services that OTF provides worldwide can continue uninterrupted.

---

[1] Citations are to the ECF page number.

Pl.'s Reply in Supp. of Mot. for Further Prelim. Injunctive Relief - 1
*Open Technology Fund v. Lake*, No. 1:25-cv-840-RCL

# ARGUMENT

OTF raises five points in this reply. First, Defendants have now conceded the merits of OTF's pending motion for summary judgment, which should now be granted.

Second, Defendants' new interpretation of federal regulations is an unjustified and unexplained departure from 13 years of consistent funding of OTF at of obligation.

Third, Defendants' proposed piecemeal funding scheme remains unworkable because OTF's ability to deliver on its Congressional mandate depends on nimbly responding to the rapid pace of authoritarian technological innovation.

Fourth, Defendants mischaracterize OTF's resources and reserves when, in fact, OTF's available funds are limited and immediate relief is needed.

Fifth, this Motion for Preliminary Injunction raises claims squarely within the Complaint's prayer for relief.

## I. Defendants Have Conceded OTF's Pending Motion for Summary Judgment.

In its pending Motion for Summary Judgment, OTF requested that the Court order Defendants to honor drawdown requests submitted by OTF for the full amount of the FY2025 congressional appropriation to OTF. ECF 36-1 at 43. In opposition, Defendants argued that OTF lacked a statutory entitlement to its FY2025 funds appropriated by Congress to OTF. ECF 40 at 2. Three months later, Defendants have now abandoned that argument, conceding that OTF "is entitled to its remaining Fiscal Year 2025 appropriated funds." ECF 48 at 3; *see also* ECF 48-1, ¶ 12 ("USAGM does not dispute that OTF is currently entitled to the full amount of funding allocated by the FY25 Full-Year CR, apart from a 5 percent reprogramming consistent with applicable law.").

In light of this abrupt reversal, there is now no obstacle to the Court granting OTF's Motion for Summary Judgment. Defendants have abandoned their prior position and acknowledge that

they are withholding funds to which OTF has a statutory entitlement. While Defendants also raised a jurisdictional argument in opposition to OTF's Motion for Summary Judgment, the Court has already rejected that legal argument. *See* ECF 35 at 7 ("The Court has jurisdiction to hear OTF's claims regarding the defendants' withholding of congressionally appropriated funds.").

**II.     Defendants' New Interpretation of Regulations Is an Unexplained and Unjustified Departure from Thirteen Years of Consistent Funding Practices.**

Where an agency reverses a prior decision, it must "provide a reasoned explanation for the change. . . . But where the agency has failed to provide even that minimal level of analysis, its action is arbitrary and capricious and so cannot carry the force of law." *Encino Motorcars, LLC v. Navarro*, 579 U.S. 211, 221 (2016) (citing 5 U.S.C. § 706(2)(A) and other cases).

Here, acting with no explanation and no analysis, USAGM's latest reason for withholding OTF's congressionally appropriated funds cannot withstand judicial review. With little more than a week to go in FY2025, USAGM notified OTF that it would no longer distribute grant funds to OTF at the time of OTF's contractual obligation of the funds, citing a new interpretation of 2 C.F.R. § 200.305(b)(1). USAGM made no effort to explain this new interpretation or to reconcile it with its prior interpretation of this regulation, which guided OTF's drawdown of programmatic funds for 13 prior fiscal years. Defendants' post-hoc rationalizations of this last-minute change cannot save the agency's arbitrary and capricious actions because judicial review of agency action is limited to "the grounds that the agency invoked when it took the action." *Michigan v. EPA*, 576 U.S. 743, 758 (2015).

Even if they are considered, Defendants' post-hoc rationalizations are unpersuasive. The relevant regulation, 2 C.F.R. § 200.305(b)(1), requires USAGM to "minimize the time elapsing between the transfer of funds and disbursement by the recipient." This is not a prescriptive standard; to the contrary, it is a flexible standard that allows a federal agency and a grantee to work

together to develop a financial plan and drawdown schedule that allows for agency oversight of the spending of congressionally appropriated funds. This is exactly what has happened with USAGM and OTF for the last 13 fiscal years.

Defendants also mischaracterize a 2021 Government Accountability Office ("GAO") report, arguing that this report stated that USAGM and OTF "were wrong" in their interpretation of 2 C.F.R. § 200.305(b)(1). The GAO report at issue addressed a number of USAGM's grant oversight practices, focusing primarily on USAGM grantees other than OTF. Nowhere in this report is USAGM faulted for the award of programmatic funds upon obligation. Indeed, Defendants' own declarant cites the report and says simply that the report identified a "significant deficiency in grants monitoring." ECF 48-1, ¶ 7. Defendants also claim to rely on a May 2024 "internal white paper" but have produced no such document to the Court and provided no such document to OTF when it reinterpreted the regulation on September 23, 2025. *Id.* ¶ 8; ECF 48 at 6. *See also* Sixth Declaration of Laura Cunningham, ¶ 15.

Defendants' repeated emphasis on USAGM's supposed "glide path," to some unknown destination is similarly misleading. What happened is this—in August 2024, OTF requested a drawdown of $13.2 million. USAGM then directed OTF to revise its request and financial plan to align with near-term cash requirements. In good faith, OTF figured out how it could delay the issuance of several contracts to the following months in order to reduce its August 2024 drawdown request. *Id.*, ¶¶ 10-12. At this time, USAGM's then acting CFO mentioned a "glide path" to new cash disbursement provisions. Notwithstanding this statement, in subsequent months, OTF and USAGM worked together on drawdowns consistent with OTF's financial plan that were once again tied to the time of OTF's contractual obligations. *Id.* There were no new cash disbursement

provisions. In other words, it was a glide path to nowhere and no changes occurred to disbursement practices or the interpretation of 2 C.F.R. § 200.305(b)(1) occurred.

### III. Defendants' Piecemeal Funding Scheme Would Violate OTF's Grant Agreement and Is Unworkable.

After withholding OTF's funding for more than six months without explanation, Defendants now ask OTF to execute multi-month, multi-million dollar contracts now and trust that USAGM will reliably and regularly disburse those payments just in time as they become due. This approach is both prohibited by OTF's grant agreement and would be unworkable even if it was not prohibited, as USAGM has understood and agreed for the prior 13 fiscal years.

Defendants do not contest that the FY2025 Grant Agreement states that: "The Recipient should not enter into an obligation without receiving the funding first from USAGM." Defendants assert OTF need not worry about this provision because it is limited to the 30-day grant closeout period and "not the entire period of performance." ECF 48 at 17. However, Defendants offered this novel interpretation of the Grant Agreement for the first time in its brief. *Info Labs Inc. v. U.S. Citizenship & Immigr. Servs.*, 613 F. Supp. 3d 415, 424 (D.D.C. 2020) ("[I]t is well-established that an agency cannot fill the holes of [its] decision by providing post hoc explanations in its briefs." (cleaned up and citations omitted)). The past thirteen years of history between USAGM and OTF has been based on a contrary interpretation of this provision and Defendants have offered no explanation for the sudden departure now. *Spirit Airlines, Inc. v. U.S. Dep't of Transp.*, 997 F.3d 1247, 1255 (D.C. Cir. 2021) ("Although our review is inherently deferential, it is not satisfied by an agency decision that ignores an important aspect of the problem before it or relies upon a threadbare explanation.") (citation omitted).

Even if the Court accepts the argument advanced in writing for the first time in its brief that the limitation applies only during a close out period, USAGM's approach is still impracticable

and fails to account for OTF's reliance interests. As discussed in Section II above, USAGM's new approach is a stark departure from 13 years of agency practice and should also be viewed with a skeptical eye given USAGM's consistent refusal to fund OTF.

An agency must be especially "cognizant that longstanding policies may have 'engendered serious reliance interests that must be taken into account.'" *Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 591 U.S. 1, 30 (2020) (citation omitted). When serious reliance interests are at play, the agency must "determine whether they were significant, and weigh any such interests against competing policy concerns." *Id.* at 33. "It would be arbitrary and capricious to ignore such matters." *Id.* at 30 (internal quotation marks and citation omitted). An agency remains obligated to weigh reliance interests against policy concerns even if the policy or practice in question was never formally implemented. The court must still evaluate whether an agency's new practice is an arbitrary and capricious deviation from prior practice and precedent, even if there had been no previous formal policy. *See, e.g.*, *Am. Wild Horse Pres. Campaign v. Perdue*, 873 F.3d 914, 927 (D.C. Cir. 2017) (an "established pattern of agency conduct and formalized positions" creates a general practice of established conduct that can implicate a policy shift); *ANR Pipeline Co. v. Fed. Energy Regul. Comm'n*, 71 F.3d 897, 901 (D.C. Cir. 1995) ("[W]here an agency departs from established precedent without a reasoned explanation, its decision will be vacated as arbitrary and capricious.") (citations omitted), *on remand sub nom. Mich. Consol. Gas Co.*, 85 FERC ¶ 61,090 (1998).

Here USAGM wholly fails to acknowledge *any* of OTF's reliance interests in its past practice. For the past 13 years, USAGM has dispersed funds at the time of obligation not at the time the payment becomes due. When confronted with this fact, the only statement USAGM makes

Pl.'s Reply in Supp. of Mot. for Further Prelim. Injunctive Relief - 6
*Open Technology Fund v. Lake*, No. 1:25-cv-840-RCL

is "for 13 years the parties were wrong," ECF 48 at 16, and points to a GAO report from 2021, which does not critique USAGM's disbursement of funds to OTF.

OTF cannot operate—at least under USAGM's last minute change—in a world where it receives funding from USAGM at the time cash becomes due each month. OTF's operating model is intentionally designed to nimbly respond to the rapid pace of authoritarian technological innovation, in contrast to traditional government procurement processes, which were deemed insufficiently agile. OTF must have funding to honor its contractual obligations in order to operate as Congress intended: to quickly and flexibly identify and invest in novel internet freedom technologies, staying one step ahead of authoritarian censors. USAGM's prior course of conduct understood OTF's unique mission. As OTF wrote to USAGM:

> Further, OTF has demonstrated, without fail, that it has the proper operational and internal controls to manage its disbursements in this way to be regulatorily compliant, which has been consistently confirmed through clean financial audits. Thus, as both USAGM and OTF have consistently understood, "administratively feasible" in the context of OTF's work translates to receiving funding at the point of obligation and disbursing those funds to Service Providers as work is completed.

ECF 44-2, ¶ 37. In its brief, USAGM wholly ignores the practicalities of what it is asking. Moreover, USAGM's own behavior demonstrates why its proposed approach is unworkable. OTF cannot reasonably or prudently enter into contracts with partners and face breach of those contracts if USAGM does not distribute payment. "The current situation, in which USAGM has not distributed the majority of FY2025 programmatic funds to OTF, is demonstrating in real-time the harms associated with a sudden departure in the agreed-upon method for disbursing programmatic funds." *Id.*, ¶ 44.

IV.     **Defendants Mischaracterize OTF's Resources and Reserves.**

Defendants' assertion that OTF has cash on hand "more than sufficient to allow OTF to continue carrying out its core activities" is false and relies on mischaracterizations of OTF's

Pl.'s Reply in Supp. of Mot. for Further Prelim. Injunctive Relief - 7
*Open Technology Fund v. Lake*, No. 1:25-cv-840-RCL

resources and reserves. ECF 48 at 19. As of September 30, 2025, OTF has a bank balance of $21,286,007. Sixth Cunningham Decl., ¶ 3. OTF has already obligated more than 60 percent of that amount ($13,586,241) toward executed programmatic contracts, a fact that was disclosed to USAGM in written reports on October 7, 2025. *Id.*, ¶ 4. The applicable Financial Accounting Standards Board Account Standards Codification provisions require OTF to recognize liabilities when obligations are legally binding. *Id.*, ¶ 3. Accordingly, once OTF commits funds through a purchase order or signed contract, OTF may not use those funds for other purposes. *Id.* As shown in the chart below, OTF has less than $8 million in unobligated funds remaining.

| Fiscal Year | Appropriated Funds Received | Funds Expended | Funds Obligated | Unobligated Funds |
|---|---|---|---|---|
| 2023 | $40,000,000.00 | $36,844,703.44 | $3,137,964.33 | $17,332.23 |
| 2024 | $43,500,000.00 | $31,100,633.42 | $6,423,670.42 | $5,975,696.16 |
| 2025 | $16,196,355.00 | $10,465,011.25 | $4,024,606.20 | $1,706,737.55 |

*Id.*, ¶¶ 4, 7.

The unobligated funds represent just 8 percent of OTF's FY2024 and 2025 congressional appropriations. *Id.* As explained in OTF's motion and supporting affidavit, OTF incurs programmatic obligations at the time it enters into contracts for novel and rapid technology development. ECF 44-2, ¶ 36. Since March, OTF has received over 1,030 applications to support the research, development, implementation, and maintenance of internet freedom technologies. Of these, OTF is prepared to contract and obligate 61 new contracts, totaling over $15 million to advance the mission mandated by Congress. However, OTF is currently unable to support these mission critical projects while its FY2025 programmatic funds are withheld. *Id.*, ¶ 20; Sixth Cunningham Decl., ¶ 9.

Pl.'s Reply in Supp. of Mot. for Further Prelim. Injunctive Relief - 8
*Open Technology Fund v. Lake*, No. 1:25-cv-840-RCL

Defendants' repeated characterization of the requested programmatic funding disbursement as a "lump sum" is also misleading. ECF 48 at 3, 10, 18, 26. In the FY2025 Financial Plan submitted to USAGM on March 28, 2025, OTF sought funding spread out over the course of the year. Sixth Cunningham Decl., ¶ 13. OTF sought funding for its Internet Freedom Fund, Surge and Sustain, Rapid Response Fund, and USAGM Entity Support programs in April. *Id.* OTF sought funding for its Research Fellowships program in June. *Id.* OTF sought funding for its FOSS Sustainability Fund program in August. *Id.* The modified FY2025 Financial Plan submitted by OTF at USAGM's request in early September "lumps" these programs together only because Defendants have unlawfully withheld OTF's congressionally appropriated funding for more than six months.

## V.   OTF's Motion for Preliminary Injunction Seeks Relief Within the Scope of the Complaint.

The relief requested by the Motion for Preliminary Injunction is squarely within the Complaint's prayer for relief, alleges the same violations of law under the same legal requirements, and is premised on the same conduct alleged in the Complaint.

The relief sought in OTF's Preliminary Injunction Motion is specifically requested in the Complaint. The Preliminary Injunction Motion asks the Court to order "Defendants to promptly obligate and disburse to OTF congressionally appropriated funds for the on the schedule set forth in OTF's revised fiscal year 2025 financial plan . . . ." ECF 44-1 at 35.  This is nearly identical to the Complaint's prayer for relief that asks the Court to

> [i]ssue a permanent injunction barring Defendants from impounding the Open Technology Fund's congressionally appropriated funds and requiring Defendants to honor subsequent drawdown requests submitted by [OTF] made consistent with the USAGM Grant Agreements, USAGM procedure for grantee drawdown requests, [OTF's] financial plan previously approved by USAGM, and the congressional appropriations to [OTF] . . . .

ECF 1 at 22.

Pl.'s Reply in Supp. of Mot. for Further Prelim. Injunctive Relief - 9
*Open Technology Fund v. Lake*, No. 1:25-cv-840-RCL

The cases cited by USAGM confirm that where "the preliminary injunction would grant relief of the same character as that which may be granted finally," the Court has jurisdiction to issue the preliminary injunction. *Bird v. Barr*, No. 19-CV-1581 (KBJ), 2020 WL 4219784, at *2 (D.D.C. July 23, 2020) (quoting *Pac. Radiation Oncology, LLC v. Queen's Med. Ctr.*, 810 F.3d 631, 636 (9th Cir. 2015)) (cited by USAGM, ECF 48 at 11). Not only does the request for relief in the preliminary injunction motion "mirror" the relief sought in the complaint, it is nearly identical. *See Aminjavaheri v. Biden*, 1:21-cv-2246-RCL, 2021 WL 4399690, at *5 (D.D.C. Sep. 27, 2021) (Lamberth, J.) (cited by USAGM, ECF 48 at 11). As such, the relief requested by OTF cannot fairly be characterized as "auxiliary" to the relief sought in the complaint, and the Court has jurisdiction to award it.

USAGM's assertion that OTF's motion for preliminary injunction "raise[s] new claims that have not been previously pled," ECF 48 at 10, also misses the mark. OTF's motion argues that it is likely to succeed on its Administrative Procedure Act claims, including on the basis that USAGM's actions constitute an illegal impoundment of congressional appropriations. *See* ECF 44-1 at 21. The same allegations were made in the Complaint. *See* ECF 1, ¶ 54 ("USAGM lacks statutory authority to impound or withhold the funding explicitly provided for [OTF] by Congress"), ¶¶ 65-67, 77 (describing "Defendants' unlawful impoundment" of [OTF's] funds), ¶ 76 (alleging "[n]o statute, constitutional provision, or other source of law authorizes Defendants to impound [OTF's] congressionally appropriated funds."), Request for Relief ¶ D (requesting the Court permanently enjoin "Defendants from impounding [OTF's] congressionally appropriated funds"). Defendants cannot credibly maintain they were "deprive[d] . . . of . . . fair notice" of OTF's claim that Defendants withholding of OTF's funds is an illegal impoundment. *See also*

*Trusted Integration, Inc. v. United States*, 679 F. Supp. 2d 70, 79 (D.D.C. 2010) (finding that failure to cite a specific statutory section is not fatal to a claim under Rule 8).[2]

USAGM also is wrong to suggest that the Court lacks jurisdiction over OTF's preliminary injunction motion on the basis that the Complaint does not cite 2 C.F.R. § 200.305(b)(1). *See* ECF 48 at 12. The crux of this action, as alleged in the Complaint, is the illegal withholding of OTF's funds. USAGM's efforts to undermine Congress's clear directive to fund OTF's programs as appropriated have taken many forms over the past months, but they all constitute actions that violate its "non-discretionary duty to make appropriated funds available to [OTF]," ECF 1, ¶ 50, while not doing so "in a manner that is arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law," *id.*, ¶ 52; "contrary to the Constitution," *id.*, ¶ 53; "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right," *id.*, ¶ 54; and "without observance of procedure required by law," *id.*, ¶ 55. The Complaint describes the sequence of events leading to USAGM's withholding, and the agency's shifting, post hoc justifications for the withholding cannot deprive the Court of jurisdiction over the matter.

Finally, the key illegal action at issue in this case—withholding of congressionally appropriated funds—is squarely alleged throughout the Complaint. USAGM argues that the

---

[2] USAGM also cannot argue that it lacked fair notice of OTF's allegations that USAGM has violated the Impoundment Control Act and the Anti-Deficiency Act. Both of these statutes were specifically cited and discussed at length in OTF's Motion for Temporary Restraining Order, ECF 4-1 at 25, 28, OTF's Motion for Preliminary Injunction, ECF 22-1 at 32, and OTF's Motion for Summary Judgment, ECF 36-1 at 32-33. Where, as here, a defendant fails "to challenge the complaint under Rule 8, even after the alternative claim was repeatedly argued by [plaintiffs], establishes that the complaint sufficiently placed [defendants] on notice regarding the alternative claim and therefore complied with the Federal Rules." *Empagran S.A. v. F. Hoffman-LaRoche, Ltd.*, 388 F.3d 337, 342–43 (D.C. Cir. 2004).

FY2025 grant funds are "entirely unrelated" to OTF's Complaint[3] and narrowly views the Complaint as "concern[ing] a dispute over the termination of agreements." ECF 48 at 12. In so arguing, USAGM ignores the Complaint's overwhelming discussion of USAGM's illegal withholding of OTF's funds. *See, e.g.*, ECF 1, ¶ 3 (characterizing the dispute as termination of OTF's federal grants <u>and</u> withholding "funds congressionally appropriated for [OTF]."). *See also id.*, ¶¶ 6-9, 23-24 (describing OTF's congressional appropriations), ¶¶ 19-22, 28 (describing the mechanisms by which USAGM has distributed appropriated funds to OTF), ¶¶ 25-27 (describing specific OTF requests for drawdown of funds), ¶¶ 37-46 (describing the work funded by OTF's congressional appropriations). The access to funds is important to each of the claims alleged by OTF. *See, e.g. id.*, ¶¶ 50-57 (describing USAGM's violation of the Administrative Procedure Act by failing to make funds available to OTF), ¶¶ 65-67 (describing USAGM's violations of the Constitution as the "unlawful impoundment" of OTF's funds), ¶¶ 69-71 (describing OTF's right to relief under the Mandamus Act and All-Writs Act based on USAGM's "non-discretionary duty to make annual grants available to [OTF] from congressionally appropriated funds."). USAGM's belated claim that OTF's access to its FY2025 congressionally appropriated funds is unrelated to the Complaint runs contrary to the plain language and spirit of OTF's Complaint.

## CONCLUSION

OTF respectfully requests that its Motion for Further Preliminary Injunctive Relief be granted and that the Court issue a preliminary injunction requiring Defendants to promptly obligate and disburse to OTF congressionally appropriated funds on the schedule set forth in OTF's revised fiscal year 2025 financial plan, to wit:

---

[3] USAGM appears to misapprehend the facts alleged in the Complaint, which specifically reference withholding of FY2025 funds through USAGM's illegal termination of OTF's FY2025 Grant Agreement, FAIN-OT01-25-00001. *See* ECF 1, ¶ 3.

- $19,063,013 in programmatic funds to support OTF's Internet Freedom Fund, Surge and Sustain Fund, Rapid Response Fund, FOSS Sustainability Fund, Research Fellowships, Labs contracts, and other authorized programs; and

- $788,875 in October 2025 operating funds.[4]

Dated this 24th day of October 2025.

Respectfully submitted,

VAN NESS FELDMAN, LLP

/s/ *Patrick O. Daugherty*
Patrick O. Daugherty, D.C. Bar No. 981008
Michael Farber, D.C. Bar No. 449215
2000 Pennsylvania Avenue, NW
Suite 6000
Washington, DC 20006
Tel.: 202-298-1800
Email: pod@vnf.com; mfarber@vnf.com

Sophia E. Amberson, WA Bar No. 52528
*Pro Hac Vice*
Liberty Quihuis, WA Bar No. 57779
*Pro Hac Vice*
1191 Second Avenue
Suite 1800
Seattle, WA 98101
Tel.: 206-623-9372
Email:  samberson@vnf.com; lquihuis@vnf.com

*Attorneys for Plaintiff*

---

[4] At approximately 3 p.m. on the date of this filing, a Senior Budget Analyst for USAGM relayed to OTF that an expedited payment of $788,875 in October operating funds and additional payment of November operating funds was in process. OTF has not yet received those funds as of this filing but will update the Court if they are obtained prior to a ruling on this motion.

Pl.'s Reply in Supp. of Mot. for Further Prelim. Injunctive Relief - 13
*Open Technology Fund v. Lake*, No. 1:25-cv-840-RCL

## CERTIFICATE OF SERVICE

      I hereby certify that on this 24th day of October 2025, a true and correct copy of the foregoing was filed using the Court's CM/ECF filing system, which shall send notice to all counsel of record.

                            /s/ *Patrick O. Daugherty*
                            Patrick O. Daugherty