IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| OPEN TECHNOLOGY FUND,<br><br>　　　　　　　　Plaintiff,<br><br>v.<br><br>KARI LAKE et al.,<br><br>　　　　　　　　Defendants. | Civil Action No. 1:25-cv-840-RCL<br><br>**PLAINTIFF'S SUPPLEMENTAL BRIEF** |

　　　　On October 28, 2025, the Court requested supplemental briefing on whether the Supreme Court's ruling in *National Institutes of Health v. American Public Health Ass'n*, 606 U.S. ___, 145 S. Ct. 2658 (2025) ("*NIH*"), affects the Court's jurisdiction to grant Plaintiff Open Technology Fund's Motion for Further Preliminary Injunctive Relief. ECF 51.

　　　　First, the holding of the fractured Court in *NIH* must be stated on the narrowest grounds available. *NIH* requires only that challenges to the termination of previously awarded ***discretionary grants*** proceed in the Court of Federal Claims.

　　　　Second, unlike the *NIH* grantees, OTF's funding is fixed by statute and non-discretionary. While *NIH* found that challenges to termination of discretionary grants are contractual, OTF's claims seek relief based on violations of a federal statute and the relief sought is compliance with the statute, not money damages.

　　　　Third, in addition to its statutory claims, OTF has constitutional claims to which *NIH* has no application. Congress unequivocally directed funding to OTF, and the Executive Branch's refusal to comply with that directive violates the U.S. Constitution.

## ARGUMENT

I.     ***NIH*'s Holding Is Limited to Discretionary Grants.**

This Court must apply *NIH*'s fractured holding (a 4-1-4 ruling) on the narrowest grounds possible. *NIH* holds that challenges to the termination of previously awarded ***discretionary grants*** must proceed in the Court of Federal Claims. Subsequent cases applying *NIH* confirm this Court's jurisdiction to hear OTF's Motion and grant the requested relief.

    A.     ***NIH's* Fractured Holding Should Be Read Narrowly and Limited to the Facts Before the Court.**

When, as is the case in *NIH*, "a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five Justices," courts view the holding "as that position taken by those Members who concurred in the judgments on the narrowest grounds." *Marks v. United States*, 430 U.S. 188, 193 (1977); *Belize Bank Ltd. v. Gov't of Belize*, 852 F.3d 1107, 1111 n.4 (D.C. Cir. 2017). In *NIH*, the reasoning for the Court's decision was expressed through five different opinions joined by various combinations of seven of the nine Justices. Two Justices did not author or join any of the opinions, none of the opinions had the agreement of five or more Justices. Under *Marks*, the narrowest overlapping rationale for the result is the Court's holding.

    B.     ***NIH*'s Application Is Limited to Discretionary Grants.**

Unlike this case, which involves OTF's statutory entitlement to funds, *NIH* involved claims relating to ***discretionary*** federal grants terminated by the NIH. *See, e.g.*, *NIH*, 145 S. Ct. at 2664 ("The only injury the district court sought to remedy in its judgments stems from the government's denial of previously awarded discretionary grants.") (J. Gorsuch, concurring in part); *id.* at 2667 ("Various statutory provisions shape the NIH's discretion in allocating these funds") (J. Jackson, concurring in part and dissenting in part); *id.* at 2665 (noting the "highly discretionary" nature of NIH's decisions) (J. Kavanaugh, concurring in part and dissenting in part); *see also* Appl. to Stay

the Judgments of the U.S. District Ct. of Mass. & Req. for an Immediate Admin. Stay, *NIH v. Am. Pub. Health Ass'n*, No. 25A103, 2025 WL 2146619, at *13–34 (July 24, 2025) (describing grants as discretionary).

Following determinations by the district courts enjoining the NIH from implementing agency guidance related to grantmaking and vacating the NIH's grant terminations, the NIH applied for an administrative stay. Four Justices would have granted NIH's requested stay in full; four Justices would have denied NIH's requested stay in full; and Justice Barrett voted to stay vacatur of the grant terminations but not the injunction against enforcement of the NIH guidance. *NIH*, 145 S. Ct. at 2661. In support of her conclusion that the district court likely lacked jurisdiction to hear the challenges to the grant terminations, Justice Barrett relied on the Court's earlier decision in *Department of Education v. California*, 604 U.S. 650 (2025) (per curiam), as did two other concurring opinions. *See id.* (Barrett, J.); *id.* at 2663–64 (Gorsuch, J.) (relying on *California*); *id.* at 2665 (Kavanaugh, J.) (relying on *California*). The parties have previously briefed the application of *California* to this case. *See* ECF 22-1 at 25-26, ECF 24 at 6-13 (briefing on OTF's Motion for Preliminary Injunction); ECF 33-1 at 13-21, ECF 36-1 at 21-22, ECF 40 at 5-7, ECF 41 at 6-8 (briefing on Defendants' Motion to Dismiss and the Parties' Cross Motions for Summary Judgment).[1]

In *California*, the district court was faced with a request to enjoin the current administration's termination of 109 grants issued by the Department of Education. *See California v. U.S. Dep't of Educ.*, 132 F.4th 92, 95 (1st Cir. 2025). Like *NIH*, the grants at issue in *California* were issued pursuant to a discretionary grantmaking program that allowed the agency to set requirements, select grantees and award discretionary grant amounts, and enter contracts setting

---

[1] Citations are to the ECF page number.

the terms and conditions of those grants. The Supreme Court held that the Department of Education was likely to succeed in showing the district court lacked jurisdiction *to enforce the terms* of those discretionary grants. *California*, 604 U.S. at 651. In so holding, the Court recognized and reinforced the distinction between Administrative Procedure Act ("APA") lawsuits challenging agency decisions resulting in the disbursement of funds (where district courts have jurisdiction) and lawsuits seeking to enforce the government's contractual obligations to pay money (cognizable only in the Court of Federal Claims). *Id.*

Together, *NIH* and *California* confirm that the landmark decision distinguishing district court and Court of Federal Claims jurisdiction—*Bowen v. Massachusetts*, 487 U.S. 879 (1988)—and its progeny—*Great-West Life & Annuity Ins. Co. v. Knudson*, 504 U.S. 204 (2002)—remain good law and should be relied on by courts in evaluating the relevant jurisdictional questions. *See NIH*, 145 S. Ct. at 2661 (Barrett, J.); *id*. at 2668 (Jackson, J.); *California*, 604 U.S. at 651; *id*. at 653 (Kagan, J.); *id*. at 669 n.7 (Jackson, J.). Both *Bowen* and *Great-West* have been extensively briefed by the parties in this case already. *See* ECF 4-1 at 20-21 (OTF's motion for temporary restraining order); ECF 22-1 at 24, ECF 24 at 5-6 (briefing on OTF's Motion for Preliminary Injunction); ECF 33-1 at 14, ECF 36-1 at 22, ECF 41 at 6-7, 9, 13 (briefing on Defendants' Motion to Dismiss and the Parties' Cross Motions for Summary Judgment); ECF 44-1 at 14-15 (briefing on OTF's Motion for Further Preliminary Injunctive Relief). In *Bowen*, the Court held district courts have jurisdiction to review an agency decision refusing to reimburse state Medicaid expenditures. 487 U.S. at 882-83. The Court reasoned that a claim filed to enforce a statutory mandate, "which provides that the [agency] 'shall pay' certain amounts . . . is not a suit seeking money in *compensation* for the damage sustained by the failure of the Federal Government to pay as mandated; rather it is a suit seeking to enforce the statutory mandate itself, which happens to be

one for the payment of money." *Bowen*, 487 U.S. at 900 (emphasis in original). *Bowen* remains controlling law on this question and in this case.

Accordingly, *NIH* is best understood as narrowly holding that challenges to the termination of previously awarded ***discretionary grants*** are breach of contract claims that must proceed in the Court of Federal Claims. Because OTF's funding claims are not based on discretionary grants, *NIH* does not strip this Court of jurisdiction.

### C. Cases Interpreting *NIH* Confirm This Circuit's Jurisdictional Precedents Remain Good Law.

Two post-*NIH* cases—*Climate United Fund v. Citibank, N.A.*, ___ F.4th ___, No. 25-5122, 2025 WL 2502881 (D.C. Cir. Sep. 2, 2025), and *American Ass'n of Physics Teachers, Inc. v. National Science Foundation*, No. 25-cv-1923-JMC, 2025 WL 2615054 (D.D.C. Sep. 10, 2025)— followed this Circuit's long-established precedent to consider whether the Court of Federal Claims had jurisdiction. When determining whether a lawsuit is subject to the Tucker Act and must therefore be brought in the Cout of Federal Claims, this Circuit uses the jurisdictional test set forth in *Megapulse Inc. v. Lewis*, 672 F.2d 959, 963 n.13 (D.C. Cir. 1982). The D.C. Circuit has held that *California* did not "change the landscape" established by *Bowen* and *Megapulse*. *Widakuswara v. Lake*, No. 25-5144, 2025 WL 1288817, at *13 (D.C. Cir. May 3, 2025) (Pillard, J., dissenting), *rev'd en banc*, 2025 WL 1521355, at *1 (D.C. Cir. May 28, 2025) (adopting J. Pillard's dissent).

Specifically, like *NIH* and *California*, *Climate United Fund* and *American Ass'n of Physics Teachers* involved challenges to termination of ***discretionary grants*** made by government agencies. In each of those cases, the plaintiffs had applied for competitive grants, and the agencies were directed to, and did, use their discretion to identify awardees, set the grant amounts, and enter agreements memorializing the grants. Again, like the plaintiffs in *NIH* and *California*, none of the

Pl.'s Suppl. Br. - 5
*Open Technology Fund v. Lake*, No. 1:25-cv-840-RCL

grantees in *Climate United Fund* or *American Ass'n of Physics Teachers* had been specifically identified by Congress, and the plaintiffs in those cases only had standing to challenge their grant terminations because they had grant agreements (i.e., contracts) with the government.

In *Climate United Fund*, the Environmental Protection Agency ("EPA") had issued grants under the Greenhouse Gas Reduction Fund, 2025 WL 2502881, at *1, which provided funds for the EPA "to make grants, on a competitive basis . . . as determined appropriate by the Administrator in accordance with this section," Pub. L. No. 117-169, § 60103, 136 Stat. 1818, 2065-66 (Aug. 16, 2022). The EPA created the requisite programs, awarded discretionary grants, and memorialized them with written agreements. *Climate Fund United*, 2025 WL 2502881, at *1. In determining that the *Climate United Fund* claims were cognizable only in the Court of Federal Claims, the D.C. Circuit found the claims were "essentially contractual," *id.* at *4, because the "source of the grantees' right to the relief they seek is their agreements," *id.* at *5 (citations omitted), and "the remedy the grantees seek is contractual in nature," *id.* at *6. In essence, without the grant agreements, there was no "truly independent legal grounds" for the plaintiffs' claims. *Id.* at *5. The Court further concluded that plaintiffs' claim that the government "acted arbitrarily by failing to follow the terms of the grant agreements" was based on the existence and terms of the contracts themselves and was not "truly independent." *Id.* at *7. Because the grant agreements served as the sole source of the plaintiffs' claims, and the entitlement to funds was founded solely in the grant agreement, the court concluded that the claims were based in contract and belonged in the Court of Federal Claims.

*American Ass'n of Physics Teachers* likewise involved grants from the National Science Foundation ("NSF") to plaintiffs or their members that NSF terminated after updating its guidance on NSF funding priorities. 2025 WL 2615054, at *1. NSF's statutory directive provided NSF

discretionary authority "to initiate and support specific scientific and engineering activities . . . by making contracts or other arrangements (including grants, loans, and other forms of assistance) for the conduct of such activities." 42 U.S.C. § 1862(b). Congress directed that NSF "utilize [its] appropriations . . . in such manner as will *in its discretion* best realize" the stated congressional objectives. *Id*. § 1873(e) (emphasis added). After NSF cancelled a series of discretionary grants, plaintiffs challenged the agency's actions and moved for a preliminary injunction requiring NSF to reinstate the grants and restore funding while the litigation proceeded. *American Ass'n of Physics Teachers*, 2025 WL 2615054, at *6. The district court concluded that plaintiffs were unlikely to demonstrate the Court had jurisdiction. The Court reasoned that the plaintiffs' discretionary grant termination claims were essentially breach of contract claims and the requested relief of reinstating the grant agreement constituted a request for specific performance of a contract. *Id*. at *9. The claims belonged in the Court of Federal Claims because the source of the plaintiffs' rights was the grant agreement, the claims were for breach of those contracts, and the requested relief was for specific performance of the contracts.

**II.      OTF's Claims Are Statutory and the Remedies OTF Seeks Are Not Contractual.**

Both *Climate United Fund* and *American Ass'n of Physics Teachers* continued to apply the *Megapulse* test that examines the source of the rights upon which the plaintiff bases its claims, and upon the type of relief sought (or appropriate). *Climate United Fund*, 2025 WL 2502881, at *35-39; *American Ass'n of Physics Teachers*, 2025 WL 2615054, at *8-10. The source of OTF's rights is the statute appropriating funds to OTF and this Court has jurisdiction to enforce that statute. OTF's claims are not contractual and the relief it seeks is distinct from money damages.

**A.      USAGM Is Statutorily Required to Disburse Money to OTF.**

In stark contrast to the grantees in *NIH*, *Climate United Fund*, and *American Ass'n of Physics Teachers*, OTF's federal funding is set directly by Congress in a line-item appropriation.

It is not discretionary. Instead, Congress sought to promote "global internet freedom by countering internet censorship and repressive surveillance," and "protect[] the internet as a platform for the free exchange of ideas, promotion of human rights and democracy, and advancement of a free press . . . ." 22 U.S.C. § 6208a(b). In doing so, Congress "established a grantee entity to be known as the 'Open Technology Fund' [to] carry out" that purpose, *id.* § 6208a(a)(2), and required funding to be provided to OTF. *Id.* § 6208a(a)(1) ("Grants authorized under section 6204 of this title *shall be available* to make annual grants[.]") (emphasis added). Since OTF's inception, Congress has funded OTF through specific appropriations each year. *See* ECF 4-1 at 15-17 (listing FY2022–FY2025 appropriations acts and three continuing resolutions renewing OTF's funding).

By requiring USAGM to provide funds to OTF, Congress mandated that OTF's appropriations are non-discretionary. *Bridgeport Hosp. v. Becerra*, 108 F.4th 882, 887 (D.C. Cir. 2024) (Congress uses "shall" to "'impose[] a mandatory duty' that is 'impervious to discretion.'" (omission in original) (citation omitted)); *cf. Consumer Fin. Prot. Bureau v. Cmty. Fin. Servs. Ass'n of Am.*, 601 U.S. 416, 432–33, 442–43 (2024) (Kagan J., concurring) (discretion afforded when agency appropriated "sums not exceeding" or "up to" an amount for a particular purpose). In effect, USAGM has no discretion to withhold the funding Congress has mandated OTF receive—Congress has directed that the money it appropriates shall go to OTF—USAGM merely administers those funds.

The United States has acknowledged the distinction between non-discretionary and discretionary appropriations. The Executive Order, "Improving Oversight of Federal Grantmaking," directs federal agencies "to review discretionary grants to ensure that they are consistent with agency priorities and the national interest[.]" Executive Order 14332, 90 Fed. Reg. 38929, 38930 (Aug. 7, 2025). The Executive Order also explains that those "programs where

legislation establishes an entitlement to the funds on the part of the recipient" are excluded from the definition of "discretionary grants." *Id.* ("The term . . . 'discretionary grant' means a grant that is a 'discretionary award' as that term is defined in 2 CFR 200.1").[2] Moreover, OTF's non-discretionary funding is distinct from other types of federal grants such as "[f]ederal research grants [which] typically work through reimbursement." *Ass'n of Am. Univs. v. Dep't of Def.*, ___ F. Supp. 3d ___, No. 25-cv-11740, 2025 WL 2022628, at *2 (D. Mass. July 8, 2025) ("[Institutes of Higher Education] are required to document their research costs, which are then 'charged' back to the relevant grant.") (citing 2 C.F.R. § 200.400(d)).

The funding mechanisms for discretionary grants are also different from those used to fund OTF. For discretionary grants, Congress appropriates funds to an agency, who then "in keeping with specific statutory authority that enables the agency to exercise judgment ('discretion'), selects the recipient or the amount of Federal funding awarded through a competitive process or based on merit of proposals." 2 C.F.R. § 200.1. Here, USAGM lacks discretion to do anything other than fund OTF.

After *NIH*, many of the grant termination cases district courts have decided involved discretionary grant funding. *See, e.g.*, *R.I. Coal. Against Domestic Violence v. Kennedy*, No. 25-cv-342, 2025 WL 2988705, at *5 (D.R.I. Oct. 23, 2025) (plaintiffs were "effectively prevented from participating in the application process and from receiving funding Congress has

---

[2] *See also* 2 C.F.R. § 200.1 ("Discretionary award means an award in which the Federal agency, in keeping with specific statutory authority that enables the agency to exercise judgment ('discretion'), selects the recipient or the amount of Federal funding awarded through a competitive process or based on merit of proposals. A discretionary award may be selected on a non-competitive basis, as appropriate."); *id*. ("Non-discretionary award means an award made by the Federal agency to specific recipients in accordance with statutory, eligibility, and compliance requirements, such that in keeping with specific statutory authority, the Federal agency cannot exercise judgment ('discretion'). A non-discretionary award amount could be specifically determined or by formula.").

appropriated"); *Washington v. U.S. Dep't of Com.*, No. 25-cv-1507, 2025 WL 2978822, at *1 (W.D. Wash. Oct. 22, 2025) ("In 2022 and 2023, Washington applied for and received federal funding from two proposals to strengthen Washington's climate resilience with a focus on disproportionately affected communities.") (quotation marks omitted); *Planned Parenthood of Greater N.Y. v. U.S. Dep't of Health & Hum. Servs.*, No. 25-cv-2453, 2025 WL 2840318, at *1-2 (D.D.C. Oct. 7, 2025) ("The Teenage Pregnancy Prevention Program[] was created by Congress in 2009 as part of an appropriations act providing funds for 'making competitive contracts and grants to public and private entities to fund medically accurate and age appropriate programs that reduce teen pregnancy'" and agency "grants awards through a competitive process after issuing a 'notice of funding opportunity.'") (citations omitted); *American Ass'n of Physics Teachers*, 2025 WL 2615054, at *2 ("Congress established NSF in 1950 and tasked the agency with 'initiat[ing] and support[ing] basic scientific research and programs'" and NSF "fulfill[s] [its] mission chiefly by making grants . . . [t]o govern the awards process, Congress has established certain criteria and objectives.").

      **B.**    **This Court Has Jurisdiction to Enforce the Statutes Appropriating Funds to OTF.**

That OTF's funding is rooted in statute is dispositive of this Court's jurisdiction. *Cmty. Legal Servs. in E. Palo Alto v. U.S. Dep't of Health & Hum. Servs.*, ___ F.4th ___, No. 25-2808, 2025 WL 2884805, at *2, 6 (9th Cir. Oct. 10, 2025) (noting that "Congress has consistently appropriated funds to ensure compliance with [a statute]'s mandate" and concluding that "[t]he non-contractual source of Plaintiffs' rights is dispositive." (citing *Megapulse*, 672 F.2d at 971)). *See also Widakuswara*, 2025 WL 1288817, at *11 (Pillard, J., dissenting) (explaining that the plaintiffs' claims were to enforce the relevant governing statutes and congressional appropriations

acts, even though those statutes were implemented through a grant agreement, and so were properly before the district court) (adopted by the D.C. Circuit *en banc*, 2025 WL 1521355).

A post-*NIH* case analyzing a non-discretionary federal grant program held that jurisdiction exists in district court under the APA for such claims. In *Washington v. U.S. Department of Health and Human Services*, the district court found it had jurisdiction over the states' claims to funding "allotted to states as non-competitive (non-discretionary) formula grants." No. 6:25-CV-01748-AA, 2025 WL 3002366, at *2 (D. Or. Oct. 27, 2025). The court there applied the D.C. Circuit *Megapulse* test to conclude it had jurisdiction because the claims were not "rooted in the grants' underlying agreements," but rather "in statutory and constitutional authorities . . . that are *independent* of the grant agreements." *Id.* at *6 (emphasis original). Looking to *Bowen*, the court further concluded that "uninterrupted grant funding" did not constitute damages because it was not "a retrospective remedy to substitute or compensate them for a suffered loss . . . ." *Id.* at *7. *Washington* is the most closely analogous post-*NIH* case to OTF.

C. **OTF's Claims Are Not Contractual.**

OTF's claims are not "at [their] essence" contractual in nature. OTF's claims do not depend on the terms of a grant agreement or even the existence of a grant agreement. Rather, what is at issue is Defendants' failure to provide funding that is congressionally required. OTF seeks to merely require USAGM to do what it is statutorily required to do.

"If rights and remedies are *statutorily* or *constitutionally* based, then district courts have jurisdiction; if rights and remedies are *contractually* based then only the Court of Federal Claims does[.]" *City of Fresno v. Turner*, No. 25-cv-7070, 2025 WL 2721390, at *5 (N.D. Cal. Sep. 23, 2025) (quoting *United Aeronautical Corp. v. U.S. Air Force*, 80 F.4th 1017, 1026 (9th Cir. 2023)) (emphasis in original). More specifically, if "the statutes and regulations that the court considers are not 'contained within the terms' of [a] grant agreement[,]" claims are rooted in statute. *See*

Pl.'s Suppl. Br. - 11
*Open Technology Fund v. Lake*, No. 1:25-cv-840-RCL

*Ass'n of Am. Univs. v. Dep't of Def.*, ___ F. Supp. 3d ___, No. 25-cv-11740, 2025 WL 2899765, at *6 (D. Mass. Oct. 10, 2025) ("To argue that the background existence of Plaintiffs' grant agreement defines Plaintiffs' regulatory and statutory claims is to let the tail wag the dog.") (citation omitted). Significantly, a claim that "congressionally appropriated funding is available [and] the Government must comply with the [statute] and [regulations] . . . is not a contractual claim." *Community Legal Servs.*, 2025 WL 2884805, at *5.

Moreover, because *NIH* "only involved an APA arbitrary and capricious claim," it thus "does not bear on [a] claim that the agencies acted contrary to law." *Thakur v. Trump*, ___ F. Supp. 3d ___, No. 25-cv-4737, 2025 WL 2696424, at *10 (N.D. Cal. Sep. 22, 2205) ("nothing in [*NIH*] addresses the application of the Tucker Act to claims that an agency acted outside its statutory authority."). As such, in adhering to the precedent set out in *NIH* and in determining proper jurisdiction in this case, this Court must evaluate whether it retains jurisdiction over OTF's claim that Defendants acted contrary to law independently of whether it retains jurisdiction over OTF's claim that Defendants acted arbitrarily and capriciously.

Cases decided after the ruling in *NIH* have made no "distinction between 'existing' and 'future' grants." *Ass'n of American Universities*, 2025 WL 2899765, at *2 (rejecting argument that there is a "distinction between 'existing' and 'future' grants"). In other words, *NIH* does not impact this Court's "jurisdictional analysis . . . based on whether the challenged guidance concerns existing or future grants" when "[t]he Supreme Court's recent decision in [*NIH*] did not draw that distinction." *Id.* at *3. Accordingly, this Court retains jurisdiction over OTF's APA claims challenging prospective agency action, namely the continued withholding of OTF's statutory funding. *American Ass'n of Physics Teachers*, 2025 WL 2615054, at *12.

### D. Compliance with the Statutory Mandate to Fund OTF Is Not Money Damages.

Most notably, the Supreme Court's decision in *NIH* relied on and recognized the continuing precedential value of *Bowen*. *NIH*, 145 S. Ct. at 2658 (reaffirming *Bowen* as "good-law"). The Court in *Bowen* instructed that district courts have jurisdiction to order an agency to disburse statutorily required funds. 487 U.S. at 888. There the Court held that the State's properly sought relief from the district court to enforce a statute directing "that the Secretary 'shall pay' certain amounts for appropriate Medicaid services," which was "not a suit seeking money in *compensation* for the damage sustained" but rather "a suit seeking to enforce the statutory mandate itself, which happens to be one for the payment of money." *Id.* at 900.

The Court in *Bowen* articulated the critical distinction between an equitable award of specific money from the award of monetary damages: "an equitable action for specific relief—which may include an order providing for . . . the recovery of specific property *or monies*"—from monetary damages, which is "a sum of money used as compensatory relief . . . given to the plaintiff to *substitute* for a suffered loss . . . ." *Id.* at 895 (internal quotations and citations omitted) (emphasis original). Because disbursement of the funds was the specific thing that the State was entitled to under the statute, it was properly considered equitable relief under the APA.[3]

The *Bowen* Court's reliance on this Circuit's decision in *Maryland Department of Human Resources v. Department of Health & Human Services*, 763 F.2d 1441 (D.C. Cir. 1985), is also instructive. *See Bowen*, 487 U.S. at 894. In *Maryland Department of Human Resources*, the D.C.

---

[3] The Tucker Act also vests the Court of Federal Claims with jurisdiction to decide claims against the United States for damages where the claims are grounded in a statute that "can fairly be interpreted as mandating compensation by the Federal Government for damage sustained," *Me. Cmty. Health Options v. United States*, 590 U.S. 296, 322 (2020), unless another statute or the "Administrative Procedure Act provides an avenue for relief," *id.* at 324. Because OTF's claim is not one for damages and because the APA provides an avenue for relief, this component of the Court of Federal Claims' jurisdiction under the Tucker Act does not apply.

Circuit confirmed that where the state sought "funds to which a statute allegedly entitles it, rather than money in compensation for the losses, whatever they may be," the Tucker Act did not apply. 763 F.2d at 1446. The Court explained that because the State's "claims arise under a federal grant program and turn on the interpretation of statutes and regulations rather than on the interpretation of an agreement negotiated by the parties," the claims "are not contract claims for Tucker Act purposes." *Id.* at 1449. *See also MomoCon, LLC v. Small Bus. Admin.*, No. 21-cv-2386, 2022 WL 22940750, at *3 (D.D.C. Feb. 10, 2022) ("Specific relief, including 'monetary relief sought as a statutory entitlement,' also does not constitute money damages." (internal quotation marks and citation omitted)); *Robles v. Kerry*, 74 F. Supp. 3d 254, 260 (D.D.C. 2014) ("'[M]oney damages' are categorically exclusive of *specific relief*—which includes monetary relief sought as a statutory entitlement." (citations omitted) (emphasis in original)).

Just as in its prior motion for preliminary relief, OTF seeks only what it is entitled to under a statute. *NIH* explicitly adopts and follows the established precedent set by the Court in *Bowen*. Like the plaintiffs in *Bowen* and *Maryland Department of Human Resources*, OTF seeks to enforce a statutory mandate, not a grant agreement. *Cf. Appalachian Voices v. EPA*, No. 25-cv-1982, 2025 WL 2494905, at *8 (D.D.C. Aug. 29, 2025) (finding *Bowen* did not "control" when "Plaintiffs do not seek to enforce a statutory entitlement to payment, but rather enforce and amend their grant agreements with the Government."), *appeal filed*, No. 25-5333 (D.C. Cir. Sep. 16, 2025). The Court need not consider any of the government's obligations under a contract to determine that OTF is entitled to its requested relief—access to its congressionally appropriated funds to fulfil its statutory mandate.

### III. OTF Also Asserts Meritorious Constitutional Claims.

Congress has directed USAGM "to make annual grants for the purpose of promoting, consistent with United States law, unrestricted access to uncensored sources of information via the

internet to enable journalists . . . to create and disseminate, and for their audiences to receive, news and information." 22 U.S.C. § 6208a(a)(1). That statute identifies OTF by name as a grantee. *Id.* § 6208a(a)(2). Congress incorporated a specific line item that mandated that $43.5 million be appropriated for OTF to fulfill its statutory mission. The National Defense Authorization Act for Fiscal Year 2024, Pub. L. No. 118-31, § 6306, 137 Stat. 136, 989 (2023) (extended through FY2025 by continuing resolution).

Article I of the U.S. Constitution grants to the legislative branch the exclusive power to make law and the power of the purse. The President, under Article II, is required to "take Care that the Laws be faithfully executed," U.S. Const. art. II, § 3, "across the entire Executive Branch—including 'independent' agencies." *English v. Trump*, 279 F. Supp. 3d 307, 327 (D.D.C. 2018) (citing *Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477, 496–97 (2010)).

Defendants' refusal to release funds directly appropriated by Congress to OTF violates the Take Care Clause of the U.S. Constitution. This type of case, involving separation of powers issues and calling upon the court to remedy constitutional violations, is squarely within the jurisdiction of federal district courts. As this Court has noted, "a claim of entitlement to congressional appropriations is certainly one over which the Court can exercise jurisdiction." *Widakuswara v. Lake*, 779 F. Supp. 3d 10, 30 (D.D.C. 2025) (citation omitted).

*NIH* does not compel a different result. Indeed, a number of district courts have recognized that this decision, as fractured as it was, supported federal district court jurisdiction to hear constitutional claims. *See, e.g.*, *City of Fresno v. Turner*, 2025 WL 2469330, at *3 n.1 (N.D. Cal. Aug. 27, 2025) (holding that the district court had jurisdiction because plaintiffs were seeking declaratory and injunctive relief rooted in APA and Constitutional claims related to congressionally authorized grant money) (citing *NIH*, 145 S. Ct. at 2661); *Illinois v. Fed.*

*Emergency Mgmt. Agency*, ___ F. Supp. 3d ___, No. 25-cv-206, 2025 WL 2716277, at *9 (D. R.I. Sep. 24, 2025) (finding jurisdiction to address APA and Constitutional challenges to prospective grant conditions) (citation omitted).

Divesting Article III courts of jurisdiction over this type of action would allow the Executive Branch, charged in the Constitution with taking care that the Laws be faithfully executed, to instead ignore Congress's expressly stated funding directives and leave harmed parties without the ability to obtain injunctive relief. This misguided approach would further ignore the will of Congress, expressed in the Tucker Act, which granted limited jurisdiction to the Court of Federal Claims. *See California*, 604 U.S. at 651 ("[T]he Tucker Act grants the Court of Federal Claims jurisdiction over suits based on 'any express or implied contract with the United States.' 28 U.S.C. 1491(a)(1)."). USAGM has a non-discretionary statutory mandate to fund OTF. OTF's constitutional claims to enforce that mandate are properly before this Court.

## CONCLUSION

*NIH* stands for the narrow proposition that challenges to the termination of previously awarded **discretionary grants** are breach of contract claims and must proceed in the Court of Federal Claims. OTF's funding is mandated by statute and therefore its suit and motion may continue under *Bowen*, which *NIH* continued to recognize as good law.

Accordingly, OTF respectfully requests that its Motion for Further Preliminary Injunctive Relief be granted and that the Court issue a preliminary injunction requiring Defendants to promptly obligate and disburse to OTF congressionally appropriated funds on the schedule set forth in OTF's revised FY2025 financial plan, to wit:

- $19,063,013 in programmatic funds to support OTF's Internet Freedom Fund, Surge and Sustain Fund, Rapid Response Fund, FOSS Sustainability Fund, Research Fellowships, Labs contracts, and other authorized programs.[4]

Dated this 5th day of November 2025.

>Respectfully submitted,
>
>VAN NESS FELDMAN, LLP
>
>/s/ *Patrick O. Daugherty*
>Patrick O. Daugherty, D.C. Bar No. 981008
>Michael Farber, D.C. Bar No. 449215
>2000 Pennsylvania Avenue, NW
>Suite 6000
>Washington, DC 20006
>Tel.: 202-298-1800
>Email: pod@vnf.com; mfarber@vnf.com
>
>Sophia E. Amberson, WA Bar No. 52528
>*Pro Hac Vice*
>Liberty Quihuis, WA Bar No. 57779
>*Pro Hac Vice*
>1191 Second Avenue
>Suite 1800
>Seattle, WA 98101
>Tel.: 206-623-9372
>Email:  samberson@vnf.com; lquihuis@vnf.com
>
>*Attorneys for Plaintiff*

---

[4] OTF's motion also sought disbursement $788,875 in October operating funds. After the filing of the motion, USAGM provided those funds to OTF along with an additional payment of November operating funds.

## CERTIFICATE OF SERVICE

    I hereby certify that on this 5th day of November 2025, a true and correct copy of the foregoing was filed using the Court's CM/ECF filing system, which shall send notice to all counsel of record.

                                         /s/ *Patrick O. Daugherty*
                                         Patrick O. Daugherty