**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| OPEN TECHNOLOGY FUND,<br><br>Plaintiff,<br><br>v.<br><br>KARI LAKE et al.,<br><br>Defendants. | Civil Action No. 1:25-cv-840-RCL<br><br>**OPEN TECHNOLOGY FUND'S MOTION FOR AWARD OF ATTORNEY FEES AND COSTS** |

## INTRODUCTION

As the prevailing party in this litigation brought under the Administrative Procedure Act ("APA"), Plaintiff Open Technology Fund ("OTF") respectfully moves for an award of attorney fees and costs under the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412(d). Throughout the litigation, this Court's opinions clearly and consistently held that the position of Federal Defendants was not substantially justified. As described further below and in the attached declarations, OTF is eligible and entitled to an award of $363,667.37 in attorney fees and costs incurred through November 17, 2026, plus any attorney fees and costs incurred after that date.[1]

## BACKGROUND

Congress unambiguously appropriated funds for OTF—as an explicitly named grantee—to advance internet freedom. *See* Pub. L. No. 118-47, 138 Stat. 460, 735 (2024) (directing U.S. Agency for Global Media ("USAGM") to grant OTF not less than $43,500,000 for fiscal year ("FY") 2024); Pub. L. No. 118-83, 138 Stat. 1524, 1525 (2024) (Continuing FY 2024 funding

[1] OTF reserves the right to file one or more supplements to this motion for attorney fees and costs incurred after November 17, 2026.

for FY 2025); Pub. L. No. 118-158, 138 Stat. 1722, 1723 (2024); H.R. 1968, 119th Cong. § 1101(a) (2025). These appropriations to OTF were not subject to any executive discretion.

On March 15, 2025, USAGM sent OTF a letter purporting to terminate all grant funding from USAGM to OTF. In response, OTF initiated this lawsuit and filed a motion for temporary restraining order ("TRO"), asserting that USAGM acted unlawfully by withholding congressionally appropriated funds from OTF. ECF Nos. 1, 4. Just before this Court held a hearing on OTF's request for TRO, USAGM withdrew its termination letter and notified the Court and OTF that it would begin processing OTF's most recent grant drawdown request. ECF No. 13. Based on USAGM's representation, OTF withdrew its TRO motion. ECF No. 19.

Although USAGM had withdrawn its grant termination letter, it refused to disburse further grant funds to OTF. On April 29, 2025, OTF filed a motion for preliminary injunction. ECF No. 22. The Court granted OTF's motion for a preliminary injunction, requiring USAGM to (i) disburse to OTF the funds it was owed for April, May, and June 2025; (ii) pay appropriated funds at the beginning of each month through 2025; and (iii) provide monthly status reports on disbursements. ECF No. 35.

Rather than obeying Congress's and this Court's clear direction to honor the appropriations and grant obligations, in June 2025, USAGM instead filed a motion to dismiss OTF's complaint and for summary judgment. ECF No. 34. OTF responded and filed a cross-motion for summary judgment in July 2025. ECF No. 36.

While the motions to dismiss and for summary judgment were pending, USAGM arbitrarily changed its disbursement methodology such that it would only pay out funds as OTF's expenses came due, rather than as OTF incurred contractual obligations, causing significant disruptions to OTF's long-established contracting practices and requiring OTF to file a motion

for further preliminary injunctive relief. ECF No. 44. On November 25, 2025, the Court granted OTF's motion for further preliminary injunctive relief. ECF No. 62.

On March 26, 2026, the Court denied USAGM's combined Motion to Dismiss and for Summary Judgment, and granted OTF's Cross-Motion for Summary Judgment as to Count I under the APA. ECF No. 70. The Court noted that it need not reach the remaining claims raised in OTF's complaint because granting summary judgment on Count I afforded OTF complete relief. *Id.* at 3 n.3. The Court held that USAGM could not lawfully withhold $43.5 million in FY 2025 funds appropriated for grants to be allocated to OTF by Congress because OTF is statutorily entitled to those funds. *Id.* at 3. On July 24, 2026, the parties jointly certified on that OTF had received its FY 2025 appropriation from USAGM, and that the requirements of the Court's Order had been satisfied, allowing for entry of judgment under Rule 58. ECF No. 72.

Judgment in this case was entered on August 23, 2026, 150 days from the Court's Order awarding relief to OTF. Fed. R. Civ. P. 58(c)(2)(B). The appeals period ended 60 days later, on October 22, 2026. Fed. R. App. P. 4(a)(1)(B). Having prevailed in this litigation, OTF respectfully moves for an award of attorney fees and costs under EAJA. This motion is supported by the Declarations of Patrick O. Daugherty and Donald R. Anderson Jr.

## LEGAL STANDARD

EAJA provides that a court shall award fees and costs to a prevailing party "'unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.'" *Nat'l Ass'n of Mfrs. v. Dep't of Labor*, 159 F.3d 597, 599 (D.C. Cir. 1998) (quoting 28 U.S.C. § 2412(d)(1)(A)). An eligible prevailing party for EAJA purposes must either be an individual with a net worth not exceeding $2,000,000, or the owner of an unincorporated business, or any partnership, corporation, association, unit of local

government, or organization, with a net worth not exceeding $7,000,000 and no more than 500 employees at the time the civil action was filed. *Id.* (citing 28 U.S.C. § 2412(d)(2)(B)(ii)). The party seeking fees has the burden of establishing eligibility. *See Carey v. Fed. Election Comm'n*, 864 F. Supp. 2d 57, 62 (D.D.C. 2012). Once eligibility is established, the burden shifts to the government, which "must show that its position was 'justified to a degree that could satisfy a reasonable person or otherwise having a reasonable basis in both law and fact.'" *Pursuing Am.'s Greatness v. Fed. Election Comm'n*, 463 F. Supp. 3d 11, 16 (D.D.C. 2020) (quoting *Taucher v. Brown-Hruska*, 396 F.3d 1168, 1172 (D.C. Cir. 2005)).

To calculate an EAJA fee award, the best starting point "is the 'lodestar figure, which is the number of hours reasonably expended multiplied by a reasonable hourly rate.'" *Animal Legal Def. Fund, Inc. v. Perdue*, 292 F. Supp. 3d 315, 317 (D.D.C. 2018) (citation omitted). The maximum hourly rate for an attorney under EAJA is $125 per hour, "unless the court determines that an increase in the cost of living or a special factor . . . justifies a higher fee." 28 U.S.C. § 2412(d)(2)(A). The facts of the case are determinative of the ultimate amount of the fee awarded. *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983). A prevailing party may recover for attorney time dedicated to the relevant litigation, even if some portion of that time is spent on claims which did not ultimately succeed, so long as those unsuccessful claims "'were submitted as alternative grounds for a successful outcome that the plaintiff did actually achieve.'" *Pursuing Am.'s Greatness*, 63 F. Supp. 3d at 19 (citing *Anthony v. Sullivan*, 982 F.2d 586, 589 (D.C. Cir. 1993)).

## ARGUMENT

### I. OTF IS ENTITLED TO AN AWARD OF ATTORNEY FEES AND COSTS.

OTF is entitled to an award of attorney fees and costs because (a) it is a prevailing party, (b) it satisfies the EAJA eligibility requirements, (c) Defendants' position was not substantially justified, (d) it seeks compensation of reasonable rates, and (e) it incurred reasonable compensable costs.

#### A. OTF is the prevailing party under EAJA.

"In EAJA cases, the court first must determine if the applicant is a 'prevailing party' by evaluating the degree of success obtained." *Comm'r, I.N.S. v. Jean*, 496 U.S. 154, 160 (1990). A "prevailing party" satisfies three factors: "'(1) there must be a court-ordered change in the legal relationship of the parties; (2) the judgment must be in favor of the party seeking the fees; and (3) the judicial pronouncement must be accompanied by judicial relief.'" *SecurityPoint Holdings, Inc. v. TSA*, 836 F.3d 32, 36 (D.C. Cir. 2016) (quoting *Initiative & Referendum Inst. v. USPS*, 794 F.3d 21, 23-24 (D.C. Cir. 2015)). OTF satisfies each of these factors.

OTF is the prevailing party here because this Court granted all of OTF's requested relief, ruling for OTF on the merits of two preliminary injunction motions and its motion for summary judgment and against USAGM's dispositive motion. These rulings, not any voluntary action by Defendants, created a change in the legal relationship between the parties. Although USAGM voluntarily withdrew its initial grant termination letter and paid out OTF's March 2025 drawdown request, that only occurred immediately before a hearing on OTF's motion for temporary restraining order. USAGM still chose to unlawfully withhold further payments until the Court ordered USAGM to disburse funds owed and pay out future appropriated amounts when requested by OTF. Thus, the legal relationship between OTF and USAGM was altered in

OTF's favor by this Court's orders, and OTF achieved full success. OTF is a prevailing party for fee recovery under EAJA.

**B. OTF satisfies EAJA's eligibility requirements.**

EAJA provides that a 501(c)(3) organization may be a "party" regardless of net worth. 28 U.S.C. § 2412(d)(2)(B)(ii). OTF is a private, independent, not-for-profit 501(c)(3) organization incorporated in the District of Columbia. Decl. of Donald R. Anderson Jr. ¶ 4.

OTF timely brings this motion under EAJA. EAJA requires that a prevailing party's application for an award of fees and other expenses shall be submitted within thirty days of final judgment in the action. 28 U.S.C. § 2412(d)(1)(B). "Final Judgment" is defined as "a judgment that is final and not appealable." *Id.* § 2412(d)(2)(G). Judgment is entered when it is set out in a separate document, or 150 days have run from the entry in the civil docket. Fed. R. Civ. P. 58(c)(2). Therefore, judgment in this case was entered on August 23, 2026, 150 days from the Court's Order awarding relief to OTF. The judgment became final after the appeals period ended on October 22, 2026 (60 days after entry). Fed. R. App. P. 4(a)(1)(B). OTF timely files this motion on November 20, 2026, within 30 days of final judgment.

**C. USAGM's position was not substantially justified, and there are no special circumstances that would make an award unjust.**

USAGM bears the burden of establishing that its position was substantially justified. *Taucher*, 396 F.3d at 1173. This Court has interpreted "substantially justified" to mean "'justified to a degree that could satisfy a reasonable person' or, in other words, has 'a reasonable basis in both law and fact.'" *Id.* (quoting *Pierce v. Underwood*, 487 U.S. 552, 565 (1988)). This standard applies both to the agency's underlying action and to the agency's litigating position, but the court need make "only one threshold determination for the entire civil action." *Comm'r, I.N.S. v. Jean*, 496 U.S. at 159. This Court's rulings established that USAGM's actions—i.e.,

arbitrarily withholding funds that Congress explicitly appropriated to fund OTF's national security-based work—and litigating positions were unreasonable and not substantially justified.

**1. The underlying agency action was unreasonable, and contrary to OTF's statutory grant and the APA.**

On three separate occasions, and for three distinct reasons, this Court determined that USAGM's withholding of funds from OTF violated the APA. *See* ECF Nos. 35, 62, 70. In successive orders issued on June 20, 2025, November 25, 2025, and March 26, 2026, this Court found that USAGM violated the APA by (i) unlawfully withholding statutorily mandated funding under APA § 706(1); (ii) arbitrarily and capriciously changing its position on how to issue funds without explanation under APA § 706(2); and (iii) failing to consider reliance interests established by longstanding practice. *See* ECF Nos. 35, 62, 70.

First, this Court held that USAGM violated APA § 706(1) by withholding statutorily mandated funding. *See, e.g.*, ECF No. 35; ECF No. 70 at 3. This Court found that Congress, in creating OTF originally and on a continuing basis, "appropriated defined sums that, by statute, 'shall be allocated' to OTF by USAGM," of which no more than five percent may be reprogrammed. ECF No. 62 at 10. As the Court noted, Congress also structured the appropriation to OTF such that it could be terminated "'only for failure to comply with the requirement 'that the grant funds be used only for activities consistent with' the statute.'" *Id.* (citing *Widakuswara v. Lake*, No. 25-5144, 2025 WL 1288817, at *11 (D.C. Cir. May 3, 2025) (Pillard, J., dissenting)). Thus, OTF is "statutorily entitled" to the funds. *See* 22 U.S.C. § 6208a(a)(2); ECF No. 70 at 2. USAGM's decision to withhold funds conflicts directly with Congress's explicit appropriation of funding to OTF, in clear violation of APA § 706(1). This Court described USAGM's conduct to withhold statutorily mandated funding as "inexplicable." ECF No. 35 at 8.

USAGM can present no reasonable explanation for this clear violation of its statutory obligations.

Second, this Court held that USAGM violated APA § 706(2) by arbitrarily and capriciously taking a new position on cash disbursement to OTF that was a departure from its prior practice, without providing a reasoned explanation that acknowledged the change. ECF No. 62 at 18. Though an agency "need not always provide a more detailed justification than what would suffice for a new policy created on a blank slate," it must "at least display awareness that it is changing position and show that there are good reasons for the new policy." *Id.* at 20 (quoting *Encino Motorcars v. Navarro*, 579 U.S. 211, 221 (2016); *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009)). Here, "the agency pretended its position was nothing new. This failure to explain is quintessential arbitrary and capricious action." *Id.* The Court thus left no ambiguity as to the clear APA violation presented by USAGM's unexplained, unacknowledged change of position.

Third, this Court held that USAGM violated APA § 706(2) by ignoring OTF's reliance interests in the statutorily mandated funding disbursements. *See id.* at 23-24. "When an agency changes course . . . it must be cognizant that longstanding policies may have engendered serious reliance interests," and that it "would be arbitrary and capricious to ignore such matters." *Id*. (citing *Dep't of Homeland Sec. v. Regents of the Univ. of Cal.* 591 U.S. 1, 23 (2020)). As this Court noted, prior to USAGM's sudden change in position, OTF had only ever received programmatic funds from USAGM at the time it incurred contractual obligations. *Id*. Despite this, "neither USAGM's contemporaneous explanations, nor its post-hoc rationalizations, nor the arguments presented by defense counsel in these proceedings ma[d]e any effort to address OTF's reliance interests." *Id*. at 22-23.

USAGM's actions at issue in this litigation were patently unreasonable and violated federal law in numerous ways. Its litigating tactics only magnified the violations. Therefore, USAGM's position was not substantially justified.

**2. USAGM's litigation position had no reasonable basis in fact or law.**

Because USAGM's underlying action was not substantially justified, the Court need go no further; the substantial justification inquiry is a single determination covering the case as a whole. *Comm'r, I.N.S. v. Jean*, 496 U.S. at 159. But USAGM's litigation position fails on its own terms as well. Across several rounds of briefing, USAGM never advanced a position "justified to a degree that could satisfy a reasonable person." *Pierce v. Underwood*, 487 U.S. at 565. Each filing followed the same pattern: a jurisdictional objection this Court repeatedly rejected, no defense on the merits, and, when USAGM finally attempted to proffer such a defense, post hoc rationalizations the Court could not consider and in any event found inadequate.

From its TRO opposition through its summary judgment briefing, USAGM's filings rested principally on the Tucker Act. In opposing the TRO, USAGM insisted that OTF's congressionally appropriated funding was not an appropriation at all, but a contract, so that OTF's claims belonged in the Court of Federal Claims. ECF No. 7 at 8-13. Yet on the morning of the TRO hearing, USAGM withdrew the very termination it had just defended and paid the March drawdown, only to stop paying again while telling OTF and the Court that the grant was back in effect, a representation the Court found "to put it mildly, insincere." ECF No. 35 at 3, 8. USAGM's opposition to the first preliminary injunction relied on the *Widakuswara* panel's stay order, ECF No. 24 at 5-8, which the en banc D.C. Circuit vacated before this Court ruled. The Court accordingly noted that USAGM "continue[d] to lean entirely on the jurisdictional bar" the

en banc court had set aside, and that "the defendants [had] not proffered any merits defense at all." ECF No. 35 at 8-9. USAGM then moved to dismiss and for summary judgment on the same jurisdictional ground, while expressly stating that it did "not contest the substance of the APA claims should this Court determine that it has jurisdiction to address them." ECF No. 33-1 at 8; *see also id.* at 23 n.3; ECF No. 40 at 2 n.1. A party that concedes it has no answer on the merits, and stakes its defense on a ruling the en banc court has already vacated, does not hold a position a reasonable person could find justified.

USAGM's response to OTF's second preliminary injunction motion fared no better. USAGM recast the dispute as a disagreement over the "timing" of disbursements under 2 C.F.R. § 200.305(b)(1), argued that OTF's motion strayed beyond its complaint, and renewed its Tucker Act objection. ECF No. 48 at 10-20; ECF No. 61 at 3-14. The Court rejected each argument. The complaint expressly sought an order requiring USAGM to "honor subsequent drawdown requests," so OTF sought "precisely the relief requested in the Complaint." ECF No. 62 at 15-16. USAGM's contract theory failed because an agency cannot avoid an injunction against a statutory violation "simply by contracting not to engage in those activities," and because in any event the Court found that "OTF asserts an APA claim, not a contract claim cloaked in administrative garb." *Id.* at 12 (quoting *Megapulse, Inc. v. Lewis*, 672 F.2d 959, 971 (D.C. Cir. 1982)). USAGM's merits defense, a 2021 Government Accountability Office report and August 2024 "glide path" emails, consisted of "classic post-hoc rationalizations" for a change in position that USAGM never explained when it acted and whose effect on OTF's reliance interests it never considered. *Id.* at 18-24. The Court called USAGM's failure to explain "quintessential arbitrary and capricious action," *id.* at 20, and its answer that "for 13 years the parties [have been] wrong" was, in the Court's words, "not how APA review works," *id.* at 23.

The clearest showing that USAGM's position lacked any reasonable basis came from USAGM itself. In opposing the second preliminary injunction motion, USAGM submitted a sworn declaration stating that "USAGM does not dispute that OTF is currently entitled to the full amount of funding allocated for OTF." ECF No. 48-1 ¶ 12. As the Court observed in granting OTF's cross-motion for summary judgment, USAGM "never provided a response, at oral argument or otherwise," as to why that statement was anything other than a concession that OTF is statutorily entitled to its funding. ECF No. 70 at 2. Yet, USAGM continued to withhold the funds and to oppose OTF's motions, conceding only at oral argument that it was no longer pursuing "a wholesale termination and refusal to disburse funds." *Id.* at 3. A litigation position contradicted by the agency's own sworn declaration is not substantially justified.

**D. OTF is entitled to recover reasonable attorney fees.**

**1. OTF requests to recover fees at a reasonable rate.**

Prevailing plaintiffs are entitled to recover their "reasonable attorney fees" up to an hourly rate cap of "$125 per hour unless the court determines that an increase in the cost of living or a special factor . . . justifies a higher fee." 28 U.S.C. § 2412(d)(2)(A). Adjusting the attorney fee hourly rate cap in accordance with cost-of-living increases is accepted and common practice in this district. *Davis v. Kijakazi*, No. 20-cv-2282 (CKK), 2023 WL 4234656, at *2 (D.D.C. June 28, 2023) (citing *Cooper v. R.R. Retirement Bd.*, 24 F.3d 1414, 1417 (D.C. Cir. 1994) ("Attorney's fees above the statutory cap are frequently awarded to compensate for increases in the cost of living, with courts in this jurisdiction using the regional Consumer Price Index ('CPI') to make such adjustments.")); *see also Porter v. Astrue*, 999 F. Supp. 2d 35, 39 (D.D.C. 2013); *Mitchell-Jenkins v. Colvin*, 13-cv-1500 (DAR), 2016 WL 10677600, at *3

(D.D.C. Mar. 31, 2016); *see also Haselwander v. McHugh*, 797 F.3d 1, 3 (D.C. Cir. 2015) (per curiam).

The Bureau of Labor Statistics' Consumer Price Index for All Urban Consumers ("CPI-U")[2] is an appropriate basis for evaluating the adjustment. The accepted methodology is to calculate the cost-of-living adjustment by "dividing the CPI-U for the year the services were rendered, by the baseline CPI-U in the year that Congress set the $125 per hour cap," *Haselwander*, 797 F.3d at 3, and then multiply the relevant figure for each year that work was performed by $125. The CPI-U values used in this calculation were the CPI-U for Washington, D.C., where the case was litigated, the Parties reside, and where the majority of counsel are based, and the CPI-U for Seattle, Washington, where counsel Sophia Amberson and Liberty Quihuis are based and performed work. The baseline CPI-U values were March 1996 (158.4), when Congress set the $125 hourly cap, for Washington D.C. and annual 1996 (157.5) for Seattle (because no monthly 1996 value is available for that area). *See, e.g.*, Pls.' Mot. for Attorney Fees, *Wilderness Soc'y v. Burgum*, No. 1:22-cv-01871-CRC, 2025 WL 4228758 (D.D.C. June 4, 2025); Pls.' Mot. for Attorney Fees, *Byrd v. Dep't of Def.*, No. 1:23-cv-1512-TJK (D.D.C. Dec. 2, 2024), ECF No. 29; *Hall v. United States*, No. 21-2113T, 2023 WL 6160756, at *2 (Fed. Cl. Sep. 21, 2023).

---

[2] U.S. Bureau of Lab. Stats., https://data.bls.gov/timeseries/CUURS35ASA0 (last visited Nov. 17, 2026).

The yearly adjusted rates are as follows:

**WASHINGTON, D.C.**

| Year Services Rendered | Statutory Hourly Rate | CPI-U Adjustment for Year | Adjusted Hourly Rate |
|---|---|---|---|
| 2025 | $125/hr | 321.993 / 158.4 = 2.03278 | $254.10 |
| 2026[3] | $125/hr | 330.978 / 158.4 = 2.0895 | $261.19 |

**SEATTLE, WASHINGTON**

| Year Services Rendered | Statutory Hourly Rate | CPI-U Adjustment for Year | Adjusted Hourly Rate |
|---|---|---|---|
| 2025 | $125/hr | 362.039 / 157.5 = 2.299 | $287.33 |
| 2026[4] | $125/hr | 375.221 / 157.5 = 2.382 | $297.75 |

*See also* Decl. of Patrick O. Daugherty ¶ 14.

The rates in the above table are presumptively reasonable, as the D.C. Circuit has held that the "appropriate fee rate is the statutory rate under EAJA, $125 per hour, adjusted by the increase in the [CPI-U] for the Washington, D.C. area." *Haselwander*, 797 F.3d at 3 (citing *Role Models Am., Inc. v. Brownlee*, 353 F.3d 962 (D.C. Cir. 2004)). Indeed, these rates are well below the ordinary market-based rates of the attorneys representing OTF in this litigation.

**2. The total fee award sought is reasonable, necessary, and appropriate.**

The hours worked by OTF's attorneys for which OTF requests reimbursement are reasonable and sufficiently explained. *See generally* Decl. of Patrick O. Daugherty. These hours were necessary, relevant, and proportional to the complexity of the case and the number and depth of the required filings at each stage of this litigation. *See Citizens for Resp. & Ethics in*

[3] For FY 2026, only the "HALF1" data is currently available.
[4] For FY 2026, only the "HALF1" data is currently available.

*Wash. v. Fed. Election Comm'n*, 66 F. Supp. 3d 134 (D.D.C. 2014). The Declaration of Patrick O. Daugherty and attached billing records provide "sufficient detail and probative value to enable the court to determine with a high degree of certainty that such hours were actually and reasonably expended." *Role Models Am.*, 353 F.3d at 971 (citation omitted). As explained in the accompanying declarations, OTF's outside counsel expended a reasonable amount of hours in light of the numerous emergency injunctive filings required to keep OTF from dissolving and to deliver its vitally important national security work as mandated by Congress.

OTF seeks a fee award that includes time spent in the preparation of this fee request, and OTF reserves the right to supplement its request to include additional time spent on litigating this fee request. These hours are properly included in the fee award. *See Comm'r, I.N.S. v. Jean*, 496 U.S. at 163-64 (allowing fee request for fee application work because the "purpose and legislative history of the statute reinforce our conclusion that Congress intended the EAJA to cover the cost of all phases of successful civil litigation addressed by the statute.").

**E. OTF is entitled to compensable costs.**

In addition to attorney fees, OTF requests recovery of certain costs to which it is entitled under 28 U.S.C. § 2412(a)(1) (citing covered costs as those enumerated at 28 U.S.C. § 1920). *See also Role Models Am.*, 353 F.3d at 974. The costs are enumerated in the attachment to the Declaration of Patrick O. Daugherty. Each of these costs are eligible under 28 U.S.C. § 1920 and are thus recoverable under EAJA.

## CONCLUSION

For the reasons explained above and based on the information presented in the accompanying declarations and billing records, OTF respectfully requests an award of attorney fees and costs in the amount of $363,667.37 through November 17, 2026, plus all reasonable

attorney fees and costs incurred in the preparation and litigation of this fee petition after November 17, 2026.

Dated: November 20, 2026

Respectfully submitted,

VAN NESS FELDMAN, LLP

/s/ *Patrick O. Daugherty*
Patrick O. Daugherty, D.C. Bar No. 981008
Michael Farber, D.C. Bar No. 449215
Taylor A. Mayhall, D.C. Bar No. 90034244
2000 Pennsylvania Avenue, NW
Suite 6000
Washington, DC 20006
Tel.: 202-298-1800
Email: pod@vnf.com; mfarber@vnf.com;
tmayhall@vnf.com

Sophia E. Amberson, WA Bar No. 52528
(*Pro Hac Vice*)
Liberty Quihuis, WA Bar No. 57779
(*Pro Hac Vice*)
1191 Second Avenue
Suite 1800
Seattle, WA 98101
Tel.: 206-623-9372
Email: samberson@vnf.com; lquihuis@vnf.com

*Attorneys for Plaintiff*